Hart L. Robinovitch, AZ Bar No. 020910
ZIMMERMAN REED LLP
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254
(480) 348-6400 Telephone
(480) 348-6415 Facsimile
E-mail: hart.robinovitch@zimmreed.com

*Attorney for Plaintiff Lee Ward*
*and the putative class*

(*Additional counsel listed below*)

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Lee Ward, an individual on behalf of himself and all others similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| Zions Bancorporation, N.A., an Arizona credit union, | **JURY TRIAL DEMANDED** |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLASS ACTION COMPLAINT

Plaintiff Lee W. Ward, on behalf of himself and all persons similarly situated, files this Class Action Complaint to address two improper practices of Zions Bancorporation, N.A. whereby the Bank takes advantage of its most vulnerable customers in violation of its own contract. Plaintiff alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and a class of all similarly situated customers against Defendant Zions Bancorporation, N.A. ("Zions" or "Bank"), to include all of its local brands in the various states where it does business. Zions operates via eight customer-facing brands which often differ by state. This case challenges two automated practices of the Bank which generate excessive unearned fee income for the Bank primarily at the expense of its customers who are least able to pay such fees. First, Zions holds deposited funds in a manner inconsistent with the plain language of the Bank's contract. The Bank acts like these funds – which are being held by the Bank – are unavailable, resulting in massive improper fee income for Zions. Second, the Bank assesses more than one fee based on a customer's lack of funds to pay a single debit item, such as a check. Thus, Zions charges two or more fees as to one check or other debit item. This too is done in violation of the terms of the Bank's contracts with customers.

2.      These practices breach contractual promises, violate the covenant of good faith and fair dealing, and result in the Bank being unjustly enriched.

3.      Zions customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with Zions.

4.      On behalf of himself and the proposed Class, Plaintiff seeks damages, restitution, and injunctive relief as set forth more fully below.

## PARTIES

5.      Lee W. Ward is a citizen of the state of Arizona, residing in Kingman, and has a Zions checking account via the Bank's National Bank of Arizona brand.

6.      Defendant Zions Bancorporation, N.A. is a bank holding company headquartered in Salt Lake City.  Zions is the largest bank in Utah with total assets exceeding $75 billion.  Zions operates as a national bank doing business under eight local brands: AmegyBank, California Bank & Trust, The Commerce Bank of Oregon, The Commerce Bank of Washington, National Bank of Arizona, Nevada State Bank, VectraBank Colorado, and Zions Bank.  The Bank operates in 11 western states: Arizona, California, Colorado, Idaho, Nevada, New Mexico, Oregon, Texas, Utah, Washington, and Wyoming.  Zions has approximately 428 branch offices throughout the western states.  The Bank is publicly traded and has a market capitalization of nearly $10 billion.

## JURISDICTION

7.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) Plaintiff is a citizen of Arizona, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Zions is subject to personal jurisdiction here and regularly conducts business in this district.  Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

9.      Even though Zions operates through eight brands across 11 states, the Bank utilizes a singular "DEPOSIT ACCOUNT AGREEMENT" ("Deposit Agreement"), that is applicable to all of its brands.  See Deposit Agreement (Exhibit 1 hereto).  Certain contractual provisions only apply in certain states, but the terms relevant to this case are the same for all Zions customers.

/ / /

/ /

## I.   **ZIONS HOLDS DEPOSITED FUNDS LONGER THAN CONTRACTUALLY PROMISED IN ORDER TO ASSESS ADDITIONAL FEES.**

10.    Section 6 of the Bank's Deposit Agreement – titled "YOUR ABILITY TO WITHDRAW FUNDS" – informs customers like Mr. Ward when funds from deposits will be made available for use by customers.

11.    According to the Deposit Agreement:

> Funds from cash and check deposits are normally available the first business day after the business day on which we received your deposit (or the first business day if we received your deposit after hours or on a non-business day).  Funds from electronic deposits (e.g., payroll or government benefits) and wire transfers are normally available upon receipt.  When funds are "available" they can be withdrawn by you in case, and we can use them to honor checks and payment orders.

*See* Deposit Agreement, p. 2.

12.    In addition to the Bank's general policy described above, Zions also informs its customers that, in certain scenarios, there can be a delay in the availability of deposited funds.

13.    In such a scenario, the Deposit Agreement provides:

> On some items, the deposited funds will not be available for withdrawal the business day following your deposit.  The availability of deposited funds depends on the type of check that you deposit, and we may delay availability of deposited funds until the second business day following the day or your deposit.  **Nevertheless, $225 of your deposit will be available on the first business day.**  We will notify you if your deposited funds will not be available for withdrawal on the first business day after deposit, and we will give you an indication when the funds will be available for withdrawal.

*Id.* (emphasis added).

14.    Similarly, the Bank's Anytime Checking Disclosure sets forth the following funds availability policy:

> Cash deposited: **Next business day**
> Check deposited: **Next business day generally, unless a hold is placed**
> Direct Deposit and Wire Transfer: **Same business day**
> We may place a hold on funds you deposit in your account by check.  If we do, a portion of the funds will generally be available to you the first business day after the day of the deposit.  Depending on the type of check you deposit, the remainder of the funds may not be available to you until the second day after the day of the

deposit or even later.  We will generally tell you at the time you deposit a check if a portion of the funds from the check will not be available to you on the business day after the day of the deposit.  We will also tell you when those funds will be available.

*See* Anytime Checking Disclosure, p. 2 (Exhibit 2 hereto).

15.     Rather than abide by these contractual promises, as evidenced by its handling of Mr. Ward's account, Zions places extended holds on the entirety of deposits in order to maximize fee revenue.  If funds are arbitrarily declared to be unavailable then the customer's balance is not sufficient to cover other transactions, often netting the Bank pure-profit fees such as insufficient funds fees.  The Bank has no risk in this scenario because the funds are quickly made available to Zions.  Modern check clearing systems usually provide the deposited funds to Zions within hours, and certainly by the "next business day" as quoted in the Bank's contracts.

16.     By way of example, below is what Mr. Ward's transaction history should have looked like between January 29, 2021 and February 18, 2021 if Zions had adhered to its funds availability policy with respect to a deposit for $1,101.83 on February 8, 2021 ("Chart A"):

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 1/29/2021 | Ruyi Express | | | -$38.23 | $64.80 |
| 1/29/2021 | Delta Dental | | | -$47.65 | $17.15 |
| 2/1/2021 | Maverik | | | -$10.96 | $6.19 |
| 2/1/2021 | PayPal | | | -$4.21 | $1.98 |
| 2/2/2021 | ATM Check Deposit | | $40.00 | | $41.98 |
| 2/2/2021 | PayPal Transfer | | $47.84 | | $84.82 |
| 2/2/2021 | PayPal Transfer | | $66.73 | | $151.55 |
| 2/2/2021 | Vivint | | | -$99.41 | $52.14 |
| 2/3/2021 | Maverik | | | -$1.93 | $50.21 |
| 2/3/2021 | Acorns | | | -$5.00 | $45.21 |
| 2/4/2021 | Maverik | | | -$9.35 | $35.86 |
| 2/5/2021 | Direct Deposit | | $480.52 | | $516.38 |
| 2/5/2021 | FastTrip | | | -$19.73 | $496.65 |
| 2/5/2021 | FastTrip | | | -$2.19 | $494.46 |

4

| Date | Description | Check # | Credit | Debit | Balance |
|---|---|---|---|---|---|
| 2/5/2021 | Acorns | | | -$10.00 | $484.46 |
| 2/5/2021 | Robinhood | | | -$40.00 | $444.46 |
| 2/5/2021 | Pentagon Federal | | | -$75.00 | $369.46 |
| 2/8/2021 | ATM Check Deposit | | $1,101.83 | | $1,471.29 |
| 2/8/2021 | PayPal Transfer | | $124.05 | | $1,595.34 |
| 2/8/2021 | PayPal Transfer | | $38.30 | | $1,633.64 |
| 2/8/2021 | Maverik | | | -$8.07 | $1,625.57 |
| 2/8/2021 | Maverik | | | -$13.27 | $1,612.30 |
| 2/8/2021 | FastTrip | | | -$41.90 | $1,570.40 |
| 2/8/2021 | DataMax Wireless | | | -$80.00 | $1,490.40 |
| 2/8/2021 | Masseys | | | -$25.00 | $1,465.40 |
| 2/8/2021 | Montgomery Wards | | | -$40.00 | $1,425.40 |
| 2/8/2021 | Bangkok Thai | | | -$84.00 | $1,341.40 |
| 2/8/2021 | Western Union | | | -$55.00 | $1,286.40 |
| 2/8/2021 | Wal-Mart | | | -$35.97 | $1,250.43 |
| 2/8/2021 | Route 66 | | | -$12.99 | $1,237.44 |
| 2/8/2021 | Acorns | | | -$3.00 | $1,234.44 |
| 2/8/2021 | PayPal | | | -$162.04 | $1,072.40 |
| 2/9/2021 | RedBox | | | -$15.57 | $1,056.83 |
| 2/9/2021 | Robinhood | | | -$40.00 | $1,016.83 |
| 2/9/2021 | UNS Electric | | | -$61.08 | $955.75 |
| 2/9/2021 | UNS Gas | | | -$95.95 | $859.80 |
| 2/9/2021 | Transfer to Pentagon Fed | | | -$400.00 | $459.80 |
| 2/9/2021 | Check | 134 | | -$40.00 | $419.80 |
| 2/10/2021 | Acorns | | | -$5.00 | $414.80 |
| 2/11/2021 | Acorns | | | -$10.00 | $404.80 |
| 2/11/2021 | Check | 135 | | -$90.00 | $314.80 |
| 2/16/2021 | Cash Deposit | | $100.00 | | $414.80 |
| 2/16/2021 | Cash Deposit | | $140.00 | | $554.80 |

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 2/16/2021 | LP Master Payment | | | -$272.43 | $282.37 |

17.    As can be seen from a careful study of this chart, Mr. Ward's account should never have accrued a negative balance and Mr. Ward would not have been assessed any Insufficient Funds (NSF) Fees had the Bank properly credited the deposit.

18.    However, rather than adhere to its own policies, Zions violated the terms of its contract (or utilized discretion that it reserves for itself within its form contracts) to place a delayed hold on the $1,101.83 check that Mr. Ward deposited on February 6, 2021.  Mr. Ward was not provided any notice that there would be a hold on these deposited funds.  The check was provided by a major in-state corporation, from which Mr. Ward often makes deposits, so there was no legitimate cause for a hold on these funds.  Nevertheless, had the Bank informed him of a hold at the time he made the deposit, he could have made suitable arrangements for other purchases that he needed to make in the following days.  No such notice occurred until much too late.

19.    As a result of the Bank's improper actions, Mr. Ward's transaction history looked like the following when it was actually provided by Zions ("Chart B"):

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 1/29/2021 | Ruyi Express | | | -$38.23 | $64.80 |
| 1/29/2021 | Delta Dental | | | -$47.65 | $17.15 |
| 2/1/2021 | Maverik | | | -$10.96 | $6.19 |
| 2/1/2021 | PayPal | | | -$4.21 | $1.98 |
| 2/2/2021 | ATM Check Deposit | | $40.00 | | $41.98 |
| 2/2/2021 | PayPal Transfer | | $47.84 | | $84.82 |
| 2/2/2021 | PayPal Transfer | | $66.73 | | $151.55 |

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 2/2/2021 | Vivint | | | -$99.41 | $52.14 |
| 2/3/2021 | Maverik | | | -$1.93 | $50.21 |
| 2/3/2021 | Acorns | | | -$5.00 | $45.21 |
| 2/4/2021 | Maverik | | | -$9.35 | $35.86 |
| 2/5/2021 | Direct Deposit | | $480.52 | | $516.38 |
| 2/5/2021 | FastTrip | | | -$19.73 | $496.65 |
| 2/5/2021 | FastTrip | | | -$2.19 | $494.46 |
| 2/5/2021 | Acorns | | | -$10.00 | $484.46 |
| 2/5/2021 | Robinhood | | | -$40.00 | $444.46 |
| 2/5/2021 | Pentagon Federal | | | -$75.00 | $369.46 |
| 2/8/2021 | ATM Check Deposit | | $1,101.83 (Held) | | $369.46 |
| 2/8/2021 | PayPal Transfer | | $124.05 | | $493.51 |
| 2/8/2021 | PayPal Transfer | | $38.30 | | $531.81 |
| 2/8/2021 | Maverik | | | -$8.07 | $523.74 |
| 2/8/2021 | Maverik | | | -$13.27 | $510.47 |
| 2/8/2021 | FastTrip | | | -$41.90 | $468.57 |
| 2/8/2021 | DataMax Wireless | | | -$80.00 | $388.57 |
| 2/8/2021 | Masseys | | | -$25.00 | $363.57 |
| 2/8/2021 | Montgomery Wards | | | -$40.00 | $323.57 |
| 2/8/2021 | Bangkok Thai | | | -$84.00 | $239.57 |
| 2/8/2021 | Western Union | | | -$55.00 | $184.57 |

7

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 2/8/2021 | Wal-Mart | | | -$35.97 | $148.60 |
| 2/8/2021 | Route 66 | | | -$12.99 | $135.61 |
| 2/8/2021 | Acorns | | | -$3.00 | $132.61 |
| 2/8/2021 | PayPal | | | -$162.04 | -$26.79 |
| 2/9/2021 | RedBox | | | -$15.57 | -$42.36 |
| 2/9/2021 | Robinhood | | | -$40.00 | -$82.36 |
| 2/9/2021 | UNS Electric | | | -$61.08 | -$143.44 |
| 2/9/2021 | UNS Gas | | | -$95.95 | -$239.39 |
| 2/9/2021 | Transfer to Pentagon Fed | | | -$400.00 | -$639.39 |
| 2/9/2021 | Check | 134 | | -$40.00 | -$679.39 |
| 2/9/2021 | Insufficient Funds – Pd | | | -$35.00 | -$714.39 |
| 2/10/2021 | Returned Check | 134 | $40.00 | | -$674.39 |
| 2/10/2021 | Returned UNS Elec | | $61.08 | | -$613.31 |
| 2/10/2021 | Returned UNS Gas | | $95.95 | | -$517.36 |
| 2/10/2021 | Returned Transfer | | $400.00 | | -$117.36 |
| 2/10/2021 | Acorns | | | -$5.00 | -$122.36 |
| 2/10/2021 | Insufficient Funds – Pd | | | -$35.00 | -$157.36 |
| 2/10/2021 | Insufficient Funds - Ret | | | -$140.00 | -$297.36 |
| 2/11/2021 | Acorns | | | -$10.00 | -$307.36 |
| 2/11/2021 | Check | 134 | | -$40.00 | -$347.36 |

CLASS ACTION COMPLAINT

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 2/11/2021 | Check | 135 | | -$90.00 | -$437.36 |
| 2/11/2021 | Insufficient Funds – Pd | | | -$35.00 | -$472.36 |
| 2/12/2021 | Return Acorns | | $10.00 | | -$462.36 |
| 2/12/2021 | Returned Check | 134 | $40.00 | | -$422.36 |
| 2/12/2021 | Returned Check | 135 | $90.00 | | -$322.36 |
| 2/12/2021 | Insufficient Funds – Ret | | | -$105.00 | -$437.36 |
| 2/16/2021 | Cash Deposit | | $100.00 | | -$337.36 |
| 2/16/2021 | Cash Deposit | | $140.00 | | -$197.36 |
| 2/16/2021 | LP Master Payment | | | -$272.43 | -$469.79 |
| 2/16/2021 | Check | 135 | | -$90.00 | -$559.79 |
| 2/17/2021 | Return Check | 135 | $90.00 | | -$469.79 |
| 2/17/2021 | Return LP Master | | $272.43 | | -$197.36 |
| 2/17/2021 | Insufficient Funds – Ret | | | -$70.00 | -$267.36 |

20.     By holding Mr. Ward's deposit in a manner contrary to what is laid out in the account contract documents, Zions was able to assess **$420** in Insufficient Funds (NSF) Fees for items that were improperly paid or returned by the Bank.

21.     Each of these 12 Insufficient Funds (NSF) Fees was improper because, if the Bank made the deposit for $1,101.83 available within one business day as required in the applicable contracts, Mr. Ward's available balance would always have been positive during the time period in question.

22.     As to some of the improper fees it is even clearer that the Bank acted improperly. Had Zions made $225 of the held check available, as plainly provided for in the Deposit Agreement and Anytime Checking Disclosure, Mr. Ward would not have incurred as many

9

Insufficient Funds (NSF) Fees.

23.    If Zions had made $225 of the held check available, Mr. Ward's transaction history would have looked like this ("Chart C"):

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 1/29/2021 | Ruyi Express | | | -$38.23 | $64.80 |
| 1/29/2021 | Delta Dental | | | -$47.65 | $17.15 |
| 2/1/2021 | Maverik | | | -$10.96 | $6.19 |
| 2/1/2021 | PayPal | | | -$4.21 | $1.98 |
| 2/2/2021 | ATM Check Deposit | | $40.00 | | $41.98 |
| 2/2/2021 | PayPal Transfer | | $47.84 | | $84.82 |
| 2/2/2021 | PayPal Transfer | | $66.73 | | $151.55 |
| 2/2/2021 | Vivint | | | -$99.41 | $52.14 |
| 2/3/2021 | Maverik | | | -$1.93 | $50.21 |
| 2/3/2021 | Acorns | | | -$5.00 | $45.21 |
| 2/4/2021 | Maverik | | | -$9.35 | $35.86 |
| 2/5/2021 | Direct Deposit | | $480.52 | | $516.38 |
| 2/5/2021 | FastTrip | | | -$19.73 | $496.65 |
| 2/5/2021 | FastTrip | | | -$2.19 | $494.46 |
| 2/5/2021 | Acorns | | | -$10.00 | $484.46 |
| 2/5/2021 | Robinhood | | | -$40.00 | $444.46 |
| 2/5/2021 | Pentagon Federal | | | -$75.00 | $369.46 |
| 2/8/2021 | ATM Check Deposit | | $225.00 ($876.83 "on hold") | | $594.46 |

| Date | Description | Check # | Credit | Debit | Balance |
|---|---|---|---|---|---|
| 2/8/2021 | PayPal Transfer | | $124.05 | | $718.51 |
| 2/8/2021 | PayPal Transfer | | $38.30 | | $756.81 |
| 2/8/2021 | Maverik | | | -$8.07 | $748.74 |
| 2/8/2021 | Maverik | | | -$13.27 | $735.47 |
| 2/8/2021 | FastTrip | | | -$41.90 | $693.57 |
| 2/8/2021 | DataMax Wireless | | | -$80.00 | $613.57 |
| 2/8/2021 | Masseys | | | -$25.00 | $588.57 |
| 2/8/2021 | Montgomery Wards | | | -$40.00 | $548.57 |
| 2/8/2021 | Bangkok Thai | | | -$84.00 | $464.57 |
| 2/8/2021 | Western Union | | | -$55.00 | $409.57 |
| 2/8/2021 | Wal-Mart | | | -$35.97 | $373.60 |
| 2/8/2021 | Route 66 | | | -$12.99 | $360.61 |
| 2/8/2021 | Acorns | | | -$3.00 | $357.61 |
| 2/8/2021 | PayPal | | | -$162.04 | $195.57 |
| 2/9/2021 | RedBox | | | -$15.57 | $180.00 |
| 2/9/2021 | Robinhood | | | -$40.00 | $140.00 |
| 2/9/2021 | UNS Electric | | | -$61.08 | $78.92 |
| 2/9/2021 | UNS Gas | | | -$95.95 | -$17.03 |
| 2/9/2021 | Transfer to Pentagon Fed | | | -$400.00 | -$417.03 |
| 2/9/2021 | Check | 134 | | -$40.00 | -$457.03 |

CLASS ACTION COMPLAINT

| Date | Description | Check # | Credit | Debit | Balance |
|---|---|---|---|---|---|
| 2/9/2021 | Insufficient Funds – Pd | | | -$35.00 | -$492.03 |
| 2/10/2021 | Returned Check | 134 | $40.00 | | -$452.03 |
| 2/10/2021 | Returned Transfer | | $400.00 | | -$52.03 |
| 2/10/2021 | Acorns | | | -$5.00 | -$57.03 |
| 2/10/2021 | Insufficient Funds – Pd | | | -$35.00 | -$92.03 |
| 2/10/2021 | Insufficient Funds - Ret | | | -$70.00 | -$162.03 |
| 2/11/2021 | Acorns | | | -$10.00 | -$172.03 |
| 2/11/2021 | Check | 134 | | -$40.00 | -$212.03 |
| 2/11/2021 | Check | 135 | | -$90.00 | -$302.03 |
| 2/12/2021 | Return Acorns | | $10.00 | | -$292.03 |
| 2/12/2021 | Returned Check | 134 | $40.00 | | -$252.03 |
| 2/12/2021 | Returned Check | 135 | $90.00 | | -$162.03 |
| 2/12/2021 | Insufficient Funds – Ret | | | -$105.00 | -$267.03 |
| 2/16/2021 | Cash Deposit | | $100.00 | | -$167.03 |
| 2/16/2021 | Cash Deposit | | $140.00 | | -$27.03 |
| 2/16/2021 | LP Master Payment | | | -$272.43 | -$299.46 |
| 2/16/2021 | Check | 135 | | -$90.00 | -$389.46 |
| 2/17/2021 | Return Check | 135 | $90.00 | | -$299.46 |
| 2/17/2021 | Return LP Master | | $272.43 | | -$27.03 |
| 2/17/2021 | Insufficient Funds – Ret | | | -$70.00 | -$97.03 |

CLASS ACTION COMPLAINT

24.     Instead of $420 in pure-profit Insufficient Funds (NSF) Fees, Zions would have only made **$315** in improper fees.

25.     Thus, by failing to adhere to its additional promise to make $225 of the held check available to Mr. Ward, Zions was able to generate an additional $105 in fee revenue.

26.     Either way you cut it, the Bank's violations of its contracts with Mr. Ward and other customers allow Zions to charge improper fees and pocket unearned income.  As shown by Mr. Ward's circumstance – in which a check from a major corporation was deposited and the funds were quickly made available to Zions but the Bank took $420 in fees anyway – the Bank's practices are egregious and unjustifiable.  These fees are pure profit without any service provided or risk undertaken by the Bank.  Indeed, if an individual did the same thing, they could be charged with a crime.  Even worse, these practices are automated by the Bank.  By simply reprogramming its computer systems, the Bank can make an endless stream of improper fee income without informing customers or gaining their consent to change the agreed-upon terms.

## II.   ZIONS CHARGES MORE THAN ONE FEE ON THE SAME ITEM.

27.     The Zions Deposit Agreement, in concert with its Fee Schedule and other contractual documents, allows the Bank to charge a *single* $35 Insufficient Funds (NSF) Fee on a single debit item.  Pursuant to the plain terms, only one fee can be assessed regardless of whether the item in question is paid by the Bank, resulting in an overdraft, or is returned unpaid by the Bank because there are insufficient funds in the account.

28.     According to the Deposit Agreement, "[a]n Overdraft occurs when the Available Balance in your account is insufficient to pay a debit (withdrawal) transaction, but we pay it anyway."  *See* Deposit Agreement, p. 10.

29.     The Deposit Agreement also states: "[i]f we pay a debit transaction that overdraws your Available Balance by more than $5, we will charge your account an Insufficient Funds (NSF) Fee."  *Id.*

30.     As explained in the Fee Schedule, an Insufficient Funds (NSF) Fee of $35 will be charged by Zions "per check, ACH, or wire transaction posted against insufficient funds, whether the bank pays or returns the transaction."  *See* Fee Schedule, p. 3 (Exhibit 3 hereto).

31.     Zions breaches its contractual documents when it charges more than one $35 fee on the same item, since the documents explicitly state – and reasonable consumers understand – that the same item can only incur a single fee.

32.     Mr. Ward was harmed by this practice because Zions charged him a $35 Insufficient Funds (NSF) Fee when a check he wrote was returned and then the Bank charged Mr. Ward another $35 Insufficient Funds (NSF) Fee on the same check when it was run back through a second time a few days later.

33.     Neither the Deposit Agreement nor the Fee Schedule tell customers that Zions will charge a $35 Insufficient Funds (NSF) Fee on the same check each time that item is presented for payment.

34.     Indeed, rather than suggest that a check could receive multiple Insufficient Funds (NSF) Fees, the following passage from the Deposit Agreement states that a check presented against insufficient funds will be paid and assessed one $35 fee:

> ***Here's an example of how on insufficient Available Balance will cause an Overdraft and lead to an NSF Fee. (For purposes of the example, assume the NSF Fee is $35.)***
>
> On Monday morning the Available Balance in your account is $100. Later that day you first write a check for $75 and then use your debit card at a restaurant for a $35 purchase. Because the restaurant transaction immediately causes an Authorization Hold (this term is defined in the "**Additional Definitions**" section below) of $35 to be placed on your account, your Available Balance is reduced to $65. If on Tuesday the $75 check (a withdrawal) is posted to your account before a credit (for example, a cash deposit) of $10 or more is posted, an Overdraft will occur. Because payment of the check **will** overdraw your Available Balance by -$10 (in other words, your Available Balance will be -$10), we **will** charge a $35 NSF Fee. The NSF fee **will** be treated as a debit to your account, making your Available Balance -$45.

*See* Deposit Agreement, p. 10.

35.     This abusive practice is not universal in the financial services industry.  Indeed, major banks like J.P. Morgan Chase – the largest consumer bank in the country – do not charge more than one fee on the same item when it is reprocessed.  Instead, Chase charges one fee even if an item is resubmitted for payment multiple times.

36.     As illustrated below, rather than pay a check presented against an insufficient Available Balance and charge a $35 Insufficient Funds (NSF) Fee, Zions returns checks presented against an insufficient Available Balance, charges a $35 fee, and then – when the check is run back through a few days later and again returned due to insufficient funds – assesses an additional $35 fee on the same check.

37.     On February 9, 2021, Mr. Ward wrote check number 134 to Blue Moon Pest Control in the amount of $40.00.  *See* Chart B, *supra* at 9.

38.     On February 10, 2021, Zions rejected payment of the item due to purportedly insufficient funds in Plaintiff's account (as shown above, Mr. Ward had plenty of funds in his account) and charged him a $35 fee for doing so.  *Id.*

39.     Unbeknownst to Plaintiff, and without his request to Zions to reprocess the item, however, two days later, on February 11, 2021, Zions processed the same item yet again, and again Zions rejected the item due to insufficient funds and charged Mr. Ward *another* $35 fee. *See* Chart B, *supra* at 10.

40.     *So Zions assessed Plaintiff Ward $70 in fees in its effort to process a single payment of $40.00.*

41.     Mr. Ward understood the payment to be a single item pursuant to the terms of Zions's contract, capable at most of receiving a single $35 Insufficient Funds (NSF) Fee regardless of whether Zions returned it or paid it.

42.     Similarly, on February 12, 2021, Mr. Ward wrote check number 135 to the City of Kingman in the amount of $90.00.  *See* Chart B, *supra* at 9.

43.     Zions rejected payment of the item due to purportedly insufficient funds in Plaintiff's account and charged him a $35 fee for doing so on February 12, 2021.  *Id.*

44.     Unbeknownst to Mr. Ward, and without his request to Zions to reprocess the item, however, five days later, on February 17, 2021, Zions reprocessed the same item yet again, and again Zions rejected the item due to insufficient funds and charged Plaintiff *another* $35 fee on February 17, 2021.  *Id.*

45.     *Zions assessed Mr. Ward $70 in fees in regard to a single payment of $90.00.*

46.     Mr. Ward understood the payment to be a single item pursuant to the terms of Zions's contract, capable at most of receiving a single $35 Insufficient Funds (NSF) Fee regardless of whether Zions returned it or paid it.

47.     Zions's Deposit Agreement, Fee Schedule, and other contractual documents state that a single fee can be assessed on a check, ACH debit, or electronic payment.

48.     For example, Zions's Fee Schedule states that the Bank will charge *$35 per item* that is posted against insufficient funds whether the Bank pays or returns the item.   *See* Fee Schedule, p. 3.

49.     The same "check, ACH, or wire transaction" on an account cannot conceivably become a new item each time it is rejected for payment and then reprocessed, especially when – as here – the customer took no action to resubmit the item.

50.     There is zero indication anywhere in the Deposit Agreement, Fee Schedule, or other contractual documents that the same "check, ACH, or wire transaction" is eligible to incur multiple fees.

51.     Even if Zions reprocesses an instruction for payment, it is still the same "check, ACH, or wire transaction."  The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

52.     As shown herein, Mr. Ward took only a single action to make a single payment; he may therefore be charged only a single fee.

53.     The disclosures described above never discuss a circumstance in which Zions may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again (incurring fee) or paid (incurring a fee).

54.     In sum, Zions promises that one $35 Insufficient Funds (NSF) Fee will be assessed per "check, ACH, or wire transaction" and these terms must mean all iterations of the same instruction for *payment*.  As such, Zions breached the contract when it charged more than one fee per item.

55.     Reasonable consumers understand any given authorization for payment to be one, singular "check, ACH, or wire transaction" as those terms are used in Zions's Fee Schedule and

other contractual documents.

56.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.  Nowhere does Zions disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Zions customers ever agree to such fees.

57.     Customers reasonably understand, based on the language of the Fee Schedule and Zions's other account documents, that the Bank's reprocessing of a check or ACH payment is simply an additional attempt to complete the original order or instruction for payment, and as such, will not trigger additional fees.  In other words, it is always the same item.

58.     Banks like Zions that employ this abusive multiple fee practice know how to plainly and clearly disclose it.  Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders – something Zions has never done.

59.     For example, First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

60.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

61.    First Citizens Bank engages in the same practice as Zions, but at least expressly states:

**FEES FOR NSF ITEMS**

Consumer/Personal Accounts: We charge a service fee for each NSF item greater than $5.00 that is presented for payment against your account up to a maximum of four NSF items per day. A service fee may be charged **each time an item is presented** **for payment against your account** (up to four service fee charges per day).

Business Accounts: We charge a service fee **for each NSF item each time it is** **presented for payment** against your account.

[…]

Because we may charge a service fee for an NSF item **each time it is presented**, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

62.    Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, **because we may** **charge a service fee for an NSF item each time it is presented, we may charge** **you more than one service fee for any given item. Therefore, multiple fees** **may be charged to you as a result of a returned item and resubmission** **regardless of the number of times an item is submitted or resubmitted to use** **for payment, and regardless of whether we pay the item or return, reverse,** **or decline to pay the item**. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

63.    RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

64.    Zions provides no such disclosure and, in so doing, deceives its accountholders.

65.     Once again, this automated practice is effectively free to the Bank and certainly does not expose Zions to any risk of loss.  Thus, every improper fee is pure profit to the Bank. By simply reprogramming its computer systems the Bank has opened a spigot of millions of dollars in unearned fee income that was never disclosed or agreed to by Zions customers.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule 23.  The Classes include:

> All Zions customers who, within the applicable statute of limitation period, were charged Insufficient Funds (NSF) Fees on held deposits in violation of the Deposit Agreement ("Held Funds Class"); and

> All Zions customers who, within the applicable statute of limitations period, were charged multiple Insufficient Funds (NSF) Fees for the same debit item in a Zions banking account ("Multiple Fee Class").

Plaintiff also intends to assert these claims for sub-classes of Arizona residents under the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.* ("Arizona Sub-Class").

67.     Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

68.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass or subclasses if necessary before the Court determines whether certification is appropriate.

69.     The Classes will face common questions such that there is a well-defined community of interest among the members of the Classes.  These questions predominate over questions that may affect only individual class members because Zions has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, but are not limited to:

a)     Whether Zions improperly held deposited checks in violation of its contracts;

b)   Whether Zions improperly charged more than one fee on the same item in violation of its contracts;

c)   Whether any of the conduct described above violates the covenant of good faith and fair dealing;

d)   Whether any of the conduct described above constitutes unjust enrichment; and

e)   The appropriate measure of damages.

70.   The parties are numerous such that joinder of them all is impracticable.   Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to the Bank's records.   Zions has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

71.   It is impracticable to bring the Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.   The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

72.   Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Zions, as described herein.

73.   Plaintiff is more than an adequate representative of the Classes in that Plaintiff has a Zions checking account and has suffered damages as a result of the Bank's contract violations (to include violations of the covenant of good faith and fair dealing) or unjust enrichment.   In addition:

74.   Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the

prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

a)   There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

b)   Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

c)   Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

75.   Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.  Indeed, class actions related to overdraft or insufficient funds fees are commonplace.  Many dozens of such cases have been successfully pursued over the past decade.  In fact, Zions settled such a case (pertaining to different improper practices) for millions of dollars several years ago.

76.   Zions has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

77.   All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT AND BREACH OF THE
### COVENANT OF GOOD FAITH AND FAIR DEALING
### (On behalf of Plaintiff and the Classes)

78.   Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

79.   Plaintiff and Zions contracted for checking account services, as embodied in the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.

80.   Zions breached the terms of the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.

81.     Plaintiff and the members of the putative Classes have performed all of the obligations required of them pursuant to the Bank's form contracts.

82.     Plaintiff and the members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches and are legally entitled to be made whole.

83.     All of the relevant states mandate that an implied covenant of good faith and fair dealing governs every contract.  For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state.  The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

84.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

85.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

86.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

87.     Zions breached the covenant of good faith and fair dealing as explained herein.

88.     Defendant acted without good faith, did not deal fairly, and acted in a manner that was arbitrary and capricious.

89.     Plaintiff and the members of the putative Classes have performed all of the obligations imposed on them pursuant to the Deposit Agreement and other contractual documents described herein.

90.     Plaintiff and the members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

91.     Plaintiff and the members of the putative Classes should be made whole as if Zions had not violated its contractual obligations, whether express or implied.

### COUNT II
**UNJUST ENRICHMENT**
**In the Alternative to COUNT I**
**(On Behalf of Plaintiff and the Classes)**

92.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

93.     This Count is brought solely in the alternative.  Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

94.     To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

95.     Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the Insufficient Funds (NSF) Fees that were not disclosed or provided for in the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.

96.     Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

97.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### COUNT III
**VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT**
**(A.R.S. § 44-1521, *et seq.*)**
**(On Behalf of Plaintiff and the Arizona Sub-Class)**

98.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

/ / /

/ /

99.     The Arizona Consumer Fraud Act ("CFA"), A.R.S. § 44-1521, *et seq.* prohibits:

The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

100.    The relevant checking account services advertised and provided by Zions to customers like Mr. Ward qualify as "merchandise" under the CFA.

101.    Zions qualifies as a "person" under the CFA.

102.    A statement is "deceptive" if it has the tendency and capacity to convey misleading impressions to consumers, even if interpretations that would not be misleading also are possible.   Whether a statement has the tendency to mislead is determined from the perspective of the "least sophisticated reader," in light of all that is reasonably implied, not just from what is said.   It is not necessary for the plaintiff to show that the defendant made an affirmative misstatement.   Material omissions are also actionable.   A misrepresentation causes injury where the consumer relies on it, but this reliance need not be reasonable.

103.    Zions misrepresented to Plaintiff and the Arizona Sub-Class how the Bank actually handles deposited checks and how it assesses Insufficient Funds (NSF) Fees on returned checks, as described in detail above.   These contractual representations were false because the Bank's actual practices are inconsistent with what is set forth in the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.   Zions intentionally failed to accurately describe the way that it actually handles deposited checks and how it assesses Insufficient Fund (NSF) Fees on returned items like checks.

104.    The Bank's misrepresentations and omissions are material because customers rely on the language of the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule described above when managing their checking accounts.   Plaintiff and the members of the Arizona Sub-Class considered the Bank's policies before choosing to open an account with Zions.

105.    Zions knows that its misrepresentations are false because the Bank's actual

practices are not adequately and correctly described in the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.  Significant effort went into reprogramming the Bank's software systems to assess fees in the manner set out above.  This was not a mistake.

106.   Zions intended that Plaintiff and the Arizona Sub-Class rely upon the Bank's misrepresentations and omissions leading Plaintiff and Class members to choose to enroll in a Zions banking account instead of a comparable account offered by another financial institution.

107.   Plaintiff and the members of the Arizona Sub-Class were consequently and proximately injured by the Bank's misrepresentations and omissions when Plaintiff and the Arizona Sub-Class signed up for a Zions account instead of another bank's account.

108.   The Bank's pattern of misrepresentations and omissions complained of herein show a willful, wanton, and reckless indifference to the interests of others.  Therefore, Plaintiff and the Arizona Sub-Class are also entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for judgment as follows:

1.   Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as counsel for the respective Classes;

2.   Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

3.   Enjoining Defendant from the wrongful conduct as described herein;

4.   Awarding restitution of all fees at issue seized by Defendant from Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

5.   Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

6.   Awarding actual and/or compensatory damages in an amount according to proof;

7.   Awarding pre-judgment interest at the maximum rate permitted by applicable law;

8.     Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

9.     Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

**ZIMMERMAN REED LLP**

Date: May 11, 2021          By:      s/ Hart L. Robinovitch
                                              Hart L. Robinovitch
                                              14646 N. Kierland Blvd., Suite 145
                                              Scottsdale, AZ 85254
                                              480.348.6400 Telephone
                                              480.348.6415 Facsimile
                                              hart.robinovitch@zimmreed.com

**KALIEL GOLD PLLC**

Jeffrey D. Kaliel (*pro hac vice* to be filed)
Sophia G. Gol (*pro hac vice* to be filed)
1100 15th Street NW 4th Floor
Washington, D.C. 20005
202.350.4783 Telephone
202-871-8180 Facsimile
jkaliel@kalielgold.com
sgold@kalielgold.com

*Attorneys for Plaintiff and the putative class*