1  Hart L. Robinovitch, AZ Bar No. 020910
2  ZIMMERMAN REED LLP
   14646 N. Kierland Blvd., Suite 145
3  Scottsdale, AZ  85254
   (480) 348-6400 Telephone
4  (480) 348-6415 Facsimile
   E-mail: hart.robinovitch@zimmreed.com

5  *Attorney for Plaintiff Lee Ward*
   *and the putative class*
6
   (*Additional counsel listed below*)
7

8              **UNITED STATES DISTRICT COURT**

9                  **DISTRICT OF ARIZONA**

10 | Lee Ward, an individual on behalf of | CASE NO. 3:21-cv-08103-MTL |
   | himself and all others similarly situated, | |
11 | | **AMENDED CLASS ACTION** |
   | | **COMPLAINT** |
12 |              Plaintiff, | |
13 |        v. | |
14 | | |
   | Zions Bancorporation, N.A., an Arizona | |
15 | credit union, | **JURY TRIAL DEMANDED** |
16 |              Defendant. | |
17

18
19
20
21
22
23
24
25
26
27
28

## CLASS ACTION COMPLAINT

Plaintiff Lee W. Ward, on behalf of himself and all persons similarly situated, files this Class Action Complaint to address two improper practices of Zions Bancorporation, N.A. whereby the Bank takes advantage of its most vulnerable customers in violation of its own contract. Plaintiff alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and a class of all similarly situated customers against Defendant Zions Bancorporation, N.A. ("Zions" or "Bank"), to include all of its local brands in the various states where it does business. Zions operates via eight customer-facing brands which often differ by state. This case challenges two automated practices of the Bank which generate excessive unearned fee income for the Bank primarily at the expense of its customers who are least able to pay such fees. Zions holds deposited funds in a manner inconsistent with the plain language of the Bank's contract. The Bank acts like these funds – which are being held by the Bank – are unavailable, resulting in massive improper fee income for Zions.

2.     This practice breaches contractual promises, violates the covenant of good faith and fair dealing, and results in the Bank being unjustly enriched.

3.     Zions customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with Zions.

4.     On behalf of himself and the proposed Class, Plaintiff seeks damages, restitution, and injunctive relief as set forth more fully below.

## PARTIES

5.     Lee W. Ward is a citizen of the state of Arizona, residing in Kingman, and has a Zions checking account via the Bank's National Bank of Arizona brand.

6.     Defendant Zions Bancorporation, N.A. is a bank holding company headquartered in Salt Lake City. Zions is the largest bank in Utah with total assets exceeding $75 billion. Zions operates as a national bank doing business under eight local brands: AmegyBank,

California Bank & Trust, The Commerce Bank of Oregon, The Commerce Bank of Washington, National Bank of Arizona, Nevada State Bank, VectraBank Colorado, and Zions Bank.  The Bank operates in 11 western states: Arizona, California, Colorado, Idaho, Nevada, New Mexico, Oregon, Texas, Utah, Washington, and Wyoming.  Zions has approximately 428 branch offices throughout the western states.  The Bank is publicly traded and has a market capitalization of nearly $10 billion.

## JURISDICTION

7.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) Plaintiff is a citizen of Arizona, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Zions is subject to personal jurisdiction here and regularly conducts business in this district.  Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

9.      Even though Zions operates through eight brands across 11 states, the Bank utilizes a singular "DEPOSIT ACCOUNT AGREEMENT" ("Deposit Agreement"), that is applicable to all of its brands.  See Deposit Agreement (Exhibit 1 hereto).  Certain contractual provisions only apply in certain states, but the terms relevant to this case are the same for all Zions customers.

## I.   ZIONS HOLDS DEPOSITED FUNDS LONGER THAN CONTRACTUALLY PROMISED IN ORDER TO ASSESS ADDITIONAL FEES.

10.      Section 6 of the Bank's Deposit Agreement – titled "YOUR ABILITY TO WITHDRAW FUNDS" – informs customers like Mr. Ward when funds from deposits will be made available for use by customers.

11.     According to the Deposit Agreement:

> Funds from cash and check deposits are normally available the first business day after the business day on which we received your deposit (or the first business day if we received your deposit after hours or on a non-business day). Funds from electronic deposits (e.g., payroll or government benefits) and wire transfers are normally available upon receipt. When funds are "available" they can be withdrawn by you in case, and we can use them to honor checks and payment orders.

*See* Deposit Agreement, p. 2.

12.     In addition to the Bank's general policy described above, Zions also informs its customers that, in certain scenarios, there can be a delay in the availability of deposited funds.

13.     In such a scenario, the Deposit Agreement provides:

> On some items, the deposited funds will not be available for withdrawal the business day following your deposit. The availability of deposited funds depends on the type of check that you deposit, and we may delay availability of deposited funds until the second business day following the day or your deposit. **Nevertheless, $225 of your deposit will be available on the first business day.** We will notify you if your deposited funds will not be available for withdrawal on the first business day after deposit, and we will give you an indication when the funds will be available for withdrawal.

*Id.* (emphasis added).

14.     Similarly, the Bank's Anytime Checking Disclosure sets forth the following funds availability policy:

> Cash deposited: **Next business day**
>
> Check deposited: **Next business day generally, unless a hold is placed**
>
> Direct Deposit and Wire Transfer: **Same business day**
>
> We may place a hold on funds you deposit in your account by check. If we do, a portion of the funds will generally be available to you the first business day after the day of the deposit. Depending on the type of check you deposit, the remainder of the funds may not be available to you until the second day after the day of the deposit or even later. We will generally tell you at the time you deposit a check if a portion of the funds from the check will not be available to you on the business day after the day of the deposit. We will also tell you when those funds will be available.

*See* Anytime Checking Disclosure, p. 2 (Exhibit 2 hereto).

15.     Rather than abide by these contractual promises, as evidenced by its handling of

Mr. Ward's account, Zions places extended holds on the entirety of deposits in order to maximize fee revenue.  If funds are arbitrarily declared to be unavailable then the customer's balance is not sufficient to cover other transactions, often netting the Bank pure-profit fees such as insufficient funds fees.  The Bank has no risk in this scenario because the funds are quickly made available to Zions.  Modern check clearing systems usually provide the deposited funds to Zions within hours, and certainly by the "next business day" as quoted in the Bank's contracts.

16.     By way of example, below is what Mr. Ward's transaction history should have looked like between January 29, 2021 and February 18, 2021 if Zions had adhered to its funds availability policy with respect to a deposit for $1,101.83 on February 8, 2021 ("Chart A"):

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 1/29/2021 | Ruyi Express | | | -$38.23 | $64.80 |
| 1/29/2021 | Delta Dental | | | -$47.65 | $17.15 |
| 2/1/2021 | Maverik | | | -$10.96 | $6.19 |
| 2/1/2021 | PayPal | | | -$4.21 | $1.98 |
| 2/2/2021 | ATM Check Deposit | | $40.00 | | $41.98 |
| 2/2/2021 | PayPal Transfer | | $47.84 | | $84.82 |
| 2/2/2021 | PayPal Transfer | | $66.73 | | $151.55 |
| 2/2/2021 | Vivint | | | -$99.41 | $52.14 |
| 2/3/2021 | Maverik | | | -$1.93 | $50.21 |
| 2/3/2021 | Acorns | | | -$5.00 | $45.21 |
| 2/4/2021 | Maverik | | | -$9.35 | $35.86 |
| 2/5/2021 | Direct Deposit | | $480.52 | | $516.38 |
| 2/5/2021 | FastTrip | | | -$19.73 | $496.65 |
| 2/5/2021 | FastTrip | | | -$2.19 | $494.46 |
| 2/5/2021 | Acorns | | | -$10.00 | $484.46 |
| 2/5/2021 | Robinhood | | | -$40.00 | $444.46 |
| 2/5/2021 | Pentagon Federal | | | -$75.00 | $369.46 |
| 2/8/2021 | ATM Check Deposit | | $1,101.83 | | $1,471.29 |

| Date | Description | Check # | Credit | Debit | Balance |
|---|---|---|---|---|---|
| 2/8/2021 | PayPal Transfer | | $124.05 | | $1,595.34 |
| 2/8/2021 | PayPal Transfer | | $38.30 | | $1,633.64 |
| 2/8/2021 | Maverik | | | -$8.07 | $1,625.57 |
| 2/8/2021 | Maverik | | | -$13.27 | $1,612.30 |
| 2/8/2021 | FastTrip | | | -$41.90 | $1,570.40 |
| 2/8/2021 | DataMax Wireless | | | -$80.00 | $1,490.40 |
| 2/8/2021 | Masseys | | | -$25.00 | $1,465.40 |
| 2/8/2021 | Montgomery Wards | | | -$40.00 | $1,425.40 |
| 2/8/2021 | Bangkok Thai | | | -$84.00 | $1,341.40 |
| 2/8/2021 | Western Union | | | -$55.00 | $1,286.40 |
| 2/8/2021 | Wal-Mart | | | -$35.97 | $1,250.43 |
| 2/8/2021 | Route 66 | | | -$12.99 | $1,237.44 |
| 2/8/2021 | Acorns | | | -$3.00 | $1,234.44 |
| 2/8/2021 | PayPal | | | -$162.04 | $1,072.40 |
| 2/9/2021 | RedBox | | | -$15.57 | $1,056.83 |
| 2/9/2021 | Robinhood | | | -$40.00 | $1,016.83 |
| 2/9/2021 | UNS Electric | | | -$61.08 | $955.75 |
| 2/9/2021 | UNS Gas | | | -$95.95 | $859.80 |
| 2/9/2021 | Transfer to Pentagon Fed | | | -$400.00 | $459.80 |
| 2/9/2021 | Check | 134 | | -$40.00 | $419.80 |
| 2/10/2021 | Acorns | | | -$5.00 | $414.80 |
| 2/11/2021 | Acorns | | | -$10.00 | $404.80 |
| 2/11/2021 | Check | 135 | | -$90.00 | $314.80 |
| 2/16/2021 | Cash Deposit | | $100.00 | | $414.80 |
| 2/16/2021 | Cash Deposit | | $140.00 | | $554.80 |
| 2/16/2021 | LP Master Payment | | | -$272.43 | $282.37 |

17.    As can be seen from a careful study of this chart, Mr. Ward's account should never have accrued a negative balance and Mr. Ward would not have been assessed any Insufficient

Funds (NSF) Fees had the Bank properly credited the deposit.

18.     However, rather than adhere to its own policies, Zions violated the terms of its contract (or utilized discretion that it reserves for itself within its form contracts) to place a delayed hold on the $1,101.83 check that Mr. Ward deposited on February 6, 2021.  Mr. Ward was not provided any notice that there would be a hold on these deposited funds.  The check was provided by a major in-state corporation, from which Mr. Ward often makes deposits, so there was no legitimate cause for a hold on these funds.  Nevertheless, had the Bank informed him of a hold at the time he made the deposit, he could have made suitable arrangements for other purchases that he needed to make in the following days.  No such notice occurred until much too late.

19.     As a result of the Bank's improper actions, Mr. Ward's transaction history looked like the following when it was actually provided by Zions ("Chart B"):

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 1/29/2021 | Ruyi Express | | | -$38.23 | $64.80 |
| 1/29/2021 | Delta Dental | | | -$47.65 | $17.15 |
| 2/1/2021 | Maverik | | | -$10.96 | $6.19 |
| 2/1/2021 | PayPal | | | -$4.21 | $1.98 |
| 2/2/2021 | ATM Check Deposit | | $40.00 | | $41.98 |
| 2/2/2021 | PayPal Transfer | | $47.84 | | $84.82 |
| 2/2/2021 | PayPal Transfer | | $66.73 | | $151.55 |
| 2/2/2021 | Vivint | | | -$99.41 | $52.14 |
| 2/3/2021 | Maverik | | | -$1.93 | $50.21 |
| 2/3/2021 | Acorns | | | -$5.00 | $45.21 |
| 2/4/2021 | Maverik | | | -$9.35 | $35.86 |

AMENDED CLASS ACTION COMPLAINT

| Date | Description | Check # | Credit | Debit | Balance |
|---|---|---|---|---|---|
| 2/5/2021 | Direct Deposit | | $480.52 | | $516.38 |
| 2/5/2021 | FastTrip | | | -$19.73 | $496.65 |
| 2/5/2021 | FastTrip | | | -$2.19 | $494.46 |
| 2/5/2021 | Acorns | | | -$10.00 | $484.46 |
| 2/5/2021 | Robinhood | | | -$40.00 | $444.46 |
| 2/5/2021 | Pentagon Federal | | | -$75.00 | $369.46 |
| 2/8/2021 | ATM Check Deposit | | $1,101.83 (Held) | | $369.46 |
| 2/8/2021 | PayPal Transfer | | $124.05 | | $493.51 |
| 2/8/2021 | PayPal Transfer | | $38.30 | | $531.81 |
| 2/8/2021 | Maverik | | | -$8.07 | $523.74 |
| 2/8/2021 | Maverik | | | -$13.27 | $510.47 |
| 2/8/2021 | FastTrip | | | -$41.90 | $468.57 |
| 2/8/2021 | DataMax Wireless | | | -$80.00 | $388.57 |
| 2/8/2021 | Masseys | | | -$25.00 | $363.57 |
| 2/8/2021 | Montgomery Wards | | | -$40.00 | $323.57 |
| 2/8/2021 | Bangkok Thai | | | -$84.00 | $239.57 |
| 2/8/2021 | Western Union | | | -$55.00 | $184.57 |
| 2/8/2021 | Wal-Mart | | | -$35.97 | $148.60 |
| 2/8/2021 | Route 66 | | | -$12.99 | $135.61 |
| 2/8/2021 | Acorns | | | -$3.00 | $132.61 |
| 2/8/2021 | PayPal | | | -$162.04 | -$26.79 |

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 2/9/2021 | RedBox | | | -$15.57 | -$42.36 |
| 2/9/2021 | Robinhood | | | -$40.00 | -$82.36 |
| 2/9/2021 | UNS Electric | | | -$61.08 | -$143.44 |
| 2/9/2021 | UNS Gas | | | -$95.95 | -$239.39 |
| 2/9/2021 | Transfer to Pentagon Fed | | | -$400.00 | -$639.39 |
| 2/9/2021 | Check | 134 | | -$40.00 | -$679.39 |
| 2/9/2021 | Insufficient Funds – Pd | | | -$35.00 | -$714.39 |
| 2/10/2021 | Returned Check | 134 | $40.00 | | -$674.39 |
| 2/10/2021 | Returned UNS Elec | | $61.08 | | -$613.31 |
| 2/10/2021 | Returned UNS Gas | | $95.95 | | -$517.36 |
| 2/10/2021 | Returned Transfer | | $400.00 | | -$117.36 |
| 2/10/2021 | Acorns | | | -$5.00 | -$122.36 |
| 2/10/2021 | Insufficient Funds – Pd | | | -$35.00 | -$157.36 |
| 2/10/2021 | Insufficient Funds - Ret | | | -$140.00 | -$297.36 |
| 2/11/2021 | Acorns | | | -$10.00 | -$307.36 |
| 2/11/2021 | Check | 134 | | -$40.00 | -$347.36 |
| 2/11/2021 | Check | 135 | | -$90.00 | -$437.36 |
| 2/11/2021 | Insufficient Funds – Pd | | | -$35.00 | -$472.36 |
| 2/12/2021 | Return Acorns | | $10.00 | | -$462.36 |
| 2/12/2021 | Returned Check | 134 | $40.00 | | -$422.36 |

AMENDED CLASS ACTION COMPLAINT

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 2/12/2021 | Returned Check | 135 | $90.00 | | -$322.36 |
| 2/12/2021 | Insufficient Funds – Ret | | | -$105.00 | -$437.36 |
| 2/16/2021 | Cash Deposit | | $100.00 | | -$337.36 |
| 2/16/2021 | Cash Deposit | | $140.00 | | -$197.36 |
| 2/16/2021 | LP Master Payment | | | -$272.43 | -$469.79 |
| 2/16/2021 | Check | 135 | | -$90.00 | -$559.79 |
| 2/17/2021 | Return Check | 135 | $90.00 | | -$469.79 |
| 2/17/2021 | Return LP Master | | $272.43 | | -$197.36 |
| 2/17/2021 | Insufficient Funds – Ret | | | -$70.00 | -$267.36 |

20.     By holding Mr. Ward's deposit in a manner contrary to what is laid out in the account contract documents, Zions was able to assess **$420** in Insufficient Funds (NSF) Fees for items that were improperly paid or returned by the Bank.

21.     Each of these 12 Insufficient Funds (NSF) Fees was improper because, if the Bank made the deposit for $1,101.83 available within one business day as required in the applicable contracts, Mr. Ward's available balance would always have been positive during the time period in question.

22.     As to some of the improper fees it is even clearer that the Bank acted improperly. Had Zions made $225 of the held check available, as plainly provided for in the Deposit Agreement and Anytime Checking Disclosure, Mr. Ward would not have incurred as many Insufficient Funds (NSF) Fees.

23.     If Zions had made $225 of the held check available, Mr. Ward's transaction history would have looked like this ("Chart C"):

| Date | Description | Check # | Credit | Debit | Balance |
|------|-------------|---------|--------|-------|---------|
| 1/29/2021 | Ruyi Express | | | -$38.23 | $64.80 |
| 1/29/2021 | Delta Dental | | | -$47.65 | $17.15 |
| 2/1/2021 | Maverik | | | -$10.96 | $6.19 |
| 2/1/2021 | PayPal | | | -$4.21 | $1.98 |
| 2/2/2021 | ATM Check Deposit | | $40.00 | | $41.98 |
| 2/2/2021 | PayPal Transfer | | $47.84 | | $84.82 |
| 2/2/2021 | PayPal Transfer | | $66.73 | | $151.55 |
| 2/2/2021 | Vivint | | | -$99.41 | $52.14 |
| 2/3/2021 | Maverik | | | -$1.93 | $50.21 |
| 2/3/2021 | Acorns | | | -$5.00 | $45.21 |
| 2/4/2021 | Maverik | | | -$9.35 | $35.86 |
| 2/5/2021 | Direct Deposit | | $480.52 | | $516.38 |
| 2/5/2021 | FastTrip | | | -$19.73 | $496.65 |
| 2/5/2021 | FastTrip | | | -$2.19 | $494.46 |
| 2/5/2021 | Acorns | | | -$10.00 | $484.46 |
| 2/5/2021 | Robinhood | | | -$40.00 | $444.46 |
| 2/5/2021 | Pentagon Federal | | | -$75.00 | $369.46 |
| 2/8/2021 | ATM Check Deposit | | $225.00 ($876.83 "on hold") | | $594.46 |
| 2/8/2021 | PayPal Transfer | | $124.05 | | $718.51 |
| 2/8/2021 | PayPal Transfer | | $38.30 | | $756.81 |

| Date | Description | Check # | Credit | Debit | Balance |
|---|---|---|---|---|---|
| 2/8/2021 | Maverik | | | -$8.07 | $748.74 |
| 2/8/2021 | Maverik | | | -$13.27 | $735.47 |
| 2/8/2021 | FastTrip | | | -$41.90 | $693.57 |
| 2/8/2021 | DataMax Wireless | | | -$80.00 | $613.57 |
| 2/8/2021 | Masseys | | | -$25.00 | $588.57 |
| 2/8/2021 | Montgomery Wards | | | -$40.00 | $548.57 |
| 2/8/2021 | Bangkok Thai | | | -$84.00 | $464.57 |
| 2/8/2021 | Western Union | | | -$55.00 | $409.57 |
| 2/8/2021 | Wal-Mart | | | -$35.97 | $373.60 |
| 2/8/2021 | Route 66 | | | -$12.99 | $360.61 |
| 2/8/2021 | Acorns | | | -$3.00 | $357.61 |
| 2/8/2021 | PayPal | | | -$162.04 | $195.57 |
| 2/9/2021 | RedBox | | | -$15.57 | $180.00 |
| 2/9/2021 | Robinhood | | | -$40.00 | $140.00 |
| 2/9/2021 | UNS Electric | | | -$61.08 | $78.92 |
| 2/9/2021 | UNS Gas | | | -$95.95 | -$17.03 |
| 2/9/2021 | Transfer to Pentagon Fed | | | -$400.00 | -$417.03 |
| 2/9/2021 | Check | 134 | | -$40.00 | -$457.03 |
| 2/9/2021 | Insufficient Funds – Pd | | | -$35.00 | -$492.03 |
| 2/10/2021 | Returned Check | 134 | $40.00 | | -$452.03 |

AMENDED CLASS ACTION COMPLAINT

| Date | Description | Check # | Credit | Debit | Balance |
|---|---|---|---|---|---|
| 2/10/2021 | Returned Transfer | | $400.00 | | -$52.03 |
| 2/10/2021 | Acorns | | | -$5.00 | -$57.03 |
| 2/10/2021 | Insufficient Funds – Pd | | | -$35.00 | -$92.03 |
| 2/10/2021 | Insufficient Funds - Ret | | | -$70.00 | -$162.03 |
| 2/11/2021 | Acorns | | | -$10.00 | -$172.03 |
| 2/11/2021 | Check | 134 | | -$40.00 | -$212.03 |
| 2/11/2021 | Check | 135 | | -$90.00 | -$302.03 |
| 2/12/2021 | Return Acorns | | $10.00 | | -$292.03 |
| 2/12/2021 | Returned Check | 134 | $40.00 | | -$252.03 |
| 2/12/2021 | Returned Check | 135 | $90.00 | | -$162.03 |
| 2/12/2021 | Insufficient Funds – Ret | | | -$105.00 | -$267.03 |
| 2/16/2021 | Cash Deposit | | $100.00 | | -$167.03 |
| 2/16/2021 | Cash Deposit | | $140.00 | | -$27.03 |
| 2/16/2021 | LP Master Payment | | | -$272.43 | -$299.46 |
| 2/16/2021 | Check | 135 | | -$90.00 | -$389.46 |
| 2/17/2021 | Return Check | 135 | $90.00 | | -$299.46 |
| 2/17/2021 | Return LP Master | | $272.43 | | -$27.03 |
| 2/17/2021 | Insufficient Funds – Ret | | | -$70.00 | -$97.03 |

24.     Instead of $420 in pure-profit Insufficient Funds (NSF) Fees, Zions would have only made **$315** in improper fees.

25.     Thus, by failing to adhere to its additional promise to make $225 of the held check

available to Mr. Ward, Zions was able to generate an additional $105 in fee revenue.

26.     Either way you cut it, the Bank's violations of its contracts with Mr. Ward and other customers allow Zions to charge improper fees and pocket unearned income.  As shown by Mr. Ward's circumstance – in which a check from a major corporation was deposited and the funds were quickly made available to Zions but the Bank took $420 in fees anyway – the Bank's practices are egregious and unjustifiable.  These fees are pure profit without any service provided or risk undertaken by the Bank.  Indeed, if an individual did the same thing, they could be charged with a crime.  Even worse, these practices are automated by the Bank.  By simply reprogramming its computer systems, the Bank can make an endless stream of improper fee income without informing customers or gaining their consent to change the agreed-upon terms.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule 23.  The Class includes:

> All Zions customers who, within the applicable statute of limitation period, were charged Insufficient Funds (NSF) Fees on held deposits in violation of the Deposit Agreement ("Held Funds Class).

Plaintiff also intends to assert these claims for a sub-class of Arizona residents under the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.* ("Arizona Sub-Class").

63.     Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

64.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass or subclasses, if necessary, before the Court determines whether certification is appropriate.

65.     The Classes will face common questions such that there is a well-defined community of interest among the members of the Classes.  These questions predominate over

questions that may affect only individual class members because Zions has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, but are not limited to:

a)     Whether Zions improperly held deposited checks in violation of its contracts;

b)     Whether any of the conduct described above violates the covenant of good faith and fair dealing;

c)     Whether any of the conduct described above constitutes unjust enrichment; and

d)     The appropriate measure of damages.

66.    The parties are numerous such that joinder of them all is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to the Bank's records.  Zions has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

67.    It is impracticable to bring the Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.   The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

68.    Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Zions, as described herein.

69.    Plaintiff is more than an adequate representative of the Classes in that Plaintiff has a Zions checking account and has suffered damages as a result of the Bank's contract violations (to include violations of the covenant of good faith and fair dealing) or unjust enrichment.  In addition:

70.     Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

a)     There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

b)     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

c)     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

71.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.  Indeed, class actions related to overdraft or insufficient funds fees are commonplace.  Many dozens of such cases have been successfully pursued over the past decade.  In fact, Zions settled such a case (pertaining to different improper practices) for millions of dollars several years ago.

72.     Zions has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

73.     All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT AND BREACH OF THE
### COVENANT OF GOOD FAITH AND FAIR DEALING
### (On behalf of Plaintiff and the Classes)

74.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

75.     Plaintiff and Zions contracted for checking account services, as embodied in the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.

76.     Zions breached the terms of the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.

77.     Plaintiff and the members of the putative Classes have performed all of the obligations required of them pursuant to the Bank's form contracts.

78.     Plaintiff and the members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches and are legally entitled to be made whole.

79.     All of the relevant states mandate that an implied covenant of good faith and fair dealing governs every contract.  For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state.  The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

80.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

81.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

82.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

83.     Zions breached the covenant of good faith and fair dealing as explained herein.

84.     Defendant acted without good faith, did not deal fairly, and acted in a manner that was arbitrary and capricious.

85.     Plaintiff and the members of the putative Classes have performed all of the

obligations imposed on them pursuant to the Deposit Agreement and other contractual documents described herein.

86.     Plaintiff and the members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

87.     Plaintiff and the members of the putative Classes should be made whole as if Zions had not violated its contractual obligations, whether express or implied.

**COUNT II**
**UNJUST ENRICHMENT**
**In the Alternative to COUNT I**
**(On Behalf of Plaintiff and the Classes)**

88.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

89.     This Count is brought solely in the alternative.  Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

90.     To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

91.     Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

92.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**COUNT III**
**VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT**
**(A.R.S. § 44-1521, *et seq.*)**
**(On Behalf of Plaintiff and the Arizona Sub-Class)**

93.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

//

//

94.     The Arizona Consumer Fraud Act ("CFA"), A.R.S. § 44-1521, *et seq.* prohibits:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

95.     The relevant checking account services advertised and provided by Zions to customers like Mr. Ward qualify as "merchandise" under the CFA.

96.     Zions qualifies as a "person" under the CFA.

97.     A statement is "deceptive" if it has the tendency and capacity to convey misleading impressions to consumers, even if interpretations that would not be misleading also are possible.   Whether a statement has the tendency to mislead is determined from the perspective of the "least sophisticated reader," in light of all that is reasonably implied, not just from what is said.   It is not necessary for the plaintiff to show that the defendant made an affirmative misstatement.   Material omissions are also actionable.   A misrepresentation causes injury where the consumer relies on it, but this reliance need not be reasonable.

98.     The Bank's misrepresentations and omissions are material because customers rely on the language of the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule described above when managing their checking accounts.   Plaintiff and the members of the Arizona Sub-Class considered the Bank's policies before choosing to open an account with Zions.

99.     Zions knows that its misrepresentations are false because the Bank's actual practices are not adequately and correctly described in the Deposit Agreement, Anytime Checking Disclosure, and Fee Schedule.   Significant effort went into reprogramming the Bank's software systems to assess fees in the manner set out above.   This was not a mistake.

100.    Zions intended that Plaintiff and the Arizona Sub-Class rely upon the Bank's misrepresentations and omissions leading Plaintiff and Class members to choose to enroll in a Zions banking account instead of a comparable account offered by another financial institution.

101.    Plaintiff and the members of the Arizona Sub-Class were consequently and proximately injured by the Bank's misrepresentations and omissions when Plaintiff and the

Arizona Sub-Class signed up for a Zions account instead of another bank's account.

102. The Bank's pattern of misrepresentations and omissions complained of herein show a willful, wanton, and reckless indifference to the interests of others. Therefore, Plaintiff and the Arizona Sub-Class are also entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for judgment as follows:

1. Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as counsel for the respective Classes;

2. Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

3. Enjoining Defendant from the wrongful conduct as described herein;

4. Awarding restitution of all fees at issue seized by Defendant from Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

5. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

6. Awarding actual and/or compensatory damages in an amount according to proof;

7. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

8. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

9. Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

///

1

2   Date: August 26, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ZIMMERMAN REED LLP**

By:   <u>s/ Hart L. Robinovitch</u>
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
480.348.6400 Telephone
480.348.6415 Facsimile
hart.robinovitch@zimmreed.com


**KALIELGOLD PLLC**

Jeffrey D. Kaliel (admitted *pro hac vice*)
Sophia G. Gold (admitted *pro hac vice*)
1100 15th Street NW 4th Floor
Washington, D.C. 20005
202.350.4783 Telephone
202-871-8180 Facsimile
jkaliel@kalielpllc.com
sgold@kalielgold.com
*Attorneys for Plaintiff and the putative class*

AMENDED CLASS ACTION COMPLAINT

# EXHIBIT 1

# ZIONS BANCORPORATION, N.A.
# DEPOSIT ACCOUNT AGREEMENT

Effective January 2021















Zions Bancorporation, N.A. is a member of the Federal Deposit Insurance Corporation (FDIC).   Zions Bancorporation, N.A. operates through multiple divisions that use the trade names shown above. These trade names or divisions of Zions Bancorporation, N.A. are not separate FDIC-insured banks. The FDIC coverage extended to deposit clients is that of one insured bank. Not all services for an account offered at one division are necessarily available at another division.  Certain transactions between accounts at our different divisions (including but not limited to cut-off times and settlement times) may be deemed and processed by us as transactions between separate financial institutions.

As a client of Zions Bancorporation, N.A., your deposits are insured by the FDIC to at least $250,000 per depositor, for each account ownership category. To learn more, please visit the FDIC's website: www.fdic.gov/deposit.

# TABLE OF CONTENTS

1)  AGREEMENT .................................................................3
2)  UPDATES, AMENDMENTS, TERMINATION, CLOSURE, AND SURVIVAL ..............................................................3
3)  ACCOUNT OPENING AND CLIENT IDENTIFICATION ...................4
4)  ACCOUNT OWNERSHIP; ACCOUNT TYPES AND PAYABLE-ON-DEATH BENEFICIARIES ..................................................4
   a)  ACCOUNTS OPENED THROUGH ZIONS FIRST NATIONAL BANK OR NEVADA STATE BANK DIVISIONS .....................................5
   b)  ACCOUNTS OPENED THROUGH NATIONAL BANK OF ARIZONA OR VECTRA BANK COLORADO DIVISIONS ...........................5
   c)  ACCOUNTS OPENED THROUGH THE AMEGY BANK DIVISION .......................................................................5
   d)  ACCOUNTS OPENED THROUGH THE CALIFORNIA BANK & TRUST DIVISION ........................................................6
   e)  ACCOUNTS OPENED THROUGH THE COMMERCE BANK OF OREGON OR THE COMMERCE BANK OF WASHINGTON DIVISIONS ...........................................................6
   f)  UTMA Account .........................................................6
   g)  Fiduciary Account .....................................................6
   h)  Business Organization or Proprietorship Account, or Association Account ...................................................7
   i)  Power of Attorney .....................................................7
   j)  Death or Incapacity ...................................................7
   k)  Multiple-Party or Joint Accounts Services or Agreements .....7
   l)  Removal of Authorized Signer or Multiple or Co-Owner .......7
5)  DEPOSITS ...................................................................7
   a)  Authorization of Deposits and Endorsements .....................7
   b)  Deposits of Remotely Created Checks ..............................8
   c)  Requirements and Warranties with Truncated or Substitute Checks and Other Check Images ....................................8
   d)  Return of Ineligible Direct Deposits ................................8
   e)  Warranties—Business of Cashing or Purchasing of Checks ... 8
   f)  NonPayment or Return of Deposited Items .......................9
6)  YOUR ABILITY TO WITHDRAW FUNDS ..............................9
   a)  Delays on Funds Availability .........................................9
   b)  Funds Availability for New Customer Accounts ..................9
   c)  Account Balances and Reported Status of Funds and Transactions for All Accounts .......................................9
7)  WITHDRAWALS ...........................................................10
   a)  Understanding Your Account Balances ............................10
   b)  Overdrafts and Related Fees .......................................10
   c)  Additional Definitions ...............................................11
   d)  Who May Make Withdrawals .......................................11
   e)  Reservation of Right for Notice of Withdrawal ..................12
   f)  General Rules ..........................................................12
   g)  Restrictions on Number of Transfers .............................12
   h)  Large Cash Withdrawals .............................................12
   i)  Restrictive Legends; Multiple Signatures .........................12
   j)  Internal Controls .....................................................12
   k)  Facsimile Signatures .................................................12
   l)  Check Cashing .........................................................13
   m)  Debit Card Purchase Transactions ................................13
   n)  Settlement of Signature-Based Transactions ....................13
   o)  Effect of Authorization Hold on Other Transactions ...........14
   p)  Standard Overdraft Practices .......................................14
   q)  (Daily Overdraft Service Fee–Replaced ) .........................14
   r)  Debit Card Overdraft Service ......................................14
   s)  Overdraft Protection Plans .........................................15
   t)  Good Account Management .........................................15
   u)  Credits to Your Account and Order of Processing Withdrawals .........................................................16
   v)  Payment of Postdated Checks .....................................16
   w)  Stale-Dated Checks ..................................................16
   x)  Stop Payments ........................................................16
   y)  Remotely Created Checks (Drawn on Your Account) ..........17
8)  SUBSTITUTE CHECKS AND YOUR RIGHTS ..........................17
9)  INDEMNITY ................................................................18
10) TRUTH-IN-SAVINGS DISCLOSURE .....................................18
   a)  Interest Checking Accounts, Money Market Accounts, and Statement Savings Accounts ....................................18
   b)  Time Deposits (Certificates of Deposit) .........................18
11) ELECTRONIC FUND TRANSFERS – YOUR RIGHTS AND RESPONSIBILITIES .....................................................19
   a)  Electronic Fund Transfers Initiated by Third Parties ..........19
   b)  Telephone Transfers - Types of Transfers ......................19
   c)  ATM Transactions - Types of Transactions and Dollar Limitations ..........................................................19
   d)  Types of Visa Debit Card Point-of-Sale Transactions and Dollar Limitations ..................................................19
   e)  Types of ATM Card PIN-Based Transactions and Dollar Limitations ..........................................................19
   f)  Digital/Online Banking Computer Transfers - Types of Transfers ............................................................20
   g)  Holds on Funds in Deposit Account for Pending Transactions ........................................................20
   h)  Currency Conversion ...............................................20
   i)  Advisory Against Illegal Use ......................................20
   j)  Limitations on Frequency of Transfers ..........................20
   k)  Fees ...................................................................20
   l)  ATM Operator/Network Fees ......................................20
   m)  Documentation .......................................................20
   n)  Preauthorized Payments ...........................................20
   o)  Limitation on Liability .............................................20
   p)  Liability for Failure to Make Electronic Fund Transfers .......21
   q)  Confidentiality ......................................................21
   r)  Unauthorized Transfers ...........................................21
   s)  Error Resolution Notice ...........................................21
12) ACH AND WIRE TRANSFERS ..........................................21
13) FUNDS TRANSFERS .....................................................22
   a)  Funds Transfer Definition ........................................22
   b)  Authorized Account ................................................22
   c)  Rejection of Your Payment Order ...............................22
   d)  Cutoff Time ..........................................................22
   e)  Payment of Your Order ............................................22
   f)  Security Procedure .................................................22
   g)  Duty to Report Unauthorized or Erroneous Payment .......23
   h)  Identifying Number ................................................23
   i)  Recording of Oral or Telephone Orders .......................23
   j)  Notice of Credit .....................................................23
   k)  Provisional Credit ..................................................23
   l)  Refund of Credit ....................................................23
   m)  Amendment of Funds Transfer Agreement ...................23
   n)  Cancelation or Amendment of Payment Order ...............23
   o)  Intermediaries ......................................................23
   p)  Limit on Liability ...................................................23
   q)  Erroneous Execution ..............................................23
   r)  Deadline for Objection to Payment .............................23
14) ACCOUNT STATEMENTS AND REVIEW ...............................23
   a)  Statements ...........................................................23
   b)  Duty to Review ......................................................24
15) ADDITIONAL PROVISIONS, TERMS, AND CONDITIONS ...........24
   a)  Account Products and Change of Account Products ..........24
   b)  Account Transfer ....................................................24
   c)  Address, Telephone, E-mail, or Name Changes, Notices ...24
   d)  Adjustments .........................................................24
   e)  Attorneys' Fees, Collection Costs ...............................24
   f)  Cash Transaction Reporting ......................................24

g) Check Examination and Automated Processing ..................24
h) "Cleared" Checks and Cashier's Check Fraud Warning ....24
i) Credit or Account History Verification ................................25
j) Dormant Accounts ..................................................................25
k) Electronic Notices to You ......................................................25
l) Electronic, Scanned, and Facsimile Signatures ................25
m) Fictitious Business Name Accounts ....................................25
n) Fraud and Unauthorized Activity - Claim of Loss ..............25
o) Interest ....................................................................................25
p) Internet Gambling Notice .....................................................25
q) Legal Process ..........................................................................25
r) Liability ....................................................................................26
s) Lost, Destroyed, or Stolen Certified, Cashier's, or Teller's Checks ......................................................................................26
t) Monitoring and Recording Telephone Calls .......................26
u) Night Deposit Facilities/Daytime Drop – Terms of Use; When"Deposit" Occurs ............................................................26
v) Non-waiver ..............................................................................26
w) Notice of Negative Information ...........................................26
x) Online or Digital Banking .....................................................26
y) Organization of Checking Account .....................................27
z) Pass-Through Insurance .......................................................27
aa) Personal Nickname .................................................................27
bb) Pledges ....................................................................................27
cc) Retention of Check Copies and Statements and Check Return ......................................................................................27
dd) Reversal ...................................................................................27
ee) Setoff and Security Interest .................................................27
ff) Tax Reporting .........................................................................27
gg) Tax Withholding/TIN Certification .....................................27
hh) Telephone Communications .................................................28
ii) Telephonic, Facsimile, and Voicemail Instructions ..........28
jj) Telephone Transfers ..............................................................28
kk) Trusts (Revocable) Obligated to Update.............................28
ll) Unclaimed Property ...............................................................28
mm) Waiver of Notices ...................................................................28
16) SECURITY .................................................................................28
a) Account Numbers; Remotely Created Checks ...................28
b) Access Devices and Access Credentials .............................28
c) Blank Checks ...........................................................................28
d) ATM/Night Deposit Facility Use...........................................28
17) OVERDRAFT DEPOSIT TRANSFERS – AMEGY  BANK CUSTOMERS .............................................................................29
a) Transfers ..................................................................................29
b) Transfer Limitations ..............................................................29
c) Fees ..........................................................................................29
d) Joint Accounts.........................................................................29
18) ACCOUNT OVERDRAFT PROTECTION – CALIFORNIA BANK & TRUST CUSTOMERS .................................................................29
a) Transfers ..................................................................................29
b) Transfer Limitations ..............................................................29
c) Fees ..........................................................................................29
d) Joint Accounts.........................................................................29
19) DEFICIT FUNDS TRANSFERS – NATIONAL BANK OF ARIZONA CUSTOMERS .............................................................................30
a) Transfers ..................................................................................30
b) Transfer Limitations ..............................................................30

c) Fees ..........................................................................................30
d) Joint Accounts .........................................................................30
20) OVERDRAFT DEPOSIT TRANSFERS – NEVADA STATE BANK AND ZIONS FIRST NATIONAL BANK CUSTOMERS .........................30
a) Transfers ..................................................................................30
b) Transfer Limitations ..............................................................30
c) Fees ..........................................................................................30
d) Joint Accounts .........................................................................30
21) ACCOUNT OVERDRAFT PROTECTION – VECTRA BANK COLORADO CUSTOMERS ........................................................30
a) Transfers ..................................................................................30
b) Transfer Limitations ..............................................................30
c) Fees ..........................................................................................30
d) Joint Accounts .........................................................................30
22) SAFE DEPOSIT BOX LEASE AGREEMENT .............................31
a) Term ..........................................................................................31
b) Fees ..........................................................................................31
c) Rent ..........................................................................................31
d) Type of Box .............................................................................31
e) Keys ..........................................................................................31
f) Access ......................................................................................31
g) Restrictions on Use ................................................................31
h) Limitation of Liability .............................................................31
i) Death ........................................................................................31
j) Security Interest .....................................................................31
k) Termination .............................................................................31
l) Amendment .............................................................................32
m) Condition of Box .....................................................................32
n) Disposition of Unclaimed Contents ....................................32
o) Rights and Remedies of Bank ...............................................32
p) Notices .....................................................................................32
q) Miscellaneous .........................................................................32
23) LIMITATION ON TIME TO SUE ...............................................32
24) DISPUTES – NATIONAL BANK OF ARIZONA, NEVADA STATE BANK, VECTRA BANK COLORADO, THE COMMERCE BANK OF OREGON, THE COMMERCE BANK OF WASHINGTON, AND ZIONS FIRST NATIONAL BANK CUSTOMERS .........................32
a) Resolving Account Disputes .................................................32
b) Unresolved Disputes..............................................................32
25) DISPUTES – AMEGY BANK CUSTOMERS ..............................34
a) Resolving Account Disputes .................................................34
b) Dispute Resolution and Venue ............................................34
c) Jury Waiver ..............................................................................34
d) Class Action Waiver ...............................................................34
e) Survival ....................................................................................34
26) DISPUTES – CALIFORNIA BANK & TRUST CUSTOMERS ......34
a) Prior Dispute Agreements Superseded ..............................34
b) "Dispute" Defined ..................................................................34
c) Resolving Account Disputes .................................................34
d) Jury Waiver and Judicial Reference .....................................35
e) Class Action Waiver ...............................................................35
f) Jurisdiction and Venue ..........................................................35
g) Survival ....................................................................................35
h) Reliance ...................................................................................35

## TERMS AND CONDITIONS OF YOUR ACCOUNT

**1)  AGREEMENT**

This Deposit Account Agreement, any signature card, and any other documents or disclosures (including fee schedules) the Bank supplies you relating to your account (**"Agreement"**) constitute the contract governing your account. **This Agreement replaces any prior deposit account agreements** governing your accounts with us. This Agreement also contains basic provisions governing overdraft protection on your account (if you qualify and accept) and safe deposit box leasing. You should review and understand this Agreement. We will maintain a current copy of the Deposit Account Agreement on our division website, but we recommend you retain your copy along with any updates or replacements.

**YOU ACCEPT THIS AGREEMENT BY (1) YOUR SIGNATURE ON THE SIGNATURE CARD, OR (2) YOUR CONTINUED USE OR MAINTENANCE OF YOUR DEPOSIT ACCOUNT(S). YOUR CONTINUED USE OR MAINTENANCE OF OVERDRAFT PROTECTION OR A SAFE DEPOSIT BOX LEASE ALSO MEANS THAT YOU ACCEPT AND AGREE TO THE APPLICABLE PROVISIONS OF THE CURRENT AGREEMENT.**

**THIS ACCOUNT AGREEMENT CONTAINS A DISPUTE RESOLUTION SECTION THAT ALTERS YOUR LEGAL RIGHTS. IT INCLUDES A JURY WAIVER AND A CLASS ACTION WAIVER. IT MAY IN SOME CASES REQUIRE ARBITRATION OR JUDICIAL REFERENCE. THE DETAILS OF THESE PROVISIONS DEPEND ON THE DIVISION HOLDING YOUR ACCOUNT. SEE SECTIONS 24, 25, AND 26.**

As used in this Agreement, the words **"you"** and **"your"** mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. The words **"Bank," "we," "our,"** and **"us"** mean Zions Bancorporation, N.A. The Bank operates through its **"divisions,"** including: Amegy Bank, California Bank & Trust, The Commerce Bank of Oregon, The Commerce Bank of Washington, National Bank of Arizona, Nevada State Bank, Vectra Bank Colorado, and Zions First National Bank (Zions Bank). *Note*: At this time, checks, electronic transfers, and other transfers or payments between deposit or loan accounts at different divisions of Zions Bancorporation, N.A. may be treated as occurring between two separate financial institutions. Ordinarily, they will not be processed as or considered to be "on us" transactions.

This Agreement replaced your prior deposit account agreement, which may have had a different title such as "Deposit Agreement," "Deposit Agreement and Disclosure," "Deposit Account Agreement & Disclosure," "Depositor's Agreement," or "Our Rules and Regulations Governing Accounts." This Agreement's reference to the **"Rate and Fees Schedules"** replaces references in your prior deposit account agreement such as "Pricing Schedule," "Service Charge Information," "Schedule of Fees," "Fee Schedule," "Account Terms," or "Interest and Service Fees Schedule."

This Agreement shall be governed and interpreted in accordance with applicable federal laws, other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing system rules, and the laws of the "applicable state" (except to the extent that this Agreement can and does vary such rules or laws or that such state laws are preempted by federal law) regardless of the state where you reside or use our services or conduct any transaction and regardless of that state's rules for choice of law. For accounts opened at a branch (also called a financial or banking center by some divisions) or for a safe deposit box lease, **"applicable state"** means the state in which the branch is physically located. For accounts opened by phone, the Internet, mail, or other nonphysical location, the applicable state is determined by which Zions Bancorporation, N.A. division holds your account: Utah for Zions First National Bank, Texas for Amegy Bank, California for California Bank & Trust, Arizona for National Bank of Arizona, Nevada for Nevada State Bank, Oregon for The Commerce Bank of Oregon, Washington for The Commerce Bank of Washington, and Colorado for Vectra Bank Colorado. Certain transactions between accounts at our different divisions (including for purposes of cut-off times, settlement times, and funds availability) may be deemed and processed by us as transactions between separate financial institutions.

This Agreement does not lay out all the aspects of applicable state and federal laws but establishes the basic rules governing your account and your responsibilities, particularly in notifying the Bank of problems. Any judicial or governmental determination or decree of invalidity of any provision in this Agreement shall not affect the validity and enforceability of the remainder of the Agreement. Any variance to the provisions of this Agreement must be reviewed and approved by the Bank's operations department and legal department and signed by a manager of the branch where the account is opened (or higher authorized officer of the Bank).

Unless it would be inconsistent to do so, words and phrases used in this Agreement should be construed so the singular includes the plural, and the plural includes the singular. Unless otherwise expressly agreed in writing, our relationship with you will be that of debtor and creditor. No fiduciary, quasi-fiduciary, or other special relationship exists between you and us.

Anyone with authority to exercise control over an account shall also have the authority—individually and without the consent of anyone else with such authority—to execute new agreements for any banking-related service (including, but not limited to, digital banking (online or mobile), Automated Clearing House (ACH), wire, or treasury services) in connection with that account.

This Agreement and the Rate and Fee Schedules may be supplemented by (but not replaced by) additional service agreements that you enter into with us (such as agreements for digital (online or mobile) banking, eStatements, remote deposit, treasury services, etc.), and these supplemental or additional agreements will be deemed to be incorporated into this Agreement. Whenever possible, both this Agreement and the additional service agreement shall govern. In the event of a specific conflict in their respective terms, the service agreement shall govern over this Agreement for matters within the scope of that service agreement.

If you require more than one signature to conduct a transaction relating to an account, you understand and agree that we shall not be responsible for reviewing the number of signatures, and therefore you agree we shall have no liability for any transaction conducted with fewer than the required number of signatures.

**2)  UPDATES, AMENDMENTS, TERMINATION, CLOSURE, AND SURVIVAL**

This Agreement is subject to updates, amendments, and replacements by us. When required by law, we will give you written notice that an amendment to the Agreement is occurring.  Written notice of the amendment may be by writing, e-mail, or other method permitted by law or that you have agreed is acceptable. Notice of the Amendment may be delivered with the account statement you periodically receive. If space is sufficient, the notice may include the text or summary of the amendments. If there is insufficient space in the account statement, the notice may also direct you to a website where the full amendment is available as incorporated in this Agreement (which may include accompanying disclosures or summaries of the Amendment). The Bank will keep the latest version of the Agreement available online (typically at the "Agreement Center" link at the bottom of the Bank's website). If you are not able to access these links online, you may obtain a printed version of the disclosed Amendment or the entire Agreement by contacting the following Customer Service locations:

3

| | |
|---|---|
| **Amegy Bank**<br>P.O. Box 4836<br>Houston, TX, 77210-4837<br>(800) 287-0301<br>www.amegybank.com | **The Commerce Bank of Oregon**<br>1211 SW 5th Avenue, Suite 1250<br>Portland, OR, 97204<br>(503) 548-1000<br>www.tcboregon.com |
| **California Bank & Trust**<br>P.O. Box 489<br>Lawndale, CA, 90260<br>(800) 400-6080<br>www.calbanktrust.com | **The Commerce Bank of Washington**<br>Two Union Square, 601 Union St., Suite 3600<br>Seattle, WA, 98101<br>(800) 998-4035<br>www.tcbwa.com |
| **National Bank of Arizona**<br>P.O. Box 80440<br>Phoenix, AZ, 85060-0440<br>(800) 497-8168<br>www.nbarizona.com | **Vectra Bank Colorado**<br>P.O. Box 5160<br>Denver, CO, 80217-5160<br>(800) 232-8948<br>www.vectrabank.com |
| **Nevada State Bank**<br>P.O. Box 990<br>Las Vegas, NV, 89125-0990<br>(800) 727-4743<br>www.nsbank.com | **Zions First National Bank**<br>P.O. Box 30709<br>Salt Lake City, UT, 84130<br>(800) 789-BANK(2265)<br>www.zionsbank.com |

These updates or amendments may also include changes to fee schedules, interest rates, and other amendments to other agreements affecting your account, such as a wire agreement. The amendment or update will usually be made effective upon reasonable notice and will typically have a listed effective date. The reasonableness of an amendment or update will vary and depend upon the change and surrounding circumstances. Some changes may be implemented quickly and prior to you receiving notice; for example, unauthorized or fraudulent use on the account may cause us to freeze the account. Continued use or maintenance of an account, an account-related service or a safe deposit box after the effective date of a change means that you agree to the change. Interest rate changes or rules will typically be provided in separate documents or fee schedules or a Truth-in-Savings disclosure. For accounts with more than one owner, notices, account statements, disclosures, and other communication will be sent to only the address on record with the Bank for the account. You agree that notice to the address on file for the account or notice provided to any account holder constitutes notice to all other account holders. **YOU PROMISE TO PROMPTLY NOTIFY THE BANK OF ANY CHANGE IN YOUR STREET OR MAILING ADDRESS OR TELEPHONE NUMBER (AND ANY CHANGE OF EMAIL ADDRESS THAT YOU HAVE PROVIDED IN CONNECTION WITH ANY ACCOUNT-RELATED SERVICE).**

We reserve the right to close your account at our sole discretion. **IF YOUR ACCOUNT REACHES A ZERO BALANCE, YOUR ACCOUNT MAY BE CLOSED WITHOUT NOTICE.** If we elect to close your account for other reasons, we may do so upon giving you reasonable notice (which varies according to the circumstances), and we may freeze, limit activity, or otherwise condition your use of the account after notice and prior to closure. If we suspect possible fraud or use of your account in connection with illegal activities, we may close it immediately and notify you afterward. Upon closure, unless you make other arrangements with us, we will send you the balance of the account via check to the last address the Bank has in its records for the account. (If the Bank retains an open account of yours, the Bank reserves the right to move the funds of the closed account into the open account.) The Bank may return items unpaid that are presented after account closure.

If you request to close your account, you are responsible for notifying us of any transactions, whether debits or credits, that are still outstanding and have not cleared the account. You are also responsible for canceling any electronic/ACH debits or credits to your account. If we receive a debit or credit transaction after your account is closed, we may, at our discretion, reopen the account to post or reject the transaction. You are responsible for any service fees, including charges for insufficient funds, overdraft services, and the return of unpaid items, that may result from how we process the transaction. If your account is reopened, it may take up to 10 business days before your existing relationship rates and/or benefits are applied, if applicable.

If your account is closed before interest on the account balance is scheduled to be posted, you will forfeit the interest. We will not reverse service fees charged to, or credit forfeited interest on, your closed account if the account is later reopened at your request or by a transaction posting to the account as described above.

Your agreement to these terms, and your monetary and nonmonetary obligations to us by law or under this Agreement (including without limitation any overdraft or other amount that you may owe to us, our rights to indemnity, our rights to charge back or reverse amounts deposited to your account or paid to you, your obligation to review statements and report errors or unauthorized entries, and your agreement to the Dispute resolution provisions herein) shall all survive any closure of your account or termination of this Agreement.

3) **ACCOUNT OPENING AND CLIENT IDENTIFICATION**
We are required by law to document adequately the identity of all owners of an account and to be aware of the business and transactions that will be associated with the account. We will require documentary identification as part of this process. For entities, we will require adequate documentation to establish good standing, ownership, and entity authorization for the individuals who will be authorized signers. Generally, all accounts will require a federal taxpayer identification number, which for individuals will be your social security number. Failure to provide requested information may mean we do not open your account. Opening an account is no guarantee that the account will remain open or that the information requests are completed or satisfactory. We reserve the right at any time to request information about you, your account, and your transactions. Failure to supply satisfactory responses may cause us to terminate your account(s).

4) **ACCOUNT OWNERSHIP; ACCOUNT TYPES AND PAYABLE-ON-DEATH BENEFICIARIES**
Account ownership is governed by the signature card and the owner(s) designated thereon. Unless state law provides otherwise, we must consent to any change in account ownership and incorporate that change within our records before the change is effective between us. (For example, contribution of your account to your trust shall not be binding on the Bank unless you have also transferred the ownership on our records as reflected in our periodic statements for

4

the account.) We may not offer all types of forms of ownership that may be available to you under applicable state law. Federal law requires that we be aware of the type of business or transactions anticipated to be conducted on your account. We reserve the right to refuse to open or even close an account in our sole discretion without being required to supply an explanation. We reserve this right to reject or close an account even though we may have accepted an initial deposit or taken preliminary steps toward opening an account. It is your responsibility to select the proper type of account you wish to open or maintain. **IN GENERAL, THE ADDITION OF AN AUTHORIZED SIGNER ON ACCOUNTS OF NATURAL PERSONS MAKES THAT NEW AUTHORIZED SIGNER A CO-OWNER OF THE ACCOUNT UNLESS OTHERWISE INDICATED ON THE SIGNATURE CARD.**

**Beneficial Ownership on Business and Trust Accounts/Requests for Information:** We are required by law to adequately document the identity of direct owners and certain beneficial owners of Accounts and of companies receiving certain associated services. We must also be aware of the business and transactions that will be associated with the Accounts and any services you may receive. We will require documentary identification as part of this process. We will require you to provide adequate documentation to establish good standing, ownership, and entity authorization for the individuals who will be authorized signers, principals, and beneficial owners (as defined by FinCEN regulation or requested by us in our discretion). Failure to provide requested information to our satisfaction may mean we will not open your Account or provide you related services. Requesting the opening of any account or a related service is not guarantee that the Account will remain open, that we will continue providing an associated service, or that the information requests are completed or satisfactory. We reserve the right at any time to request updated information. Failure to supply satisfactory responses may cause us to terminate your Account and any related services.

The following is a list of account types available through one or more internal divisions of the Bank. Not all divisions offer all account types. Refer to the subsection governing the division through which your account was opened. In addition, any of the other subsections may apply to an account opened through any division.

a)   **THIS SUBSECTION APPLIES ONLY TO ACCOUNTS OPENED THROUGH <u>ZIONS FIRST NATIONAL BANK</u> OR <u>NEVADA STATE BANK</u> DIVISIONS.**
**(1) Individual Account** – This account is an account in the name of one person.
**(2) Joint Account - With Survivorship (and not as Tenants in Common)** – This account is an account in the name of two or more persons. Each of you intends that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common.
**(3) Joint Account - With Survivorship (and not as Tenants in Common or Community Property)** – This account is an account in the name of two or more persons. Each of you intends that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common. If the account is issued to spouses, they intend that any community property in the account be transmuted (changed) into separate property and that all the property in the account, including earnings, be held jointly with the right of survivorship. Upon the death of either spouse, the property will vest in and belong to the surviving spouse.
**(4) Revocable Trust or Payable-on-Death Account** – If two or more of you create this type of account, you own the account jointly with survivorship. Beneficiaries cannot withdraw unless:
(a) All persons creating the account die, and
(b) The beneficiary is then living.
If two or more beneficiaries are named and survive the death of all persons creating the account, beneficiaries will own this account in equal shares, without right of survivorship. The person(s) creating either of these account types may:
(a) Change beneficiaries,
(b) Change account types, and
(c) Withdraw all or part of the account funds at any time.
**(5) THIS SUBSECTION ONLY FOR ACCOUNTS OPENED AT NEVADA STATE BANK – Community Property Account – No Survivorship** – Such an account is issued to spouses who intend that all of the property in the account, including earnings, be held as community property without right of survivorship.

b)   **THIS SUBSECTION APPLIES ONLY TO ACCOUNTS OPENED THROUGH <u>NATIONAL BANK OF ARIZONA</u> OR <u>VECTRA BANK COLORADO</u> DIVISIONS.**
**(1) Single-Party Account** – Such an account is owned by one party.
**(2) Multiple-Party Account** – Parties own account in proportion to net contributions unless there is clear and convincing evidence of a different intent.
**(3) Rights at Death - Single-Party Account** – At the death of a party, ownership passes as part of the party's estate.
**(4) Rights at Death - Multiple-Party Account has Right of Survivorship** – At death of party, ownership of a multiple-party account passes to surviving parties. If two or more parties survive and one is the surviving spouse of the deceased party, the amount to which the deceased party, immediately before death, was beneficially entitled by law belongs to the surviving spouse. If two or more parties survive and none is the spouse of the decedent, the amount to which the deceased party, immediately before death, was beneficially entitled by law belongs to the surviving parties in equal shares and augments the proportion to which each surviving party, immediately before the deceased party's death, was beneficially entitled under law, and the right of survivorship continues between the surviving parties. (For a multiple-party account to be without a right of survivorship, it must be specifically noted by us on the signature card.)
**(5) Single-Party Account with Payable-on-Death Designation** – At death of the party, ownership passes to the designated payable-on-death beneficiaries who have survived the deceased owner and is not part of the party's estate.
**(6) Multiple-Party Account with Right of Survivorship and Payable-on-Death Designation** – At death of last surviving party, ownership passes to the designated payable-on-death beneficiaries who have survived the last surviving owner and is not part of the last surviving party's estate.

c)   **THIS SUBSECTION APPLIES ONLY TO ACCOUNTS OPENED THROUGH THE <u>AMEGY BANK</u> DIVISION.**
The type of account you select may determine how property passes on your death. Your will may not control the disposition of funds held in some of the following accounts. You may choose to designate one or more convenience signers on an account, even if the account is not a convenience account. A designated convenience signer may make transactions on your behalf during your lifetime, but does not own the account during your lifetime. The designated convenience signer owns the account on your death only if the convenience signer is also designated as a POD payee or trust account beneficiary.
**(1) Single-Party Account without "POD" (Payable on Death) Designation** – The party to the account owns the account. On the death of the party, ownership of the account passes as a part of the party's estate under the party's will or by intestacy.
**(2) Single-Party Account with "POD" (Payable on Death) Designation** – The party to the account owns the account. On the death of the party, ownership of the account passes to the POD beneficiaries of the account who survive the deceased owner. The account is not a part of the party's estate.
**(3) Multiple-Party Account without Right of Survivorship** – The parties to the account own the account in proportion to the parties' net contributions to the account. The financial institution may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account

passes as a part of the party's estate under the party's will or by intestacy. For multiple-party accounts to be without right of survivorship, it must be indicated by us on the signature card.

**(4) Multiple-Party Account with Right of Survivorship** – The parties to the account own the account in proportion to the parties' net contributions to the account. The financial institution may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes to the surviving parties. Multiple-party accounts will be considered with right of survivorship unless otherwise noted by us on the signature card.

**(5) Multiple-Party Account with Right of Survivorship and "POD" (Payable on Death) Designation** – The parties to the account own the account in proportion to the parties' net contributions to the account. The financial institution may pay any sum in the account to a party at any time. On the death of the last surviving party, the ownership of the account passes to the POD beneficiaries who have survived the deceased last surviving owner.

**(6) Convenience Account** – The parties to the account own the account. One or more convenience signers to the account may make account transactions for a party. A convenience signer does not own the account. On the death of the last surviving party, ownership of the account passes as a part of the last surviving party's estate under the surviving party's will or by intestacy. The financial institution may pay funds in the account to a convenience signer before the financial institution receives notice of the death of the last surviving party. The payment to a convenience signer does not affect the parties' ownership of the account.

**(7) Trust Account** – The parties named as trustees to the account own the account in proportion to the parties' net contributions to the account. A trustee may withdraw funds from the account. A beneficiary may not withdraw funds from the account before all trustees are deceased. On the death of the last surviving trustee, the ownership of the account passes to the beneficiary. The trust account is not a part of a trustee's estate and does not pass under the trustee's will or by intestacy, unless the trustee survives all of the beneficiaries and all other trustees.

**d)**   **THIS SUBSECTION APPLIES ONLY TO ACCOUNTS OPENED THROUGH THE <u>CALIFORNIA BANK & TRUST</u> DIVISION.**

As used in this agreement "party" means a person who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account other than as an agent.

**(1) Individual Account** – This account is an account in the name of one person.

**(2) Joint Account** – This account or certificate is owned by the named parties. Upon the death of any of them, ownership passes to the survivor(s).

**(3) Joint Account of Spouses with Right of Survivorship** – This account or certificate is owned by the named parties, who are spouses, and is presumed to be their community property. Upon the death of either of them, ownership passes to the survivor.

**(4) Community Property Account of Spouses** – This account or certificate is the community property of the named parties who are spouses. The ownership during lifetime and after the death of a spouse is determined by the law applicable to community property generally and may be affected by a will.

**(5) Tenancy in Common Account** – This account or certificate is owned by the named parties as tenants in common. Upon the death of any party, the ownership interest of that party passes to the named pay-on-death payee(s) of that party or, if none, to the estate of that party. For an account that has multiple or co-owners to be considered a Tenancy in Common account, it must be indicated by us on the signature card.

**(6) POD Account with Single Party** – This account or certificate is owned by the named party. Upon the death of that party, ownership passes to the surviving named pay-on-death payee(s).

**(7) POD Account with Multiple Parties** – This account or certificate is owned by the named parties. Upon the death of any of them, ownership passes to the survivor(s). Upon the death of all of them, ownership passes to the surviving named pay-on-death payee(s).

**(8) Totten Trust Account (subject to this form)** – If two or more of you create this account, you own the account jointly with survivorship. Beneficiaries cannot withdraw unless: (i) all persons creating the account die, and (ii) the beneficiary is then living. If two or more beneficiaries are named and survive the death of all persons creating the account, such beneficiaries will own this account in equal shares, without right of survivorship. The person(s) creating this account type reserves the right to: (A) change beneficiaries, (B) change account types, and (C) withdraw all or part of the account funds at any time.

**(9) Trust Account Subject to Separate Agreement** – We will abide by the terms of any separate agreement which clearly pertains to this account and which you file with us. Any additional consistent terms stated on this form will also apply.

**e)**   **THIS SUBSECTION APPLIES ONLY TO ACCOUNTS OPENED THROUGH <u>THE COMMERCE BANK OF OREGON</u> OR <u>THE COMMERCE BANK OF WASHINGTON</u> DIVISIONS.**

**(1) Individual Account** – This account is an account in the name of one person.

**(2) Joint Account with Right of Survivorship** – This account is owned by the named parties. Upon the death of any of them, ownership passes to the survivor(s).

**(3) Joint Account with No Right of Survivorship** – If your account is a joint account with no right of survivorship (Joint as Tenants in Common), upon the death of one of the joint account holders, that person's proportionate ownership interest will pass to the estate of the deceased account holder.

**(4) POD Account** – A Payable on Death (POD) account is an account payable to the account holder(s) during the holder's lifetime. Individual or joint accounts with right of survivorship may be set up as POD accounts. When all the account holders die, the account is owned by the POD payee(s) who survived the death of the last account holder. If there is more than one surviving POD payee, the respective interest of each shall be deemed equal as tenants in common, unless otherwise stated in our deposit account records and as allowed by applicable state law. (Washington state law, however, may make provision for a disposition by will that might override a prior beneficiary designation.) If there is no surviving POD payee upon the death of the last owner, funds in the Account will belong to the estate of the last owner of the account.

**(5) Totten Trust Account** – A Totten Trust Account, or an "In Trust For" or "ITF" account, is handled as a POD Account.

**(6) THIS SUBSECTION ONLY FOR ACCOUNTS OPENED ONLY AT <u>THE COMMERCE BANK OF WASHINGTON</u> – Community Property Account** – If your account is a community property account, the funds in your account are specified to be the community property of the named parties who are spouses. The ownership during the lifetime and after the death of a spouse is determined by state community property law and may be affected by a will.

**f)**   **UTMA Account** – The Uniform Transfers to Minors Act (UTMA) is a model act adopted with variations by most states, allowing the opening of an account by a custodian nominated in the transfer or gift to hold and control funds for the benefit of a child until that child reaches majority or otherwise provided under that state's UTMA. Thereafter, the (former) child receives unrestricted use of the funds. The custodian is obligated to control and access the funds in the account only for the benefit of the child; however, we are not responsible and have no duty to monitor the custodian's use or distribution of the funds. For this type of account, we use the child's Social Security Number/TIN.

**g)**   **Fiduciary Account** – Persons serving as a fiduciary (such as a trustee, or a personal representative or administrator of an estate, or a court-appointed conservator) may open up accounts in their fiduciary capacities. Underlying written documentation establishing the fiduciary appointment will be required. By opening a fiduciary account, you agree that we do not assume any fiduciary responsibilities and will not monitor the account for compliance with the underlying fiduciary arrangement (unless we otherwise specifically assume such duty in writing signed by an authorized Bank official).

**h)**    **Business Organization or Proprietorship Account, or Association Account** – Subject to any contrary requirement by law, interest will be paid only on collected funds. We normally require underlying organizational documents of the entity to establish good standing, and we also require written documentation manifesting the authorization for the intended authorized signers to act on the entity's behalf in relation to the account. **IT IS YOUR RESPONSIBILITY TO GIVE US NOTICE IF AUTHORIZATION CHANGES; OTHERWISE, CONTINUED MAINTENANCE OF THE ACCOUNT INDICATES YOUR AGREEMENT THAT WE MAY RELY ON THE AUTHORIZATION IN PLACE OR THAT WE HAVE ACCEPTED.** You represent and warrant that any account opened for or in the name of a business organization (including but not limited to a corporation, limited liability company, or partnership), proprietorship, or association is not established, maintained, or used for personal, family, or household purposes, and shall not otherwise be characterized for any reason as a "consumer" account.

**i)**    **Power of Attorney** – We are not required to respond to a power of attorney for matters where we would not otherwise be obligated to respond to or deal with the principal. State laws vary as to requirements or interpretation of a power of attorney and our duty, if any, to honor one. Generally, we recognize only a power of attorney given by a natural person in his or her personal capacity. You will need to discuss with your division if an attorney-in-fact will be allowed as a non-titled authorized signer on an account or will be honored only on a per transaction basis. We may request an attorney-in-fact to sign a certification as to the continuing validity of the power of attorney. We may also ask for additional documents, particularly where provided for in-state law. We have no duty and do not agree to monitor the actions of an attorney-in-fact for proper use of access to the account or otherwise. **A POWER OF ATTORNEY IS NO LONGER VALID ONCE THE PRINCIPAL DIES.** Unless it is durable, a power of attorney is no longer valid if the principal is incapacitated. You agree that we may continue to honor any power of attorney until we have received written notice (or otherwise have actual knowledge) that the power of attorney is no longer valid, and we have had adequate time to act thereon. You agree to indemnify, defend, and hold the Bank harmless for following the directions of your attorney-in-fact. Except as may be required by applicable state or federal law, we may refuse to comply with a power of attorney without cause or prior notice.

**j)**    **Death or Incapacity** – In case of death or incapacity of an authorized signer on or owner of the account, we must be notified promptly. Until notification and an opportunity to act thereon, we will continue to honor checks, debit card transactions, ACH withdrawals or payments, and other similar items on the account authorized by the signer.

**k)**    **Multiple-Party or Joint Accounts Services or Agreements** – Any owner of a joint owner account or party of a multiple-party account may bind the account to agreements, services, or arrangements with us affecting the account, such as (but not limited to) a wire transaction agreement, digital banking, sweeps, overdraft protection related products, *etc*.

**l)**    **Removal of Authorized Signer or Multiple or Co-Owner** – You will need to contact your local branch in order to remove any authorized signer on a deposit account. Removal of an authorized signer from an account does not terminate the authorization for any outstanding checks, items, debits, or other withdrawals issued or approved by the authorized signer prior to removal of the authorized signer. For any checks or items that were signed or issued by an authorized signer prior to removal from an account, you will need to issue stop payment orders on that specific check or item in order to ensure that the check or item is not paid. For future digital payments, withdrawals, debits, or ACH payments authorized by the deleted authorized signer, you will need to contact customer service or your local branch in order to stop or terminate those payments or withdrawals. If the authorized signer has access to any payments systems associated with the account (such as digital banking, ACH credits, or wires by telephone), and if you wish that signer to be removed from those payment systems as well, you must specifically request that additional removal; we shall have a reasonable time of at least two business days to update those other systems. You will need to change your digital banking access credentials if you previously shared digital banking access credentials with the removed signer or you have reason to believe that the removed signer had knowledge of those digital banking access credentials; if you do not, the removed signer will still have the ability to access your account and conduct transactions on your account.

**5)**   **DEPOSITS**

At our discretion, we may decline to deposit any item presented for deposit. We may accept without inquiry deposits to your account made by persons other than you. We have the right to require that any item presented for cashing be instead processed by both (i) a deposit and (ii) a withdrawal. If we do permit an item to be cashed rather than deposited, then (if there is an existing overdraft on any of your accounts), we can withhold the cash proceeds, up to the full amount of the check, as needed to payoff or reduce the overdraft. Do not mail in cash for deposit; we are not responsible for any attempted deposits of cash by mail. Except for cash deposits, the credit you receive for deposits is provisional and subject to our being able to collect any deposited items or amounts. The deposit credit will remain provisional until we collect the deposited item. Provisional credit will be reversed for items that are returned unpaid or for which payment is revoked. Before final settlement or collection of an item, we remain only your agent in accepting the item for deposit, notwithstanding any form or lack of endorsement.

We may require you to supply an endorsement guarantee from the financial institution of any co-payee on any item presented for deposit. Deposit of foreign currency items, if accepted, will be subject to the exchange rate effective in U.S. dollars at the time of final settlement or collection. Unless we provide otherwise, we accept foreign currency items only on a collection basis and do not provide provisional credit.

We are not responsible for items submitted via mail, courier or delivery service, or other depositories until we receive them. Deposits received after our daily cutoff time (or the time we indicate we are operating on the next business day) or after a daily closure before reopening will be treated as having been received the next business day we are open. We reserve the right to handle any item you want to deposit on a collection basis rather than a deposit (in which case we will not extend provisional credit). Any deposit or transfer credited to any account with us that is owned or controlled by you, or applied to any of your indebtedness to us, even if intended by you to be credited or applied to a different account or debt, shall be conclusively deemed to have been received by you and credited to your benefit.

**a)**    **Authorization of Deposits and Endorsements** – You agree that we may accept any item for deposit on which you are a payee even if you have not endorsed or otherwise signed the back of the item. For deposit of any items on an account with more than one authorized signer, you authorize us to give cash back on a deposit to any authorized signer. You authorize us to supply a missing endorsement for you on any item you present for deposit by virtue of us crediting the item into your account.

Most checks are marked with a 1½" space on the back for your endorsement; if not, use only the 1½" space on the back of your check along the side of the check that is the left edge of the front or face of the check. Your endorsement, including any added information, should be enclosed within this space, and your signature should be in blue or black ink.



FRONT OF CHECK



BACK OF CHECK

The remaining space on the back of the check is necessary for any additional endorsements and other information from the financial institutions depositing and paying the item. You agree that any delay caused by an endorsement impeding this information is your own responsibility and that you will indemnify and hold us harmless for any resulting claims or damages.

**b)** **Deposits of Remotely Created Checks** – You agree not to deposit any Remotely Created Checks (sometimes called "telechecks," "preauthorized drafts" or "demand drafts") without our separate express written consent. Even if we consent, you may be required to employ procedures established by us and to maintain a reserve account pledged to us in an amount we reasonably believe may be needed to cover future chargebacks, returned items, and/or claims that such items were unauthorized. Our consent, if any, may be withdrawn at any time in our sole discretion. Any receipt and processing of any Remotely Created Checks by us without such written consent shall be a breach of this Agreement, shall not act to waive your ongoing promise to not deposit such items in the future, and may result in account closure. You agree to indemnify us for any loss, expense, fine, penalty, or damage that we may incur in connection with any Remotely Created Check deposited by you.

A "Remotely Created Check" is a check or draft not created on the account holder's normal check stock and not actually signed by the account holder (the drawee). Rather, the check is typically created by the payee party or its payment processor upon the authorization of the account holder. Rather than an authorizing signature, the Remotely Created Check typically has in the normal signature space the printed name of the account holder or a statement that the account holder has authorized the check or that a signature is "on file." These checks are often created when an account holder grants authority over the phone for a payment. For each Remotely Created Check you give us for deposit or collection (with or without our prior permission), you warrant and agree as follows:
**(1)** You have express authorization from an owner or authorized signer, reflecting the authorized amount, date, payee, and account for such Remotely Created Check, and you have documentation of that express authorization (which may include appropriately authenticated voice recordings or electronic instruction);
**(2)** You will preserve that documentation of authorization for a minimum of two years, and you will produce and deliver it to us at our request; and
**(3)** If the check is returned unpaid, or the payment or check is revoked or disputed, notwithstanding the date of return, revocation, or dispute, and regardless of whether such return, revocation, or dispute was rightful, you owe us the check amount. We may take the amount you owe us from any of your accounts with us or any reserve account established for Remotely Created Checks, and you are liable for any deficiency.

**c)** **Requirements and Warranties with Truncated or Substitute Checks and Other Check Images** – On all truncated checks, substitute checks, or electronic images created by you of original checks, you warrant to us that nobody will present or make payment requests (to us or anyone else) on the original or any substitute or duplicative images if the payment obligation on the original check has been paid. You warrant that all substitute checks you present us comply with all applicable requirements and generally accepted specifications for substitute checks. You agree to retain the original check in conformance with our internal policy for retaining original checks. By presenting a substitute check to us, you agree to indemnify, defend, and hold us harmless for all our damages arising from your truncation or creation of the substitute check. We can decline deposit of any substitute checks not warranted by another financial institution pursuant to the Check 21 Act. Unless otherwise agreed in a separate writing, we are not required to accept any other digital or paper image of an original check.

**d)** **Return of Ineligible Direct Deposits** – Certain federal and other benefit payments are often required to be returned and paid by us if the account holder had lost eligibility for these payments. This return typically happens if an account owner dies and still receives the benefit payments. You agree that we may deduct the returned amount from the account or any other account you have with us, except as may be prohibited by law. We may also collect the returned amount from you by other legal remedies.

**e)** **Warranties—Business of Cashing or Purchasing of Checks** – If you are in the business of cashing or purchasing checks or other negotiable instruments then, in addition to your statutory and other contractual warranties, you also hereby warrant to us that each such cashed or purchased item you deposit with us contains the genuine and authorized signature of its purported drawer or maker and the appropriate endorsement of all payees and prior endorsees. That warranty survives any provision or final payment you may receive on the item, and we may debit your account for the amount of any settlement we may make with the drawee bank or other party (up to the amount of the applicable item) with respect to any item you deposit in breach of that warranty.

   f)    **Non-Payment or Return of Deposited Items** – YOU ARE RESPONSIBLE TO US FOR ALL CHECKS, ITEMS, OR OTHER AMOUNTS DEPOSITED WITH US THAT ARE RETURNED OR REVOKED, EVEN THOUGH WE HAVE MADE THE FUNDS AVAILABLE TO YOU. We reserve the right to charge back to or debit any of your accounts for any deposited items or amounts which are returned or revoked by electronic or other means at any time (including deposits initiated or made by third parties) and notwithstanding passage of a drawee bank's midnight deadline or other applicable deadline for returns. Such charge back or debit may result in an overdraft balance and associated fees. When there are insufficient funds in your accounts, or if we demand, you agree to immediately reimburse us. You agree to do everything reasonably within your ability to assist us in locating, identifying, or replacing a lost item. We may resubmit returned items for payment but have no obligation to do so.

**6)   YOUR ABILITY TO WITHDRAW FUNDS**

Funds from cash and check deposits are normally available the first business day after the business day on which we received your deposit (or the first business day if we received your deposit after hours or on a non-business day). Funds from electronic direct deposits (*e.g.*, payroll or government benefits) and wire transfers are normally available upon our receipt. When funds are "available," they can be withdrawn by you in cash, and we can use them to honor checks and payment orders.

A business day does not include Saturdays, Sundays, and federal holidays. If you make a deposit before closing on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after closing or on a day we are not open, we will consider that the deposit was made on the next business day we are open. The close of the current business day may be as early as noon at some branches but may be as late as 6 p.m. local time at others. You may ask for the specific business day cutoff at the branch accepting your deposit.

For ATM deposits, you will be notified by the ATM of the business day cutoff time. For deposits sent by mail, the day of your deposit will be the business day on which we receive your deposit.

For deposits in night depositories, see this Agreement's subsection entitled "**Night Deposit Facilities/Daytime Drop - Terms of Use; When 'Deposit' Occurs**" for details regarding when a deposit is considered received. If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it.

If we accept for deposit a check that is drawn on another bank, we may make funds from the deposit available for withdrawal immediately but delay your availability to withdraw a corresponding amount of funds that you have on deposit in another account with us. The funds in the other account would then not be available for withdrawal until the time periods that are described elsewhere in this disclosure for the type of check that you deposited.

Certain account-related services may employ different funds availability policies. In such cases, the service will provide you with separate notice of funds availability at the time of enrollment or the time of the transaction. (Services with different funds availability rules may include, without limitation, initial electronic deposits to accounts opened online, mobile remote deposits, or digital banking peer-to-peer payments.)

   a)    **Delays on Funds Availability** – Notwithstanding the following sections regarding funds availability, we reserve the right to send any item for collection instead of accepting it for deposit, and in such cases, we will delay availability until we have final settlement. We may delay funds availability under any other circumstance as permitted under applicable law (such as deposits of foreign currency or items denominated in foreign currency; deposits that are drawn on foreign banks; deposits that we decline to accept for deposit; and other deposits that are not governed under the funds availability rules of Regulation CC or similar provisions of law).

      i)    **Delays on Specific Deposit Items.** On some items, the deposited funds will not be available for withdrawal the business day following your deposit. The availability of deposited funds depends on the type of check that you deposit, and we may delay availability of deposited funds until the second business day following the day of your deposit. Nevertheless, $225 of your deposits will be available on the first business day.

We will notify you if your deposited funds will not be available for withdrawal on the first business day after deposit, and we will give you an indication of when the funds will be available for withdrawal. If we decide after you leave the Bank to delay availability of funds, or if you make a deposit where a Bank employee does not receive the deposit (*e.g.*, a mobile remote deposit of a check), we may give you notice of the funds availability delay by mail (or other method you have agreed to receive notice). If you need earlier access to the deposited funds, you will need to ask us specifically.

      ii)   **Other Delays.** Availability of a deposited check may also be delayed for the following reasons:

         (1) We have reason to believe the deposited check will not be paid;
         (2) The total amount of deposited checks in one day exceeds $5,525;
         (3) The deposited check is one that was previously unpaid when presented to a bank;
         (4) There have been multiple instances of overdrafts on your account within six months; or
         (5) An emergency exists, which makes it difficult or impractical for the Bank to make the funds available. Such an emergency might be a computer or other equipment failure or malfunction.

         If deposited check funds will not be available for withdrawal as provided in this subsection, we will notify you promptly, as circumstances allow. They will generally be available no later than the seventh business day after the day of your deposit.

   b)    **Funds Availability for New Customer Accounts** – This subsection applies to deposited funds or items in accounts of new customers. It controls over other sections, subsections, or provisions on funds availability in this Agreement. A new customer is one who has not had a deposit account with the Bank for 30 days immediately preceding the opening of the subject account. Electronic direct deposits are available the day of deposit. Check deposits may be delayed up to nine business days; however, cash, wire transfer, electronic direct deposit, and the first $5,525 deposited in one day from cashier's, certified, teller's, traveler's, and government checks will be available the first business day after the day of your deposit if the deposit meets certain conditions, so long as they are payable directly to you. (You may be required by us to use a special deposit slip.) The amount over $5,525 will become available no later than the ninth business day after deposit; however, if you do not personally deposit these checks (other than a U.S. Treasury check) with a teller at a physical branch, the first $5,525 of these checks will be made available not later than the second business day after deposit.

   c)    **Account Balances and Reported Status of Funds and Transactions for All Accounts** – All funds balances or check or other transaction status that we may report to you in any manner (*e.g.*, "available," "collected," "current," "cleared," "posted," "memo posted," "credited," "debited," or "paid," *etc.*) are merely accounting balances and references to or reflects simply the absence of holds by us in place. (See the section **Understanding your Account** Balances for discussion of some of these terms.) Such balances and transaction amounts are NOT representations that the stated balance or transaction status cannot or will not be reversed for reasons required or permitted by law, payment system rule, clearinghouse rule, this deposit account agreement, or other agreement with you, *etc.* (*e.g,* subsequent holds by us, return of checks previously credited to your account due to insufficient funds, stop

payment, breach of warranty, or fraud, *etc.*). Balances and transaction status are always subject to adjustment, reversal, or revocation for the foregoing reasons without prior notice; and bank employees are not authorized to make promises or representations to the contrary. Transactions by you in reliance on such reported balances or transaction statuses are at your own risk.

7) **WITHDRAWALS**

   a) **Understanding Your Account Balances.** It is important to understand that your account has two kinds of balances: a Current Balance and an Available Balance.

   **Current Balance.** The Current Balance is a computation our deposit system displays to show the amount of funds in your account after we have "posted" all transactions as of the time the figure is displayed. While it may seem that the Current Balance is the most up-to-date computation of the amount of funds in your account, that's not always the case. The Current Balance will not reflect your pending debit and credit transactions – for example, a check you have written but that we have not yet received for payment, a deposit by check that is subject to a hold, or a scheduled ACH credit to your account that we have not received.

   *Here's an example of how we calculate your Current Balance:*
   On Monday morning your account shows a $100 Current Balance, and during that day you write a check for $60. If the check recipient holds the check all day on Tuesday, on Tuesday evening your Current Balance will be $100 and will remain at that figure until the recipient deposits your check and it is paid $60 from your account. At that point, your Current Balance will be reduced to $40.

   **Available Balance.** The Available Balance is a computation our deposit system displays to show the amount of funds available for withdrawal or use at that moment. The Available Balance includes pending transactions that have been authorized but may not yet have been processed (posted), such as debit card POS transactions, online transfers, ATM transactions, and pending deposits.

   *Here's an example of how we calculate your Available Balance.*
   On Monday morning the Available Balance in your account is $100. If you swipe your debit card at a restaurant for $35, we will place an Authorization Hold on your account for $35. On Monday evening, your account would show a $65 Available Balance due to the authorized $35 payment to the restaurant. If the Current Balance also was $100 on Monday morning, it would be unchanged Monday evening because the payment to the restaurant had not yet posted. When the restaurant submits the transaction for payment (which could be a few days later and could be for more than $35 if you added a tip), we will post the debit (withdrawal) to your account, and the Available Balance – along with the Current Balance - will be reduced to $65 (or lower if you added a tip).

   **PLEASE NOTE:** Your Available Balance may not immediately reflect some of your withdrawal transactions including:
   • **Outstanding Checks and Bill Payments:** When you write a check from your account or set up automatic bill payments, those debit (withdrawal) transactions will not be reflected in your Available Balance at the time you authorize them to be made. Rather, they will be reflected in your Available Balance, as well as your Current Balance, when they post to (are paid from) your account.

   • **Merchant-Delayed Debit Card Transactions:** If a merchant obtains an Authorization Hold (this term is defined in the "**Additional Definitions**" section below) for an Everyday Debit Card Transaction (this term is also defined in the "**Additional Definitions**" section below) but does not submit the transaction for payment within 72 hours of the authorization, we will release the Authorization Hold on the transaction. In this event, your Available Balance would not reflect this transaction until it is submitted by the merchant and posted to (paid from) your account.

   **PLEASE NOTE:**
   • Because your Available Balance may not reflect some transactions, it is possible to overdraw your account if you rely on your Available Balance to determine if you have sufficient funds to cover a particular transaction.
   • The best way to know how much money you have available for withdrawal from your account (including all prior checks and authorizations) is to record and closely track all transactions that you or others make in your account. You may also check your account's Available Balance (and Current Balance) by viewing your account online, through our mobile banking application, at an ATM, and by inquiring by phone or at a branch.

   b) **Overdrafts and Related Fees.** An Overdraft occurs when the Available Balance in your account is insufficient to pay a debit (withdrawal) transaction, but we pay the transaction anyway.

   **Insufficient Funds Fee.** If we pay a debit transaction that overdraws your Available Balance by more than $5, we will charge your account an Insufficient Funds (NSF) Fee.

   *Here's an example of how an insufficient Available Balance will cause an Overdraft and lead to an NSF Fee. (For purposes of the example, assume the NSF Fee is $35.)*
   On Monday morning the Available Balance in your account is $100. Later that day you first write a check for $75 and then use your debit card at a restaurant for a $35 purchase. Because the restaurant transaction immediately causes an Authorization Hold (this term is defined in the "**Additional Definitions**" section below) of $35 to be placed on your account, your Available Balance is reduced to $65. If on Tuesday the $75 check (a withdrawal) is posted to your account before a credit (for example, a cash deposit) of $10 or more is posted, an Overdraft will occur. Because payment of the check will overdraw your Available Balance by $10 (in other words, your Available Balance will be -$10), we will charge a $35 NSF Fee. The NSF fee will be treated as a debit to your account, making your Available Balance -$45.

   **Continuing Overdraft Fee.** If your account remains overdrawn more than $5 for 7 consecutive calendar days, we will charge you a Continuing Overdraft Fee. (Accounts of The Commerce Bank of Oregon and the Commerce Bank of Washington will not be charged this Fee.) This fee will be charged:
   • for every consecutive 7-calendar day period that your account is overdrawn more than $5, for up to 3 Continuing Overdraft Fee charges;
   • in addition to any NSF Fee that may be imposed; and
   • whether or not your account is subject to our Standard Overdraft Practices or enrolled in our Debit Card Overdraft Service.

   *Here's an example of when we would charge a Continuing Overdraft Fee and how your account would be affected by it. (For purposes of the example, assume the Continuing Overdraft Fee is $30.)*

On Tuesday you overdraw your account by $10 (in other words, by more than $5). Tuesday will be the first calendar day we count when determining whether your account will be charged a Continuing Overdraft Fee. If your account remains overdrawn more than $5 for an additional 6 consecutive calendar days (in other words, for a total of 7 consecutive calendar days), we will charge a Continuing Overdraft Fee to your account following the close of business on the seventh calendar day (the following Monday). This example is illustrated in the table below.

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | Account Balance: -$10 Days Overdrawn >$5: 1 | Account Balance: -$10 Days Overdrawn >$5: 2 | Account Balance: -$10 Days Overdrawn >$5: 3 | Account Balance: -$10 Days Overdrawn >$5: 4 | Account Balance: -$10 Days Overdrawn >$5: 5 |
| Account Balance: -$10 Days Overdrawn >$5: 6 | Account Balance: -$10 Days Overdrawn >$5: 7 Continuing Overdraft Fee Charged at Close of Business: $30 | Account Balance: -$40 Days Overdrawn >$5: 8 | | | | |

**PLEASE NOTE:**

- There is an exception to the 7 consecutive calendar day rule: if the seventh consecutive calendar day your account is overdrawn by more than $5 falls on a Saturday, Sunday, or bank-observed holiday, the fee will be charged only if your account remains overdrawn by more than $5 at the close of business on the next calendar day we are open for business.
- You can avoid being charged a Continuing Overdraft Fee by not allowing your account to remain overdrawn more than $5 for seven consecutive calendar days. You may check your account balance (and make a deposit to your account) anytime through our digital (online or mobile) banking services or by visiting a bank branch during business hours.

c) **Additional Definitions:** This Withdrawals Section of the Agreement also uses the following defined terms:

**Authorization Hold.** When you conduct an Everyday Debit Card Transaction as a Signature-Based Transaction (defined below), the merchant requests that we authorize the transaction. When we authorize a transaction following the merchant's request, we typically note the amount of funds relating to that request by creating an "Authorization Hold" in your account. At the time we create the Authorization Hold, the Available Balance for your account is reduced by that amount (even though settlement will occur later and we will post the final transaction to your account). The amount of an Authorization Hold may be less than, the same as, or more than the final amount of the signature-based transaction.

**Everyday Debit Card Transaction.** A one-time transaction or purchase in which the cardholder provides their debit card or debit card number to a merchant for payment of goods or services that are not recurring. Each payment is normally authorized (confirmed) by you (usually with a PIN or cardholder's signature) at the time of the transaction or purchase. We are authorized to rely on the originating bank's or the merchant's coding of the transaction as an Everyday Debit Card Transaction for all purposes, including refusing or paying the charge and assessing the applicable fee if the account has an insufficient Available Balance.

**Item.** An item is any paper check or draft whether presented in paper form or electronic form. If indicated in the context, it may include an ACH debit or credit, or any form of electronic presentment.

**Overdraft.** An Overdraft occurs when the Available Balance in your account is insufficient to pay a debit (withdrawal) transaction, but we pay the transaction anyway. An Overdraft may cause you to incur an NSF Fee or other fee.

**PIN – Personal Identification Number.** A PIN is a secret code consisting of letters and/or numbers that is used to verify the identity of the individual trying to access a computer system, network, debit card account, etc. often through an ATM or debit card. It is commonly assigned to bank customers for use at automatic teller machines and merchant POS terminals.

**PIN-based Transaction.** A debit card transaction that requires you to enter your PIN at the time of a purchase from a merchant.

**Point-of-Sale (POS) Transaction.** A purchase transaction conducted at any merchant or self-service Terminal where your ATM Card or debit card is accepted.

**Recurring Debit Card Transaction.** A debit card transaction made on a regular basis, such as setting up your debit card to pay monthly bills. We are authorized to rely on the originating bank's or merchant's coding of the transaction as a Recurring Debit Card Transaction for all purposes, including refusing or paying the charge and assessing the applicable fee if the account has an insufficient Available Balance.

**Signature-Based Transaction.** A debit card transaction that does not require you to enter your PIN at the time of a purchase from a merchant. A debit card transaction could be processed as a "Signature-Based Transaction" even if you do not apply your signature at the time of the purchase, such as if you use the merchant's website for an online purchase.

d) **Who May Make Withdrawals –** Any person listed as an authorized signer on the account may make withdrawals, including amounts up to the balance of the account (including any amounts that the Bank may elect to honor as overdrafts or as advanced under Account Overdraft Protection services or Overdraft Deposit Transfer services). Each listed signer authorizes other listed signers to make withdrawals from the account or to endorse or deposit any item payable to you (or your order). Any authorized signer may conduct any available transaction on the account. In the event that we are presented a check, item, or other debit previously signed or initiated by an authorized signer whose authorization may no longer exist (*e.g.*, death, incapacity, deletion from signature card), we may at our discretion, pay that check, item, or other debit (but are not required to do so) so long as (i) the date of the check or item, or the initiation of the debit is prior to when authorization lapsed or was terminated, (ii) we have not been delivered written notice of the event causing the lapse of authorization along with reasonable identification of the affected items with sufficient time to implement the notice, or (iii) the check, item, or debit was initiated through an electronic service, such as bill pay, or using other digital or online access, for which the signer had access prior to

the lapse or termination of signing authority or for which you did not change or terminate digital banking or online login credentials to which the signer had access.

e) **Reservation of Right for Notice of Withdrawal** – We reserve the right to require notice in writing at least 7 days prior to any withdrawal from an interest-bearing account (other than a time deposit or demand deposit) and from any other savings account as defined by Regulation D. (We are required by law to reserve this right; however, our general practice is not to exercise it.) Early withdrawals from a time account (*e.g.*, prior to maturity or any required notice period) may be subject to restriction or penalty. See your notice of penalty for early withdrawal.

f) **General Rules** – Withdrawals must be made by methods that we specifically permit. We reserve the right to not pay check items on check stock or other forms not acquired from us and which we find unsatisfactory. If you make a check payable to multiple payees but fail to use an unambiguous term or symbol saying the check is payable to all payees jointly (such as "and" or "&" between named payees), then: (1) the law allows us, and you agree that we may, imply the term "or" and pay the check upon endorsement by any one named payee; but (2) you also hereby authorize us, in our sole discretion, to treat the check as payable to all payees jointly and to dishonor the check without liability to us if presented without the endorsement of all payees. We may reject withdrawals or transfers that exceed the limitations on the number of withdrawals or amounts for the account type or withdrawal method. For determining frequency, the date of the transaction is the date we process and complete the transaction. The Bank continues its review of required customer identification after the opening of an account or acceptance of an initial deposit, and we may impose withdrawal or other restrictions until we have completed our identification review.

We are not required to pay nonconforming items or requests, even if we have done so previously. If you exceed account transaction limitations, we may close your account or treat it as being a type of account that allows the number or type of transactions, in which case your account will be subject to fees, interest rates, and other rules of the applicable new account type.

You agree that we may pay any "substitute check" presented that replaces a valid check by you (so long as there are no errors in the creation of the substitute). For your availability to withdraw deposited funds, please review the section entitled **"Your Ability to Withdraw Funds."** If your account is not covered by that section on your ability to withdraw funds or any funds availability disclosure, you may inquire at the time of deposit as to the anticipated availability of the deposited funds. For determining adequacy of available account funds to pay any item, we may make that determination at any time after we receive the item until we return the item (or send notice). Although only one determination is required, any subsequent determinations will use the account balance and funds availability at the time of the subsequent determination.

g) **Restrictions on Number of Transfers** – You may make up to six withdrawals per statement month (or cycle of approximately four weeks) from your savings or money market account if (a) the withdrawal transfers funds to another of your accounts at the Bank or to another party and (b) the withdrawal is initiated by automatic set-up, telephone, check, debit card (or similar order), or preauthorization. Preauthorization means any agreed instruction to us to pay another party:

(1) At a specific time;
(2) Pursuant to a schedule; or
(3) Pursuant to any orders (including oral), including those through the Automated Clearing House (ACH).

We are not required to honor withdrawals exceeding this limit even if we have done so in the past, and we may charge you a fee if you exceed six withdrawals per statement month.

There is no monthly limit on account withdrawals if (a) the withdrawal is a transfer of funds to you, to another of your accounts at the Bank, or a payment of an amount you owe the Bank and (b) you conduct the withdrawal in person, by mail, or at an ATM.

h) **Large Cash Withdrawals** – You agree that in the event you request a large cash withdrawal, as determined by us in our sole and absolute discretion, you are solely responsible for your security once you take possession of your cash withdrawal. You additionally agree to execute, at our request, a release and indemnity agreement. Available currency at each branch may vary, and we may need reasonable advance notice of any large cash withdrawal. You agree to provide us with such notice.

i) **Restrictive Legends; Multiple Signatures** – Because of the volume of checks we handle, we must employ automated processing and do not individually examine each check item. Automated processing relies primarily on information encoded onto each item in magnetic ink (MICR) at the bottom of the check. Because of automated processing, you agree that the Bank is not required to review checks or other items (whether drawn on your account or deposited by you) to identify or enforce any special instructions or limitations or "restrictive legends." You agree that we may disregard restrictive legends or notations printed or inserted on the checks but not encoded on the MICR line, even though these legends may be important for your own purposes. A "restrictive legend" includes any added language that purports to condition or restrict the payment of the check, such as "valid only for 60 days," "Not to exceed $500," or "Amounts over $1,000 must be countersigned."

**We do not enforce multiple signature requirements unless we have explicitly agreed in a separate contract.** We can pay any check that bears an authorized signature, regardless of any printed legend or multiple signature lines that indicate you require multiple signatures. Any policy or internal authorization you adopt for multiple signatures on checks is for your internal control purposes only and shall not be binding or impose any duty of care on us. You bear the risk that a check bearing any authorized signature will be paid. You agree that we are not responsible for any damages, losses, or liability arising from your use or insertion of restrictive legends, additional signatures lines or requirements, or additional or special instructions on your checks.

j) **Internal Controls** – TO OUR COMMERCIAL/BUSINESS CUSTOMERS: We strongly recommend that you review your internal controls for fraud prevention as part of your duty to exercise ordinary care. These controls might include, among others: secured check stock, secured signature plates, inventory controls, separation of duties between the accessing of funds in the account and the review and balancing of the account statement on a timely basis, dual controls, updated signing authorities, timely reconciliation and daily digital or online review of account activity, secured canceled checks, secured hardware and software systems, password security, installation of Trusteer Rapport™ or similar software, and/or the use of our Positive Pay services. Positive Pay and ACH Positive Pay are available to our business customers to aid in preventing certain types of check and ACH fraud. We strongly recommend that our business customers execute our Positive Pay agreement and use our Positive Pay services. We also recommend that all accounts use check stock with anti-fraud security features.

k) **Facsimile Signatures** – We are not required to pay items with facsimile, digital, electronic, stamped, or scanned signatures or logos or marks substituting for signatures (collectively "Substitute Signatures"). If you desire to employ Substitute Signatures, you must make separate written arrangements with us. If you issue any check or other order containing a Substitute Signature, that issuance shall also constitute your authorization to us to pay and charge your

account for any subsequent checks or other orders drawn on us bearing that Substitute Signature. This authorization is valid regardless of who imprints the Substitute Signature or how it is imprinted so long as the Substitute Signature reasonably matches the example Substitute Signature we have. As the use or imprinting of a Substitute Signature is crucial, you must notify us immediately if you suspect misuse or loss of control of a Substitute Signature.

l) **Check Cashing** – We reserve the right to charge non-customers a fee when we cash a check payable to them that is drawn on your account. We are entitled to require reasonable identification (which may include a fingerprint). In our sole discretion, we may (but are not required) to also require proof that an individual presenting the item is authorized to act for the person named as payee (e.g., an officer authorized by a payee corporation). You agree that our refusal to cash a check based on lack of documentary identification or authorization to our satisfaction shall not constitute a wrongful dishonor of the item.

m) **Debit Card Purchase Transactions**. When you use your debit card for an Everyday Debit Card Transaction, you are making a withdrawal from your checking account. You may be asked to use your PIN, sign a sales slip or other document, or only to provide your debit card number. Some merchants may assess a fee for this type of transaction. We are not liable if a merchant or financial institution refuses to accept your debit card or debit card number. We are authorized to rely on the merchant's coding of the transaction as an Everyday Debit Card Transaction for all purposes, including refusing or paying the charge and assessing an NSF Fee if the account has an insufficient Available Balance. When a debit card transaction is conducted, the merchant requests that we authorize the transaction. In deciding whether to authorize the transaction, we look first at the Available Balance in your checking account. If that is not sufficient, we look at the amount of any available cash in a savings account, other checking account, or line of credit linked to the checking account under our Overdraft Protection Plan. And lastly, we may, at our discretion, apply our Debit Card Overdraft Service (if you've opted in to it). If the balances in any of these sources do not, in the aggregate, have funds sufficient to cover the requested transaction, we will not authorize the merchant to accept the transaction and the transaction, generally, will be declined. If, however, there are sufficient funds available in the various sources available to you, we will authorize the merchant to permit you to conduct the transaction.

(1) When a Debit Card Transaction is conducted as a PIN-based transaction, we deduct the amount of your transaction, including any charge imposed by the merchant, almost immediately from the Available Balance in your account.

(2) When an Everyday Debit Card Transaction is conducted as a Signature-Based Transaction, we place an Authorization Hold on the Available Balance in your account (refer to "**Effect of Authorization Hold on Other Transactions**" below). The Authorization Hold is placed for up to three (3) business days, excluding the time in which we conduct our nightly processing of deposits and items presented for payment; however, for some types of purchases we may place an Authorization Hold for a longer period. The merchant is responsible for submitting and settling the transaction, and we cannot require them to do so in a timely manner.

**NOTE:** Some merchants such as car rental companies or hotels, may request approval from us and indicate an estimate of the amount of your purchase. The estimated amount may be more or less than the actual, final amount of the purchase since, at the time you initiate the transaction, the merchant may not know the eventual, final amount of your purchase.

(3) When you use your debit card for an online purchase, some merchants (through a participating network) request approval of the transaction, but the amount is not deducted from your Available Balance until the merchant ships your purchase and submits the payment to us for settlement. We have no control over this arrangement with online transactions initiated by these merchants or the participating network. As is true with all your debit card transactions, you are responsible for keeping a record and closely tracking the transactions in your account so that you maintain a sufficient Available Balance to cover all transactions until they are posted to your account. We have no responsibility for whether a merchant submits a debit card transaction as PIN-based or signature-based but may rely on the manner of presentment of the transaction to us.

n) **Settlement of Signature-Based Transactions**. Once we have given authorization to the merchant on a Signature-Based Transaction and an Authorization Hold has been placed on your account, the merchant must settle the transaction by submitting the final transaction amount to us for processing. Generally speaking, settlement of Signature-Based Transactions will occur in one of the following two types of scenarios, which have different outcomes for the Authorization Hold:

(1) If the merchant settles within three business days, then the transaction will be paid, and the Authorization Hold will expire immediately. The debit (withdrawal) for the final amount is posted to your account, which reduces both the Available Balance and the Current Balance.

(2) If the merchant does NOT settle within three business days or we cannot match the merchant's transaction with the Authorization Hold due to, among other reasons, a variation between the amount of the transaction and the amount of the Authorization Hold, the Authorization Hold will expire—but the transaction might not be paid at that time. In this case, the funds which had been subject to the Authorization Hold will be credited to your Available Balance.

In both these scenarios, if the Available Balance in your account is not sufficient when the merchant submits the final transaction amount to us, the settlement may cause your account to incur an NSF Fee. This can occur even if your account had a sufficient Available Balance when the merchant requested authorization.

*Here's an example of how your account could incur an NSF fee under the second scenario presented above:*
On Monday morning, the Available Balance in your account is $100.00, and you expect that a payment (credit) will be made to your account by another person. During that day, you first write a check for $75.00 and, later, you use your debit card at a merchant for $65.00. We place an Authorization Hold in your account for $65.00, and that amount promptly reduces the Available Balance to $35.00. If by Thursday the merchant has not submitted the final transaction amount to us, the Authorization Hold expires, and the amount of funds is credited to your Available Balance, bringing the Available Balance to $100.00 by Thursday evening. On Friday, we process and post the debit (withdrawal) transaction for $75.00 for the check you wrote, and that debit reduces your Available Balance to $25.00. However, by the following Monday, the payment (credit) from the other person has not yet posted. If on that next Monday the merchant presents the original debit card transaction for payment, and the Available Balance is less than the amount needed to pay the transaction of $65.00, the debit card transaction will overdraw your account and you may incur an NSF Fee.

Please refer to the "**Effect of Authorization Hold on Other Transactions**" section of this Agreement for more information.

In all situations described above, we are legally obligated to pay the actual final amount of the authorized transaction to the merchant. However, for an Everyday Debit Card Transaction, an NSF Fee will be charged only if you have opted into Debit Card Overdraft Service and you don't have a sufficient Available Balance when the merchant settles. Please refer to the **"Standard Overdraft Practices"** section of this Agreement for more information.

o)   **Effect of Authorization Hold on Other Transactions.** Debit card transactions and related Authorization Holds may impact your Available Balance. It is important to know that your Available Balance may change between the time you authorize a debit card transaction and the time the transaction is paid. You are responsible for maintaining a sufficient Available Balance in your account to cover the full amount of a debit card transaction (to include, for example, additional tip placed on a restaurant transaction) plus any other debit (withdrawal) transactions you or others have conducted that may post to your account during the Authorization Hold.

An amount subject to an Authorization Hold may not be applied to settle a specific debit card transaction or any other specific transaction.  Rather, an Authorization Hold "earmarks" the funds pending merchant settlement and may affect other transactions as follows:

(1) During nightly processing, the Authorization Hold may still allow other transactions to post to your account according to the order in which we pay Items (please refer to the **"Credits to Your Account and Order of Processing Withdrawals"** section of this Agreement for more information). As such, when the merchant finally settles, we are legally obligated to pay the transaction even if you have conducted other transactions that have depleted your Available Balance.  *In that case you may incur an NSF Fee even if your account had a sufficient Available Balance when the merchant requested authorization.*

If you have not opted into the Debit Card Overdraft Service, we will not charge an NSF Fee for paying a charge to your checking account against an insufficient Available Balance if the originating bank or the merchant has coded the transaction as an Everyday Debit Card Transaction. For example, if another transaction, such as a check or ACH transaction is presented for payment in an amount greater than the Available Balance in your account after the Authorization Hold has been placed, and we decide to pay the transaction, your account may become overdrawn and you may be subject to an NSF Fee. If we do not pay the presented transaction, the Item(s) may be returned, and you may be subject to an NSF Fee. Please refer to the **"Standard Overdraft Practices"** section of this Agreement for more information.

(2) During the day, the presence of an Authorization Hold (which may be for more or less than the actual amount of the purchase) on your account could affect the Available Balance needed to cover other transactions that may be trying to post to your account (e.g., PIN-based debit card transactions and in-branch transactions). Depending on the aggregate amount of the Authorization Hold(s) (for one or more transactions), other debit (withdrawal) transactions that you initiate may be declined.

If you do not ultimately use your debit card to pay for your purchases or if the actual amount of purchases posted to your account varies from the estimated amount authorized by us, it is the responsibility of the merchant, not us, to cancel the prior authorization based on the estimated amount. The failure of the merchant to cancel a prior authorization may result in a temporary reduction of your Available Balance. If the authorization is for an amount higher or lower than the actual purchase amount, the Authorization Hold may remain on your account even after the actual purchase is paid from your account. The actual purchase amount will be paid from your account whenever the merchant sends it to us, even if that is after the Authorization Hold has expired.

NOTE: Your Available Balance (when viewed through digital, online, and mobile services) may not immediately reflect the amount of a Signature-Based Transaction during the day of the purchase.

p)   **Standard Overdraft Practices.** We may choose, at our discretion, to assist you with an unplanned or occasional Overdraft by paying checks, ACH, Recurring Debit Card Transactions, and other Items drawn on your account and charging you an NSF Fee when your account does not have a sufficient Available Balance to cover those Items either at the time we receive the transaction for posting to your account. We decide whether to pay a particular Item at our sole discretion by evaluating a number of factors relating to your account.

NOTE: Our Standard Overdraft Practices do not apply to ATM transactions and Everyday Debit Card Transactions. Generally, we will not authorize and pay Overdrafts for those transactions if your account is not in good standing or if your account has had too many Overdrafts and unless you have authorized us to do so. Refer to the "Debit Card Overdraft Service" section below.

**Opting Out of our Standard Overdraft Practices-** If you do not want us to pay checks, ACH, or Recurring Debit Card Transactions at our discretion when doing so will overdraw your checking account, you may opt out of our discretionary Standard Overdraft Practices by contacting your local branch or by calling our Contact Center at the appropriate toll-free telephone number listed below. Your opt out choice will become effective within two (2) Business Days of your request. Also, if you choose to opt out of Standard Overdraft Practices, you will not be able to opt in to our Debit Card Overdraft Service (see below).

NOTE: Even if you have opted out of our Standard Overdraft Practices, there still may be times when an Item is paid, an Overdraft occurs, and an NSF Fee is charged. In addition, if we do not pay an Item, you will incur an NSF Fee if we return an Item because your account has an insufficient Available Balance.  The dishonoring of a check, ACH Item, Recurring Debit Card Transaction, or other Item drawn on your account could result in additional fees or other consequences imposed under your agreement with the payee or by law.

We reserve the right to amend or terminate our Standard Overdraft Practices without notice at any time. Additionally, there are certain instances where checking accounts are not eligible for our Standard Overdraft Practices. For joint accounts, the choice to opt in or opt out of Standard Overdraft Practices by any account holder shall be considered the choice of all account holders.

q)   **(Daily Overdraft Service Fee—Replaced).** A prior section on a Daily Overdraft Service Fee has been replaced with the Continuing Overdraft Fee and moved into the section above on **Overdrafts and Related Fees.**

r)   **Debit Card Overdraft Service.** The Debit Card Overdraft Service is a service whereby we, at our sole discretion, may choose to assist you with unplanned or occasional overdrafts by authorizing and paying ATM withdrawals and Everyday Debit Card Transactions against an insufficient Available Balance and charging you an NSF Fee. (This service not available at The Commerce Bank of Oregon or The Commerce Bank of Washington.)

**NOTE:** At account opening you are automatically opted out of Debit Card Overdraft Service, and if you wish to continue opting out, you will be asked to confirm your opt out choice during the checking account opening process. As long as you are opted out, we will not charge an NSF Fee to your checking account for paying against an insufficient Available Balance if the transaction is coded as an Everyday Debit Card Transaction by the originating bank or merchant. Instead, these transactions will generally be declined when you have an insufficient Available Balance. Also, even when you are opted out of Debit Card Overdraft Service, there still may be circumstances when the transaction will be authorized and overdraw your checking account. However, in these cases, you will not be charged an NSF Fee.

**Opting Into and Out of Our Debit Card Overdraft Service -** If you DO want us to pay ATM or Everyday Debit Card Transactions at our discretion when doing so will overdraw your checking account and cause you to incur an NSF Fee, you will be given the opportunity to opt in to our Debit Card Overdraft Service during the account opening process.

After you have opted in, you have the right to opt out of our Debit Card Overdraft Service at any time by calling the appropriate toll-free telephone number listed below, visiting your branch, or logging in to digital banking.

When you opt in or opt out of our Debit Card Overdraft Service, your choice will become effective within two (2) Business Days of your taking action. We reserve the right to amend or terminate Debit Card Overdraft Service or your participation in the Debit Card Overdraft Service (*i.e.*, we may assign you an opt-out status) without notice at any time. Additionally, there are certain instances where checking accounts are not eligible for the Debit Card Overdraft Service.

For joint accounts, the choice to opt in to Debit Card Overdraft Service by any account holder shall be considered the choice of all account holders. Similarly, the choice to opt out of Debit Card Overdraft Service by any account holder shall be considered the choice of all account holders.

s)   **Overdraft Protection Plans.** We offer Overdraft Protection Plans, such as a deposit account or line of credit linked to your checking account (credit approval required) which may be less expensive than our Standard Overdraft Practices and/or Debit Card Overdraft Service. (The Commerce Bank of Oregon and The Commerce Bank of Washington do not offer these Plans.) Refer to the applicable schedule of fees for these Overdraft program alternatives.

The schedule of fees for your account explains the fees and other charges that apply to Overdraft Protection plans. Please carefully review the schedule of fees for your account.

Please note the following: Some accounts are not eligible for these plans. Under some plans we make transfers in a minimum amount so we might not make a transfer if you do not have at least the minimum transfer amount available under the plan. To have overdraft protection, at least one owner of the checking account must be an owner of the other linked. Certain other restrictions apply.

i)   **Overdraft Protection from Another Deposit account.** This plan links your account to another deposit account you have with us for overdraft protection. The other deposit account can be a second checking account or a savings account. When you do not have enough available funds in your account to cover an item, we may automatically transfer funds from the Available Balance in your other deposit account to your account. We generally charge an overdraft protection transfer fee for each transfer. Funds you deposit into your other deposit account may not be available immediately for overdraft protection transfers. If you use your savings account for this service, each transfer counts as one of the six limited transactions you are allowed each month from your savings account. We will cancel this Overdraft Protection plan if your account or the other deposit account is closed.

Please see the applicable schedule of fees for your account for more information about overdraft protection from another deposit account.

ii)   **Overdraft Protection from Your Line of Credit.** This plan links an eligible line of credit you establish with us to your account for overdraft protection. When you do not have enough available funds in your account to cover a check or other item, we may automatically advance funds from your linked line of credit and transfer the funds to your account. The advance is made under, and is subject to, the terms and conditions described in the line of credit agreement. We ordinarily make the advance as long as you are not in default under the line of credit agreement and as long as the advance does not cause you to exceed the amount of your available credit on your line of credit. The funds advanced are subject to fees and finance charges under the line of credit agreement. We may also charge an additional overdraft protection transfer fee to your account for each transfer.

Please see your line of credit agreement for more information about overdraft protection from your line of credit.

t)   **Good Account Management.** We encourage you to keep careful records of your account transactions and practice good account management. You should be aware that the amount of funds that are included in the Available Balance may not include the full amount of recent deposits that are posted at the end of each day (please refer to the **"Your Ability to Withdraw Funds"** section of this Agreement for more information) or any amounts that we have placed on hold (*e.g.*, due to garnishments or account disputes). You should always also be aware of all of the withdrawal transactions that you have initiated but that may not have posted to your account, which is described in greater detail in the **"Credits to Your Account and Order of Processing Withdrawals"** section of this Agreement.

For example, a check that you write may not post to your account for many days. On Signature-Based Transactions, we will place an Authorization Hold on funds in your account based on preliminary information that we receive electronically from the merchant, which reduces the amount of funds in the Available Balance. If we do not promptly receive the final transaction information from the merchant, the hold may expire before the transaction finally posts. In that event, the amount of funds in the Available Balance will appear to be higher than it actually is.

Being aware of how much you spend, and by what method (check, debit card, etc.) will help you to avoid initiating withdrawal transactions that will cause you to incur NSF and Overdraft Service fees. The best way to know how much money you have available (including all prior checks and authorizations) is to record and closely track all of your transactions.

If you would like to receive a copy of our schedule of service fees or if you would like further information on our overdraft protection plan options (if applicable), please contact us at your convenience:

Amegy Bank
(800) 287-0301
www.amegybank.com

California Bank & Trust
(800) 400-6080
www.calbanktrust.com

National Bank of Arizona
(800) 497-8168
www.nbarizona.com

Nevada State Bank
(800) 727-4743
www.nsbank.com

The Commerce Bank of Oregon
(503) 548-1000
www.tcboregon.com

The Commerce Bank of Washington
(800) 998-4035
www.tcbwa.com

Vectra Bank Colorado
(800) 232-8948
www.vectrabank.com

Zions First National Bank
(800) 789-BANK(2265)
www.zionsbank.com

u)   **Credits to Your Account and Order of Processing Withdrawals –** Generally, we will post the transactions and calculate the new Current Balance as follows:

i)   **Credit (deposit) transactions[1] -** We post credit transactions, such as deposits by cash or check, ATM deposits, direct deposits, wire transfer deposits, and corrections to your account balance before any debits are posted. Exceptions to this practice can include automated bank-generated credits, such as interest earned on your account, and certain service fees which post to your account immediately after the credit transaction to which the fees relate (for example, deposit correction fees or incoming wire transfer fees) are posted to the account.

ii)   **Debit (withdrawal) transactions –** After we post credit transactions to your account, we post the debit (withdrawal) transactions received the same business day by dividing debit transactions into separate groups. For example, all debit card transactions are collected in one group; Automated Clearing House (ACH), and check transactions in another group. We then sort the transactions generally within each group chronologically and post the sorted groups to your account in the following sequence:

(1) Certain automatic transfers of funds that you have authorized (for example, transfers to cover overdrafts if you have enrolled in such service);

(2) Cash-paid checks;

(3) Other cash-paid withdrawals and legal items (for example, a garnishment or levy);

(4) Wire transfers and related fees;

(5) Adjustments and deposited items returned;

(6) ATM and debit card transactions;

(7) ATM and debit card transaction fees;

(8) Account Analysis-generated fees;

(9) Transfers to loans, other accounts, and related fees;

(10) ACH withdrawals and pre-authorized debits;

(11) Other checks; and

(12) Other fees.

[1]Real-Time Payments are processed throughout the day. As these transactions come in, they will be posted to your account in the order in which they are received and may post after one or more debits.

v)   **Payment of Postdated Checks –** We do not review checks for post-dating (a date on the check that is in the future). You agree that we may pay postdated checks.

w)   **Stale-Dated Checks –** A stale-dated check is a check with a date that is six months or more before presentation to the Bank. At our discretion, we may pay a stale-dated check issued by you. Our Agreement, however, does not require us to pay a stale-dated check even if we have previously paid them. If you no longer wish a check to be paid, you should place a stop payment order.

x)   **Stop Payments –** Stop payment orders on checks must be given consistent with law and must afford us a reasonable opportunity to act thereon. You or any authorized signer on an account may issue a stop payment order on any item. You may stop payment on any item drawn on your account whether you signed the item or not. Your stop payment order must specifically state all of the following crucial information (or such lesser combination as we may specify at the time) of the check: account number, amount, payee, date, and check number (or serial number). If you do not provide all of the applicable above information, or do not give us reasonable opportunity to act on your order, the Bank will not be liable for inadvertent payment of the item.

In issuing us any stop payment orders, you agree to indemnify and hold us harmless against any claims or damages arising from carrying out the order, including attorney fees. Your stop payment order also constitutes your agreement to cooperate with us in defending against any litigation or handling any claims against us arising from the stop payment order. Your stop payment order also constitutes your assignment to us of any rights you have against the payee or holder of the check. Despite a stop payment order, a "holder in due course" of your check may have the right to collect the check against you notwithstanding any defenses or claims you may have against the payee of the check.
Our stop-payment cutoff time is one hour after the opening of the next business day after the business day on which we receive the item.

We generally are not able to stop payment against any cashier's checks that you have purchased from us (although a stop payment order may be accepted after 90 days of the date of the check and only for loss, theft, or destruction of the check, and you must sign an affidavit and an agreement of indemnification).

If we pay an item against a valid stop-payment order, we may be liable to you for up to the amount of the item if you had a legal right to stop payment. You must establish, however, that you suffered a loss because of the payment. We will not be liable for any amount(s) in excess of the face amount of the item. We also may have certain rights of subrogation that we may be able to assert in defense of or as an offset against liability to you.

If your check has been converted to an electronic transaction (ACH) and you wish to stop that transaction, contact your Bank representative promptly. Checks converted to ACH require different stop payment procedures. Stopping the paper check will not stop the electronic transaction.

There may be a charge for each stop-payment order, and each stop-payment order will expire after one year (unless otherwise disclosed by us when the stop payment is placed). If the item is still outstanding after that time, you may request another stop-payment order for an additional like period and for an additional fee. We are not obligated to notify you when a stop-payment order expires. If your stop-payment order is given orally, we may request you confirm it in writing within 14 days for it to remain in effect.

*Note*: Your foregoing rights to stop payment do not extend to cashier's checks, official checks, teller's checks, or money orders for which you are not identified as the drawer, or other instruments not issued by you. You may request that we attempt to dishonor such an instrument that we issued for you, but (1) we shall have no obligation to accept your request, and (2) even if we accept your request, we shall have no liability to you if we nevertheless choose or are subsequently compelled to pay the instrument. Without limiting the foregoing, if we believe that such an instrument is presented by or for a person who might be a holder in due course, or who might otherwise have the right to obtain payment from us, we can pay that instrument without notice to you (even if you have paid us a fee to request dishonor of the instrument). To request us to dishonor such an instrument, we may require that you pay us a nonrefundable processing fee and to execute an agreement holding us harmless from any loss that you, we, the payee, or any other person may incur as a result of dishonoring the instrument (or paying such an instrument despite your request).

y) **Remotely Created Checks (Drawn on Your Account)** – Like any standard check, a remotely created check (sometimes called a telecheck, preauthorized draft, or demand draft) is a check or draft that can be used to obtain payment from your account. Unlike a typical check or draft, however, a remotely created check is not signed by you. In place of your signature, the check usually has a statement that you have authorized the check or has your name typed or printed on the signature line. For example, if you provide your account number in response to a telephone solicitation, the telephone solicitor can use the account number to issue a remotely created check to withdraw money from your account. If you authorize a third party to draw a remotely created check against your account, you may not later change your mind and try to revoke your authorization or rescind payment by claiming that the check was unauthorized. We may honor the remotely created check, and—if there are insufficient funds in your account—you still owe us the remaining balance. We may also refuse to honor any remotely created checks drawn on your account without cause or prior notice.

8) **SUBSTITUTE CHECKS AND YOUR RIGHTS**
**\* What is a substitute check?**
To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.
Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

**\* What are my rights regarding substitute checks?**
In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, insufficient funds fees).
The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.
If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) not later than 45 calendar days after we received your claim.
We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

**\* How do I make a claim for a refund?**
If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us at:

| | |
|---|---|
| Amegy Bank | Nevada State Bank |
| (800) 287-0301 | (800) 727-4743 |
| www.amegybank.com | www.nsbank.com |
| | |
| California Bank & Trust | The Commerce Bank of Oregon |
| (800) 400-6080 | (503) 548-1000 |
| www.calbanktrust.com | www.tcboregon.com |
| | |
| National Bank of Arizona | The Commerce Bank of Washington |
| (800) 497-8168 | (800) 998-4035 |
| www.nbarizona.com | www.tcbwa.com |

Vectra Bank Colorado
(800) 232-8948
www.vectrabank.com

Zions First National Bank
(800) 789-BANK(2265)
www.zionsbank.com

You must contact us within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include:
(1) A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
(2) An estimate of the amount of your loss;
(3) An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
(4) A copy of the substitute check or the following information to help us identify the substitute check: your name, your account number, the check number, the amount of the check, the date of the check, and the name of the person to whom you wrote the check.

**\* May I deposit a substitute check?**
You agree not to deposit substitute checks or checks bearing a substitute check legal equivalence statement (*e.g.*, "This is a legal copy of your check. You can use it the same way you would use the original check.") to your account without our prior written consent. Unless we agree otherwise in writing, our acceptance of such checks shall not obligate us to accept such items at a later time, and we may cease doing so without prior notice. You agree to indemnify, defend, and hold us harmless from all losses, costs, claims, actions, proceedings, and attorney's fees that we incur as a result of any such checks that you transfer to or deposit with us, including without limitation, any indemnity or warranty claim that is made against us because:
(1) The check fails to meet the requirements for legal equivalence;
(2) A claimant makes a duplicate payment based on the original check, the substitute check or paper, or electronic copy of either; or
(3) A loss is incurred due to the receipt of the substitute check rather than the original check.
Upon our request, you agree to provide us promptly with the original check or a copy that accurately reflects all of the information on the front and back of the original check when it was imaged.

9)  **INDEMNITY**
Each owner agrees to indemnify, defend, and hold harmless the Bank and its officers, agents, and employees from all costs (including without limitation attorney's fees), losses, claims, actions, and proceedings that arise directly or indirectly from: (1) the Bank's actions and omissions in accordance with this Agreement or your instructions, or (2) actions or omissions by any of you or your agents.

This means, generally speaking, you agree not to assert claims against the Bank if it does what it promises to do in managing your account and processing your transactions. For example, if you write a check for more than is in your account, we may pay or refuse to pay the check without us having any liability to you. You also promise to defend us if we get sued for following your instructions. For example, if you ask us to stop the payment of one of your checks, you agree to defend us if the payee asserts a claim against us for refusing to pay the check.

Each account owner agrees to be responsible for the actions that you or your agents take. For example, if you or another signer on your account writes a check for more than is in the account that we pay, you are jointly and individually liable to us for the overdraft. If you appoint someone as your attorney-in-fact, and that person overdraws your account, you are liable for the person's actions as well and must repay the overdraft.

This indemnity provision does not apply if the claim arises from our action or failure to take an action that would constitute a violation of our agreement with you. It does not protect us, for example, if we pay a check over a valid and timely stop payment order. This indemnity provision shall survive any termination, amendment, or expiration of this Agreement, or any other relationship between the parties.

10) **TRUTH-IN-SAVINGS DISCLOSURE**
Please refer to the separate Rate and Fee Schedules for a detailed listing of our accounts, minimum balance requirements, and service fees. Current interest rates and annual percentage yields may be obtained by calling Customer Service at (800) 287-0301 for Amegy Bank, (800) 400-6080 for California Bank & Trust, (800) 497-8168 for National Bank of Arizona, (800) 727-4743 for Nevada State Bank, (503) 548-1000 for The Commerce Bank of Oregon, (800) 998-4035 for The Commerce Bank of Washington, (800) 232-8948 for Vectra Bank Colorado, and (800) 789-BANK(2265) for Zions First National Bank.

a)  **Interest Checking Accounts, Money Market Accounts, and Savings Accounts**
i) **Rate and frequency and determination of rate changes.** We may change your interest rate and annual percentage yield at any time at our discretion.
ii) **Compounding and crediting frequency.** The compounding and crediting frequency for your account will be disclosed at account opening or upon request.
iii) **Effect of closing an account.** If you close your account before interest is credited, you will not receive the accrued interest (except for accounts at The Commerce Bank of Oregon and The Commerce Bank of Washington).
iv) **Computation method.** The computation method used to determine the account balance for calculating the interest on your account will be disclosed at account opening or upon request.
v) **Accrual of interest on noncash deposits.** Interest begins to accrue not later than the business day we receive credit for the deposit of noncash (checks).
vi) **Transaction limitations.** Transfers from a savings account or money market account to another account or to third parties by preauthorized, automatic, telephone, digital/online or computer transfer, check, debit card, or similar order to third parties are limited to six per statement month. For purposes of the transaction limitation, we count Money Market checks as of the date we post them to your account, not as of the date you write them. You may make an unlimited number of withdrawals from your account in person, by ATM, or by mail or messenger. Some account types may have fees for withdrawals that exceed the set number specified in the separate Rate and Fee Schedules. (*See* section on "**Restrictions on Number of Transfers.**")

b)  **Time Deposits (Certificates of Deposit)**
i) **Rate information.** You will be paid the disclosed rate until first maturity.
ii) **Compounding and crediting frequency.** Interest compounding and payment frequency will be disclosed at account opening or upon request.
iii) **Daily balance computation method.** We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.
iv) **Accrual of interest on noncash deposits.** Interest begins to accrue on the business day you deposit noncash items (for example, checks). For customers at The Commerce Bank of Oregon or The Commerce Bank of Washington, interest begins to accrue when we receive credit for noncash items.
v) **Transaction limitations.** Withdrawal and deposit limitations will be disclosed at account opening or upon request.

**vi) Early withdrawal penalties.** A penalty may be imposed for withdrawals before maturity. Specific penalty information will be disclosed at account opening or upon request.

**vii) Early withdrawal penalties (and involuntary withdrawals).** We may impose early withdrawal penalties even if you don't initiate the withdrawal (*e.g.*, in a garnishment). We may close your account and impose a penalty on the entire account balance in the event of a partial early withdrawal. See the separate Rate and Fee Schedules for additional information.

**viii) Withdrawal of interest prior to maturity.** The annual percentage yield assumes interest will remain on deposit until maturity. A withdrawal will reduce earnings.

**ix) Automatically renewable time accounts.** Renewable time deposits will automatically renew at maturity. For you to prevent automatic renewal, you must either at maturity (or within any grace period) withdraw the funds or deliver to us written notice within any grace period. We can prevent renewal if we mail (or otherwise deliver as you have agreed) notice to you at least 30 calendar days before maturity. If automatic renewal is avoided, interest will cease to accrue after final maturity, and the applicable interest rate will be our prevailing savings account rate at that time. After maturity, you have a grace period to withdraw the funds without a penalty, which period will be disclosed at account opening or upon request.

**x) Non-automatically renewable time accounts.** Nonrenewable time deposits will not automatically renew at maturity. If you do not renew the account, interest will not accrue after maturity.

**11)  ELECTRONIC FUND TRANSFERS – YOUR RIGHTS AND RESPONSIBILITIES**
This Electronic Fund Transfer disclosure does not apply to any accounts other than consumer accounts, as defined by Regulation E. Indicated below are types of Electronic Fund Transfers we are capable of handling, some of which may not apply to your particular account. Please read this disclosure carefully because it tells you your rights and obligations for the transactions listed. You should keep this notice for future reference.

**a)  Electronic Fund Transfers Initiated by Third Parties –** You may authorize a third party to initiate electronic fund transfers between your eligible account and the third party's account. These transfers to make or receive payment may be one-time occurrences or may recur as directed by you. These transfers may use the Automated Clearing House (ACH) or other payments network. Your authorization to the third party to make these transfers can occur in a number of ways. For example, your authorization to convert a check to an electronic fund transfer or to electronically pay a returned check charge can occur when a merchant provides you with notice and you go forward with the transaction (typically, at the point of purchase, a merchant will post a sign and print the notice on a receipt). In all cases, these third party transfers will require you to provide the third party with your account number and bank information. This information can be found on your check. Thus, you should only provide your bank and account information (whether over the phone, the Internet, or via some other method) to trusted third parties whom you have authorized to initiate these electronic fund transfers. Examples of these transfers include, but are not limited to:
**i) Preauthorized credits.** You may make arrangements for certain direct deposits to be accepted into your checking or savings account(s).
**ii) Preauthorized payments.** You may make arrangements to pay certain recurring bills from your checking or savings account(s).
**iii) Electronic check conversion.** You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to pay for purchases or pay bills.
**iv) Electronic returned check charge.** You may authorize a merchant or other payee to initiate an electronic funds transfer to collect a charge in the event a check is returned for insufficient funds.
Please also see the **"Limitations on Frequency of Transfers"** subsection below regarding limitations that apply to savings accounts.

**b)  Telephone Transfers - Types of Transfers –** You may access your eligible account by telephone 24 hours a day using your personal identification number, a touch-tone phone, and your account numbers, to:
(1) Transfer funds between checking and savings;
(2) Make payments from checking or savings to loan accounts with us; or
(3) Get information about:
    (a) The account balance of checking or savings account(s);
    (b) Deposits to checking or savings accounts; or
    (c) Withdrawals from checking or savings accounts.
*Note*: Some types of telephone transfers require a separate written agreement.
Please also see the **"Limitations on Frequency of Transfers"** subsection below regarding limitations that apply to telephone transfers.

**c)  ATM Transactions - Types of Transactions and Dollar Limitations –** You may access your eligible account(s) by ATM using your ATM card and personal identification number ("PIN") or Visa® debit card and PIN, to:
(1) Make deposits to checking or savings account(s);*
(2) Get cash withdrawals from checking or savings account(s). However, for security reasons, there are limits on the total dollar volume of transactions allowed daily using your ATM or debit card.
(3) Transfer funds between checking and savings account(s);*
(4) Make payments from checking or savings account(s) to loan account(s) with us;*
(5) Get information about the account balance of checking or savings account(s); or
(6) Deposit funds (at our selected ATMs only).*
* These ATM services are not available for customers of The Commerce Bank of Oregon and The Commerce Bank of Washington.
Some of these services may not be available at all terminals.
Please also see the **"Limitations on Frequency of Transfers"** subsection below regarding limitations that apply to ATM transactions.

**d)  Types of Visa® Debit Card Point-of-Sale Transactions and Dollar Limitations –** You may use your debit card to debit an eligible designated deposit account to purchase goods (in person, online, or by phone), to pay for services (in person, online, or by phone), to get cash from a merchant (if the merchant permits), or to get cash from a participating financial institution, and to do anything that a participating merchant will accept. You may not request a stop payment on a POS transaction, signature-based transaction, or cash advance.
For security reasons, there are limits on the total dollar volume of transactions allowed daily using your debit card.
Please also see the **"Limitations on Frequency of Transfers"** subsection below regarding limitations that apply to debit card transactions.

**e)  Types of ATM Card PIN-Based Transactions and Dollar Limitations –** You may use your ATM card to make PIN-based debits to an eligible designated deposit account to purchase goods (in person), to pay for services (in person), and to get cash from a merchant (if the merchant permits), or to get cash from a participating financial institution.
For security reasons, there are limits on the total dollar volume of transactions allowed daily using your ATM card.
Please also see the **"Limitations on Frequency of Transfers"** subsection below regarding limitations that apply to ATM card transactions.

**f)** **Digital/Online Banking Computer Transfers - Types of Transfers** – You may access your eligible account(s) by computer or mobile device by logging into the applicable division's online banking website (i.e., www.amegybank.com for Amegy Bank, www.calbanktrust.com for California Bank & Trust, www.nbarizona.com for National Bank of Arizona, www.nsbank.com for Nevada State Bank, www.tcboregon.com for The Commerce Bank of Oregon, www.tcbwa.com for The Commerce Bank of Washington, www.vectrabank.com for Vectra Bank Colorado, or www.zionsbank.com for Zions First National Bank), or your division mobile banking app, and using your login ID and password, to:
(1) Transfer funds between checking and savings account(s);
(2) Make payments from checking or savings account(s) to loan account(s) with us;
(3) Make payments from checking account(s) to third parties; or
(4) Get information about:
    (a) The account balance of checking or savings account(s);
    (b) Deposits to checking or savings account(s);
    (c) Withdrawals from checking or savings account(s); or
(5) Access additional services available in digital (online or mobile) banking.
Your acceptance of separate online and/or mobile banking agreements is required. Specific services within online and/or mobile banking may require acceptance of addenda or additional agreements. Please also see the **"Limitations on Frequency of Transfers"** subsection below regarding limitations that apply to computer transfers.

**g)** **Holds on Funds in Deposit Account for Pending Transactions** – Pending transactions are authorized transactions that have not yet posted to your deposit account. These transactions may include credits, debits, and Authorization Holds (which could result from requests by merchants for authorizations of debit card transactions). Authorization Holds often result from debit card transactions involving online or in-store retailers, restaurants, gas stations, airlines, hotels, or car rental agencies. The amount of an Authorization Hold may differ from the amount of the final transaction. When the transaction settles, the actual amount posted to your account may be greater or lesser than the amount used for the Authorization Hold. Each merchant determines its own procedure for the amount to request for authorization in connection with a transaction, and the timing of Authorization Holds may vary. Certain merchants may take days or weeks to release cancelled transactions. The final transaction amounts will appear on your account statement.

**h)** **Currency Conversion** – If you incur a charge in foreign currency, Visa International will convert the charge into a U.S. dollar amount. Currently, the currency conversion rate used is either a wholesale market rate or a government-mandated rate in effect one day prior to the date the transaction is processed by Visa International plus an amount that is disclosed in the separate Rate and Fee Schedules. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

**i)** **Advisory Against Illegal Use** – You agree not to use your account(s) card(s), or to make other electronic funds transfers, for illegal gambling or other illegal purpose. Display of a payment card logo by, for example, an online merchant does not necessarily mean that transactions are lawful in all jurisdictions in which the cardholder may be located.

**j)** **Limitations on Frequency of Transfers** – In addition to those limitations on transfers elsewhere described, if any, transfers from a savings account or money market account to another account or to third parties by preauthorized, automatic, telephone, or computer transfer or by check, debit card, or similar order to third parties are limited to six per statement month. (See section on **"Restrictions on Number of Transfers."**)

**k)** **Fees** – We do not charge for direct deposits to any type of account. Unless disclosed in the separate Rate and Fee Schedules, we do not charge for these electronic fund transfers.

**l)** **ATM Operator/Network Fees** – When you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

**m)** **Documentation**
**i) Terminal transfers.** Where transfers are allowed, you can get a receipt at the time you make a transfer to or from your account using an automated teller machine or point-of-sale terminal. However, you may not get a receipt if the amount of the transfer is $15 or less.
**ii) Preauthorized credits.** If you have arranged to have direct deposits made to your account from the same person or company, you can call us at the phone number on your account statement to find out whether or not the deposit has been made.
**iii) Periodic statements.** You will get a monthly account statement from us for your checking accounts. You will get a monthly account statement from us for your savings accounts, unless there are no transfers in a particular month. In any case, you will get a statement at least quarterly.

**n)** **Preauthorized Payments**
**i) Right to stop electronic payment and procedure for doing so.** If you have told us in advance to make recurring electronic payments out of your account, you can stop these payments. Here is how:
Call or write us at the telephone number or address listed in this brochure in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may require you to also deliver to us your request in writing within 14 days after you call. The payment will not be stopped unless the payment information provided to the Bank is correct.
Please refer to our separate Rate and Fee Schedules for the amount we will charge you for each stop-payment order you give.
**ii) Liability for failure to stop payment of preauthorized transfer.** If you order us to stop one of these payments 3 business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.
**iii) Notice of varying amounts.** If these regular payments may vary in amount, the person you are going to pay will tell you, 10 days before each payment, when it will be made and how much it will be. (You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)

**o)** **Limitation on Liability** – We are not responsible or liable in any manner for any of the following or for any claim of whatever nature (including without limitation any claim for direct, indirect, incidental, special, consequential, or punitive damages) arising from or connected with any of the following: the refusal or delay of any other financial institution, any merchant, or any person to honor your card; any goods or services purchased with your card; any unsuccessful attempt to obtain prior credit authorization for any transaction when the authorization system is not working (except and only to the extent described in the following subparagraph); and any unsuccessful attempt to use your card in an ATM when the ATM or system is not working or is temporarily closed or out of order (except and only to the extent described in the next subparagraph).

**p)  Liability for Failure to Make Electronic Fund Transfers** – If we do not complete an electronic fund transfer to or from your account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages as prescribed by the federal Electronic Fund Transfer Act. However, there are some exceptions to our liability. We will not be liable, for instance: (1) if, through no fault of ours, you do not have enough money in your account to make the transfer, or if the transfer would create an overdraft which would not be covered by or would exceed the credit limit on any overdraft protection account (or exceed funds available in any deposit account that has been linked for overdraft protection) you have with us; (2) if the funds you are attempting to transfer are subject to legal process or other encumbrance restricting such transfer; (3) if the ATM where you are making the transfer does not have enough cash; (4) if the ATM or other electronic terminal or system was not working properly, and you knew about the breakdown when you started the transfer; (5) if circumstances beyond our control prevent the transfer despite reasonable precautions that we have taken; or (6) if any other exception stated in this Agreement or other governing electronic transfer service agreement (*e.g.*, our debit card agreement and online banking agreement) or by law applies.

**q)  Confidentiality** – We will disclose information to third parties about your account or the transfers you make:
(1) Where it is necessary for completing transfers;
(2) In order to verify the existence and condition of your account for a third party, such as a credit bureau, or merchant;
(3) In order to comply with government agency or court orders;
(4) As disclosed in a separately provided privacy policy; or
(5) If you give us your written permission.

**r)  Unauthorized Transfers**
   **i)  Consumer liability.** Tell us AT ONCE if you believe your card, password, code, and/or other access device has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your account (plus your maximum overdraft line of credit). If you tell us within 2 business days after you learn of the loss or theft of your card and/or code, you can lose no more than $50 if someone used your card and/or code without your permission.
   If you do NOT tell us within 2 business days after you learn of the loss or theft of your card and/or code, and we can prove we could have stopped someone from using your card and/or code without your permission if you had told us, you could lose as much as $500.
   Also, if your statement shows transfers that you did not make, including those made by card, code, or other means, tell us at once. If you do not tell us within 60 days after the statement was sent or made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time.
   If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.
   **ii)  Contact in event of unauthorized transfer.** If you believe your card and/or code has been lost or stolen, call or write us at the telephone number or address listed in this brochure. You should also call the number or write to the address listed in this brochure if you believe a transfer has been made using the information from your check without your permission.

**s)  Error Resolution Notice** – In case of errors or questions about your electronic transfers, call or write us at the telephone number or address listed in this brochure, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent or made available the FIRST statement on which the problem or error appeared.
(1) Tell us your name and account number (if any);
(2) Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information; and
(3) Tell us the dollar amount of the suspected error.
If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.
We will determine whether an error occurred within 10 business days (5 business days for Visa® debit card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) after we hear from you and will correct any error promptly. If we need more information, however, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or a foreign-initiated transfer) to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days (5 business days for Visa® debit card point-of-sale transactions processed by Visa and 20 business days if the transfer involved a new account) for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account. Your account is considered a new account for the first 30 days after the first deposit is made, unless each of you already has an established account with us before this account is opened.
We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.
Timeframes described herein may be different if your error or question does not claim unauthorized activity.

You may ask for copies of the documents that we used in our investigation by calling any of the phone numbers listed below.

CUSTOMER SERVICE
P.O. BOX 25787
SALT LAKE CITY, UT 84125
Business Days: Monday through Friday
Excluding Federal Holidays
Phone: (800) 287-0301 – Amegy Bank
(800) 400-6080 – California Bank & Trust
(800) 497-8168 – National Bank of Arizona
(800) 727-4743 – Nevada State Bank
(800) 232-8948 – Vectra Bank Colorado
(800) 789-BANK(2265) – Zions First National Bank

The Commerce Bank of Oregon
1211 SW 5th Avenue, Suite 1250
Portland, OR, 97204
(503) 548-1000

The Commerce Bank of Washington
Two Union Square, 601 Union St., Suite 3600
Seattle, WA, 98101
(800) 998-4035

MORE DETAILED INFORMATION IS AVAILABLE ON REQUEST

**12) ACH AND WIRE TRANSFERS**

"Funds Transfers" are subject to Article 4A of the Uniform Commercial Code – as adopted in the "applicable state" (identified in this Agreement's introductory paragraphs). "Funds Transfer" means the series of transactions—beginning with your payment order—made for the purpose of making payment to the beneficiary of the order. A Funds Transfer is typically made via an Automated Clearing House "ACH" entry, or wire transfer. Unless otherwise prohibited or required by law or payment network rules, if you originate a Funds Transfer and identify an intermediary financial institution, a beneficiary financial institution, an account and/or a beneficiary by both name and a number, we and each receiving or beneficiary financial institution may rely on the identifying number to make payment (even if the number identifies a financial institution, account, or person different from the one identified by name). You agree that you and your ACH payment orders shall be bound and governed by the National Automated Clearing House Association (NACHA) rules. Under these rules, payments (originated by you or made to you) are provisional until final settlement is received by the receiving financial institution through a Federal Reserve Bank or payment is made under Section 4A-403(a) of the Uniform Commercial Code. If we have made a "Funds Transfer" available to you and do not receive final settlement or payment, you must return the funds, and we are entitled to deduct the funds from any of your accounts with us. If we receive a payment order to credit an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

Except as may be restricted or required by law, we reserve the right to reject any payment order without cause or prior notice, and may notify you of the rejection orally, electronically, or in writing. You agree to indemnify, defend, and hold us harmless for any loss, damage, claim, action, and liability that results, and any charges and costs we incur in connection with any request by you to amend or cancel a payment order. Our liability for any act or failure to act shall not exceed any direct resulting loss, if any, which you incur and payment of interest. Unless otherwise required by law, we will not be liable for any incidental, indirect, special, consequential, or punitive damages that you incur in connection with payment orders, even if we are aware of the possibility of such damages.

Unless we agree otherwise in writing, any authorized signatory on your account shall have authority to request wire and ACH transfers on that account. If you have entered into a specific wire transfer agreement or ACH agreement with us, the provisions of such agreement shall in all respects be deemed applicable to any wire or ACH transfer instructions initiated by an account signatory, even if that account signatory has not been specifically identified in such wire or ACH transfer agreement as a person authorized to request wire or ACH transfers. The provisions contained in this Agreement supplement, but do not supersede, the provisions of any such wire or ACH transfer agreement.

**13) FUNDS TRANSFERS**

This section is subject to Article 4A of the Uniform Commercial Code as adopted in the "applicable state" (identified in this Agreement's introductory paragraphs). Terms used in this section have the meaning given to them in that Article 4A. This section generally does not apply to consumer Funds Transfers, except that this section does govern all Funds Transfers conducted by Fedwire, unless otherwise provided by law. Our sending or receipt of Funds Transfers under this Agreement is also subject to all National Automated Clearing House Association (NACHA) rules and rules of the Board of Governors of the Federal Reserve System and their operating circulars. This Agreement controls Funds Transfers unless supplemented or amended in a separate written agreement or disclosure by us.

a) **Funds Transfer Definition** – "Funds Transfer" means the series of transactions, beginning with your payment order, made for the purpose of making payment to the beneficiary of the order. A Funds Transfer is completed by the "acceptance" of the payment order by the beneficiary's bank of a payment order. Generally, a Funds Transfer under this section does not include any transaction if any part of the transfer is covered by the Electronic Fund Transfer Act of 1978 (or Regulation E), as amended from time to time. We may accept a payment order orally, electronically, or in writing, but your order cannot state any condition to payment to the beneficiary other than the time of payment.
Unless we have otherwise agreed in writing, we will notify you of funds credited to your account through your account statement covering the period in which the funds were credited. We are under no obligation to provide you with any additional notice or receipt. If a transfer instruction describes the person to receive payment inconsistently by name and account number, payment may be made on the basis of the account number even if the account number identifies a person different from the named person. If a transfer instruction describes a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.

b) **Authorized Account** – An authorized account is the deposit account you have with us that you have designated as a source of payment for payment orders you issue to us. If you have not designated one, any deposit account you have with us is an authorized account so long as payment of a payment order from that account does not violate any restriction on the use of that account. Under no circumstances shall you give us a payment order that debits your business or other nonconsumer deposit account to facilitate an international transfer of funds by an individual sender for his or her personal, family, or household purposes.

c) **Rejection of Your Payment Order** – There is no requirement or obligation that we accept any payment order on a Funds Transfer from you. If we reject your payment order and give you notice after the execution date, we are not liable to you for any interest on the funds in a non-interest-bearing account.

d) **Cutoff Time** – Payment orders (or amendments, including cancelations) not received prior to our cutoff time for Funds Transfers will be viewed and treated as received upon the opening of our next Funds Transfer business day. Our Funds Transfer cutoff times may vary, depending on the type of Funds Transfer orders and means of communicating orders (*e.g.*, telephone or digital banking).

e) **Payment of Your Order** – You authorize us to withdraw from any authorized account the amount of any payment order we accept from you along with all expenses and fees. We are entitled to such withdrawal no later than the payment or execution date. ACH payment orders require prefunding unless otherwise agreed by us in writing. The Funds Transfer is completed when final settlement is received by the receiving bank or financial institution through a Federal Reserve Bank or payment is made under Section 4A-403(a) of the Uniform Commercial Code. You are not obligated to pay uncompleted payment orders, but you are still responsible to pay us all expenses and fees for our services. Nevertheless, if your instruction was for the Funds Transfer to be routed through an intermediate bank, and the intermediate bank has suspended payments and will not refund us, you are still obligated to pay us for the payment order. You will not be paid interest on any refund arising from non-acceptance of a payment order by the beneficiary's bank.

f) **Security Procedure** – You and we may set forth in a separate agreement or disclosure a "security procedure" which, when satisfied, shall be deemed to conclusively verify the authenticity of a payment order (or amendment, including cancelation) issued in your name. You agree and affirm that you have no unique circumstances affecting the commercial reasonableness of that security procedure unless your circumstances are disclosed to us for that purpose in a separate writing that we have received and signed. If we offer you a commercially reasonable security procedure and you refuse, you agree that we may rely upon and accept (and you will be obligated by) any payment order purporting to be from you or issued in your name—whether or not authorized—that we accept in good faith and in compliance with your chosen security procedure.

22

g) **Duty to Report Unauthorized or Erroneous Payment** – You must exercise ordinary care to promptly review all payment orders and amendments (including cancellations) issued in your name that we accept for proper authorization, amount, and beneficiary, and any other errors. You must exercise reasonable promptness and ordinary care to discover and notify us of unauthorized or erroneous payment orders or Funds Transfers. You must notify us of the relevant facts with sufficient information to identify each specific Funds Transfer or payment order. Reasonable promptness will depend on the circumstances but will not under any circumstance exceed 14 days from the time you are notified of our acceptance or execution of the payment order (or amendment) or that the funds were withdrawn from your account, whichever is earlier. Failure to provide us with timely notice shall preclude you from receiving interest on any returnable amount. If you fail to perform any of these duties to review, discover, and report an erroneous or unauthorized payment, and this failure causes us to incur a loss, you agree that you will be liable to us for the amount of the loss (not exceeding the amount of your order).

h) **Identifying Number** – Unless otherwise prohibited or required by law or payment network rules, if you originate a payment order or Funds Transfer and identify an intermediary financial institution, a beneficiary financial institution, an account and/or a beneficiary by both name and a number, we and each receiving or beneficiary financial institution may rely on the identifying number to make payment (even if the number identifies a financial institution, account, or person different from the one identified by name).

i) **Recording of Oral or Telephone Orders** – Subject to applicable law, you consent, agree, and authorize that we may record any oral or telephone payment orders or amendments (including cancellations).

j) **Notice of Credit** – You agree we are not required to give you notice of payment orders we receive that are credited to your account, but these payment orders will be reflected on your periodic statements.

k) **Provisional Credit** – You agree to be bound by the National Automated Clearing House Association (NACHA) operating rules for any Funds Transfer through the ACH system, which provide that payments are provisional until final settlement is made through a Federal Reserve Bank or payment is made under Section 4A-403(a) of the Uniform Commercial Code.

l) **Refund of Credit** – If we have made a Funds Transfer available to you and do not receive payment or final settlement, you must return the funds, and we are entitled to deduct the funds from any of your accounts with us.

m) **Amendment of Funds Transfer Agreement** – Our right to amend any term of this Agreement by giving you reasonable notice in writing applies to all provisions governing Funds Transfers. With respect to provisions governing Funds Transfers, such notice may be given to you by delivery to anyone you have authorized to send payment orders in your name.

n) **Cancelation or Amendment of Payment Order** – You may amend (including cancel) your payment order only if communicated to us before our applicable Funds Transfer cutoff time and with a reasonable opportunity for us to implement it. Our cutoff times may vary, depending on the type of Funds Transfer order and means of communicating orders (*e.g.*, telephone or online). The communication must be consistent with the security procedure applicable to communicating that type of Funds Transfers order.

o) **Intermediaries** – We are not responsible or liable for the acts of any intermediary in relation to your payment order or Funds Transfer, regardless of whether we selected the intermediary. We are not responsible for acts of God, outside agencies, or nonsalaried agents.

p) **Limit on Liability** – Except as prohibited by law, you waive as against us any incidental, indirect, special, consequential, or punitive damages, including loss of profit, arising out of a payment order or Funds Transfer. We are also not liable for attorneys' fees arising from erroneous execution of a payment order or Funds Transfer.

q) **Erroneous Execution** – If we pay you more in error than the amount of a payment order received, we are entitled to recover from you the amount paid in excess of the amount of that payment order, notwithstanding any claim you may have against the sender of the funds.

r) **Deadline for Objection to Payment** – If we give you reasonable notice of a Funds Transfer made pursuant to a payment order issued in your name as sender (including but not limited to notice by a mailed transaction confirmation, mailed periodic account statement, email, SMS text message, or display in online banking), you shall have no claim (and be barred from claiming) that we are not entitled to retain payment for that Funds Transfer unless you notify us in writing of your objection to that payment order within the following time period following the date of the Funds Transfer:
   60 days – National Bank of Arizona
   90 days – Amegy Bank, California Bank & Trust, The Commerce Bank of Oregon, The Commerce Bank of Washington, or Zions First National Bank
   1 year – Nevada State Bank or Vectra Bank Colorado
   *Note:* Any shorter time period specified in a separate written agreement or disclosure for a specific type of Funds Transfer (*e.g.*, a telephone-based wire transfer agreement) shall govern over the foregoing time periods.

14) **ACCOUNT STATEMENTS AND REVIEW**
   a) **Statements** – Account statements are extremely important for your management and awareness of the status of your account and in your review of any erroneous, fraudulent, or unauthorized transactions conducted on your account. You have a duty to review them. Your review must be prompt and timely, and, in general, the timeliness of your review will be measured from the time we supply your account statements. The statement will list items and transactions processed on your account for the statement period. We may also provide notices to you with your account statement, including revisions and modifications to this Agreement, fee schedules, or other agreements you have with us affecting your account, such as a wire agreement.
   If you request an additional copy of your statement, it will include: (1) Transactions, (2) Balances, and (3) Legal disclosures, but it may not include advertising or other communications whether in the nature of inserts, onserts, or original text.
   Contact us if you do not receive your regular statement. We reserve the right to consolidate or un-consolidate statements for accounts of common ownership or as otherwise appropriate. If you do not want any statements consolidated, or if you wish to un-consolidate any statements, please contact Customer Service or visit your local branch. Also, please contact us if you believe you are not receiving a statement that you should be. The duties and obligations of review set forth in this section shall survive any termination, amendment, or expiration of this Agreement, or any other relationship between the parties.

b) **Duty to Review**

    i) **Your duty to report unauthorized signatures, alterations, forgeries, and other unauthorized items or debits.** You are required under the law to review each periodic account statement with "reasonable promptness." You must report promptly to us any unauthorized signatures, alterations, forgeries, or other unauthorized items or transactions. You must also examine copies of checks or other transactions on your account for unauthorized, missing, or forged endorsements for which you should have a reasonable basis to identify as authentic or valid. Failure to notify us as required by law and these provisions under this Agreement prevents you from claiming reimbursement or restoration of the loss from any of these items. The loss includes not only the original unauthorized item itself but also any additional items from the same wrongdoer. You agree that "reasonable promptness" for reviewing your statement and reporting unauthorized, altered, or forged items will depend on the surrounding circumstances; nevertheless, you agree that this period will never be longer than 30 days, no matter the surrounding circumstances.

       You also agree that failure to report unauthorized signatures, alterations, forgeries, or other unauthorized items, transactions, debits, **or other errors** in your account within 30 days of when we first send or make the statement available to you forecloses you from claiming from us any reimbursement of the unauthorized item or correction of the error (unless it is an unauthorized electronic transfer from a consumer account subject to Regulation E, in which case the transaction must be reported no later than 60 days, *see* subsection "**Unauthorized Transfers**" under the section above entitled "**Electronic Fund Transfers – Your Right and Responsibilities**").

    ii) **Your duty to report other errors.** You also agree to review your statement with reasonable promptness for any other error than those listed in the preceding paragraph ("Other Errors"). The reasonable promptness of your review will depend on the circumstances but will not under any circumstances exceed 60 days from when we send you the statement or otherwise make the statement available to you. If you fail to review your statement and report Other Errors within 60 days, you will be foreclosed from claiming against us that we must reverse or correct the Other Error.

    iii) **Errors relating to electronic fund transfers or substitute checks.** For information on and provisions governing errors relating to electronic fund transfers (*e.g.*, computer, debit card, or ATM transactions), see the section entitled "**Electronic Fund Transfers – Your Rights and Responsibilities**," particularly the subsection entitled "**Error Resolution Notice**." For information on and provisions governing errors relating to substitute checks, see the section entitled "**Substitute Checks and Your Rights**."

## 15) ADDITIONAL PROVISIONS, TERMS, AND CONDITIONS

a) **Account Products and Change of Account Products** – We are continually changing our account products and the features that are offered with each product. You agree that we may change the product classification or choice of your account so long as we give you notice of the change and the specific date on which the change will occur. For accounts from which amounts may not be withdrawn before a certain time without penalty, adverse changes will not occur prior to the next maturity date on the account. If you keep the account open after the change date specified in the notice, you agree to the new account product.

b) **Account Transfer** – Account ownership is governed only by our records and the signature card of your account. No assignment or transfer of the account is valid or effective unless we agree and incorporate the assignment or transfer into our records (including any transfers to a trust).

c) **Address, Telephone, E-mail, or Name Changes, Notices** – You must promptly notify us of any change in your (i) mailing address or street address, (ii) telephone number, (iii) name, and (iv) change in e-mail address if you have opted to receive updates by e-mail. Notification may be by one owner of an account with multiple owners. At our discretion, we may require notification to be in writing. Notices that we mail to you will generally be sent to the last address we have on record for you, and such mailing will constitute effective delivery of notice, even if the address is no longer your address or the notice is otherwise not deliverable to you. Delivery of notice is also effective if we send notice to an address that we have on record for a co-owner or authorized signer on the account, or an alternative address you have supplied to us. If we have received returned mail indicating that the address we have on record for your account is no longer valid, you agree that we may suspend the actual mailing of any statements or other notices until you supply us with a valid address for mailing; you agree that our holding statements and mail for you under these circumstances constitutes effective delivery on our part.

    If you enroll in any service offered by us using or employing communication by e-mail, you must notify us of any change in your e-mail address. It is your responsibility to notify us of any change in your e-mail address for each such enrolled electronic service.

    Until you notify us, we will use the contact information that we have in our records to communicate with you, and you must give us a reasonable period of time to change that information in our records.

d) **Adjustments** – You agree and hereby authorize that we may make adjusting entries (including debits) to your account to reverse or correct (1) any previous entry (whether by ACH, wire, other electronic, paper item, cash, or other transaction) that was in whole or in part executed without authority or in error by us, the payor, or any third party, or (2) any discrepancies between actual amounts tendered for deposit and totals or itemizations on deposit slips or other summaries.

e) **Attorneys' Fees, Collection Costs** – Without limiting our rights to recover attorneys' fees from customers of other divisions, the following provision is applicable to customers of Zions First National Bank and Vectra Bank Colorado: In the event we reasonably need to engage legal counsel (including in-house counsel) in order to establish or enforce our rights or remedies under this Agreement (including but not limited to collecting overdrafts, or recovering money, payments, or property improperly or erroneously paid, credited, or delivered to you or received by you), or to defend against any claim asserted or to be indemnified by you, you agree to pay applicable attorneys' fees, costs, and other expenses incurred by us, whether or not any action is filed, and whether incurred before or after judgment.

f) **Cash Transaction Reporting** – We are required by law to obtain and report aspects of some certain cash transactions, particularly larger cash transactions. If we are unable to obtain the required information, we are prohibited from carrying out the transaction.

g) **Check Examination and Automated Processing** – You acknowledge that we use automated processes in processing payment of checks so that we can process a larger volume of items at a lower cost to all customers. You acknowledge and agree that we do not examine each check (including reviewing for signatures, endorsements, and other items) and do not determine if every necessary item is included or proper. You agree that automated processing is a reasonable and commercially accepted manner for us to handle, process, and pay your check items and that we are exercising due care even when employing automated processing. The number of items we must process makes it impractical to site examine each check item and even necessitates the use of automation, which reduces costs for you. Automated processing includes primarily depending on or mechanically reading only the information contained in the magnetic ink on the bottom of the check items.

h) **"Cleared" Checks and Cashier's Check Fraud Warning** – The Bank does **NOT** report to you whether or not a check or item you have deposited has "cleared" or been paid by the financial institution upon which it is drawn, even if you inquire specifically about the status of that check or item. If you inquire about the status of a specific deposited check or item, the Bank employee cannot tell you whether or not that check has been paid or has "cleared." The Bank only reports to you whether or not the Bank still has an internal hold on the funds represented by the check or item deposited to

your account. You remain responsible to the Bank for the collectability or validity of any check or item you deposit. You agree that regardless of any verbiage used by you or a Bank employee in your inquiring about or discussing the status of a deposited check or item (e.g., "cleared," "collected," "paid," "available funds"), the information you receive DOES NOT reflect whether or not the check or item has been paid or whether the Bank can still reverse the deposit and look to you for the funds.  Please be aware that fraud often occurs in relation to counterfeit cashier's checks that are presented to you as legitimate, and the fraudulent party seeks to acquire the funds from you at the time the Bank makes the funds available but before the fraudulent check is returned unpaid.

i)   **Credit or Account History Verification** – We may verify your credit and employment history by reasonably available means, including credit reports, account history, or status reports by a credit reporting or check reporting agency.

j)   **Dormant Accounts** – We may consider the account dormant if there has been an extended period without any client-initiated activity. The period of inactivity and any fees if applicable are set forth in the Rate and Fee Schedules. Interest may not be paid on dormant accounts, and we may impose any applicable service charges. We can close any account at any time. It is our policy not to reverse service charges or re-credit interest if a dormant or closed account is subsequently reactivated or reopened.

k)   **Electronic Notices to You** – Except as may be prohibited by law, you agree that any notice that we give to you may be given electronically, even if notice is required to be in "writing" pursuant to applicable law, this Agreement, or other contract in connection with your account or account-related services. Electronic notice includes, but is not limited to, e-mail (including attachments) to any e-mail address you have provided to us in connection with your current or future banking relationships with us.

l)   **Electronic, Scanned, and Facsimile Signatures** – Subject to applicable law, we have the right but no obligation to accept any electronic, scanned, or facsimile signature, communication, or agreement from you. If we do accept such signature, communication, or agreement, it shall have the same force and effect as if you executed and delivered it in paper writing and shall constitute a "writing" for purposes of any law, regulation, or agreement. This provision shall apply to your account and any services or agreements related to the use of your accounts (i.e., online banking services).

m)   **Fictitious Business Name Accounts** – If you hold an account under a fictitious name, each of you represents that one or more of you have the right to use that name and have fulfilled all the legal requirements for using the name and doing business under that name. "Fictitious business name" means, in the case of an individual, a name that does not include the surname (last) of the individual or that suggests the existence of additional owners (e.g., "& Company"). In the case of a partnership, other than a limited partnership, a name that does not include the surname of each general partner or a name that suggests the existence of additional owners is a fictitious business name. In the case of a corporation, any name other than the corporate name stated in its articles of incorporation is a fictitious business name. In the case of a limited partnership or a limited liability company, any name other than the name of the limited partnership or limited liability company on file with the appropriate government agency is a fictitious business name.

n)   **Fraud and Unauthorized Activity - Claim of Loss** – In cases of forgery, fraud, alteration, or other unauthorized activity, if you claim reimbursement, you must cooperate with us in investigating the loss. You must give us an affidavit with reasonable information, including specific items, amounts, and dates that are claimed. Although the Bank may be obligated to act in response to your claim, you also agree that you will report to law enforcement authorities the wrongdoing or any criminal act related to claims of lost or stolen checks, forgery, fraud, alteration, or unauthorized withdrawals or activity. After you have notified us, we will have a reasonable time to investigate the surrounding facts and circumstances and to make a determination of the validity of the claim. Other than action involving bad faith, we are not liable for any indirect, incidental, special, consequential, or punitive damages you may incur, including loss of profits, or for any of your attorney fees.
While seeking reimbursement from us, you agree not to waive or compromise any rights you have to recover the loss against any other person who may be liable to pay for or who has insured the loss. You are obligated to pursue these rights of repayment or insurance coverage; at our option, we may require that you assign those rights to us. If we are obligated to reimburse you for unauthorized or fraudulent items, our liability will be reduced by any insurance or other reimbursement proceeds you receive from other sources. In addition, any liability that we may incur for funds transferred to or intercepted by a person other than your intended payee shall be reduced by any amount or benefit ultimately received by your intended payee, directly or indirectly.

o)   **Interest** – For any amount that you owe the Bank pursuant to this Agreement, including but not limited to overdrafts, you agree to pay the Bank interest thereon at the rate specified in your Personal or Business Account Schedule of Fees (or Service Charge Information) from the time the amount becomes due until it is paid (or, if less, the maximum percentage allowed by law). If a different interest rate is specified in this or another written agreement for a particular type of obligation, then that contractual rate shall apply to that specified obligation.

p)   **Internet Gambling Notice** – The Unlawful Internet Gambling Enforcement Act of 2006 prohibits any person, including a business, engaged in the business of betting or wagering from knowingly accepting payments in connection with the participation of another person in unlawful Internet gambling. Such transactions are termed "Restricted Transactions" (defined in 12 Code of Federal Regulations Part 233). Restricted Transactions are prohibited from being conducted or processed through your account. Restricted transactions include those in which credit or proceeds of credit (including credit cards); electronic fund transfers; or any checks, drafts, or similar instruments are knowingly accepted in connection with the participation of another person in unlawful Internet gambling. We have elected to not offer accounts to organizations that offer or sponsor Internet gambling. You represent and warrant to us that you shall not conduct or process Restricted Transactions through your account, and that you neither offer nor sponsor lawful or unlawful Internet gambling. Accounts receiving or processing Internet gambling transactions are subject to closure.

q)   **Legal Process** – This section applies when we receive any subpoena, order (including an ex parte order), writ (including a writ of attachment, execution, garnishment, or replevin), levy, search warrant, seizure warrant, forfeiture order, receivership order, or similar or other order purporting to apply to or affect your account, including the taking or freezing of funds in your account (collectively, "legal process"). If we are served with, delivered, or receive any legal process, we are able to comply with or respond to that legal process without liability to you (subject to our security interest and offset rights). This ability exists notwithstanding the manner or validity of service or delivery, or the validity of the jurisdiction of the court or authority or agency issuing the legal process. You agree that the Bank may view itself and treat your accounts as subject to court and agency jurisdiction in any state in which the Bank maintains a branch or financial center. We may also issue an internal freeze or hold on the account and await a final judicial order or determination regarding the legal action. Our ability to act in response to legal process includes legal process that may be against only one co-owner or against an authorized signer if the legal process so directs. We will not be liable if account funds are not available for withdrawal or to pay items drawn on the account. We may charge your account the fee specified in any fee disclosure for responding to any legal process.

**r)** **Liability** – You agree to the Rate and Fee Schedules, which are disclosed separately. Such fees will be charged without notice directly to your account as they are incurred. Each of you who is an authorized signer agrees to be individually liable for any account shortage or overdraft. This liability exists regardless of whether or not you caused the shortage or overdraft, or whether you personally benefited from the transactions leading to the shortage or overdraft. Payment must be made immediately and can be taken by set-off from any other account with us you own. This liability includes costs and attorney fees that we incur in connection with the account, including disputes between you and the Bank, co-owners, authorized signers (or similar parties), third parties claiming rights to your account, or others claiming to be authorized representatives or officers of the owner of the account. We can deduct our costs and attorney fees from your account without notice to you.

**s)** **Lost, Destroyed, or Stolen Certified, Cashier's, or Teller's Checks** – Under some circumstances you may be able to assert a claim for the amount of a lost, destroyed, or stolen certified, cashier's or teller's check. To assert the claim: (1) you must be the remitter (or drawer of a certified check) or payee of the check, (2) we must receive notice from you describing the check with reasonable certainty and asking for payment of the amount of the check, (3) we must receive the notice in time for us to have a reasonable opportunity to act on it, and (4) you must give us a declaration (in a form we require) of your loss with respect to the check. You can ask us for a declaration form.
Even if all of these conditions are met, your claim may not be immediately enforceable. We may pay the check until the ninetieth (90th) day after the date of the check (or date of acceptance of a certified check). Therefore, your claim is not enforceable until the ninetieth (90th) day after the date of the check or date of acceptance and the conditions listed above have been met. If we have not already paid the check, on the day your claim is enforceable we become obligated to pay you the amount of the check. We will pay you in cash or issue another certified check.
At our option, we may pay you the amount of the check before your claim becomes enforceable. However, we will require you to agree to indemnify us for any losses we might suffer. This means that if the check is presented after we pay your claim, and we pay the check, you are responsible to cover our losses. We may require you to provide a surety bond to assure that you can pay us if we suffer a loss.

**t)** **Monitoring and Recording Telephone Calls** – Subject to applicable laws, we may monitor or record phone calls for security and quality control purposes.

**u)** **Night Deposit Facilities/Daytime Drop – Terms of Use; When "Deposit" Occurs** – You assume all risk arising out of or in connection with your use of Bank's night depository facilities. You agree that our night deposit facilities are made available as a convenience, and that the Bank does not insure and is not required to maintain insurance on its night depository facilities, contents therein, or property that you place into the night depository facilities. (The Commerce Bank of Oregon and The Commerce Bank of Washington do not offer or accept night deposits.) We can at any time, in our discretion and without prior notice, withdraw your permission to use our night depository facilities. If we determine in our discretion that you use our night depository facilities on more than an occasional basis, we may require you to sign a separate night depository agreement with supplementary terms as a condition to permitting your further use.
You must never place any property into our night depository facility other than (1) cash, checks, drafts, and similar items that you intend to be deposited to your deposit account with us (collectively "Instruments for Deposit"), and (2) property reasonably necessary to facilitate that deposit, such as deposit pouches and deposit slips. All Instruments for Deposit must be accompanied by a properly completed deposit slip and (except for cash) must be duly endorsed for deposit to your account. We may refuse to accept for deposit any or all Instruments for Deposit that are not accompanied by an itemized deposit slip.
You agree that no "deposit" or bailment occurs, and no relationship of debtor (us) and creditor (you) arises, from your use of our night depository facility until an employee of Bank actually removes your Instruments for Deposit from the night depository facility and deposits them to your account during our business hours. If an amount listed on your itemized deposit slip does not agree with the deposit amount calculated by Bank, the Bank's findings and records of the property received and deposited will be conclusive and binding.
You agree to not leave items for deposit inside a branch location (a "daytime drop") without obtaining a contemporaneous receipt from Bank. If you do so anyway, the Bank's findings and records of the property received and deposited will be conclusive and binding (regardless of any conflicting itemized deposit slip).
You agree to indemnify and hold Bank harmless from and against any and all claims, demands, actions, proceedings, judgments, losses, damages, counsel fees, court costs, payments, expenses, and all liabilities whatsoever, which Bank at any time shall or may sustain or incur by reason of use of our night depository facilities or a daytime drop by you or your employees or agents, except to the extent that any losses can be attributed to Bank's own gross negligence or willful misconduct. Under no circumstances shall Bank be liable or responsible for any property other than Instruments for Deposit that you place into our night depository facilities.

**v)** **Non-waiver** – We reserve the right to waive the enforcement of any of the terms of this Agreement with respect to any transaction or series of transactions you may conduct. Any such waiver does not affect our right to enforce any of our rights with respect to other customers, or to enforce any right with respect to later transactions you may conduct.

**w)** **Notice of Negative Information** – Federal law requires us to provide this notice to you prior to the furnishing of any "negative information" to a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. "Negative information" means information concerning your delinquencies, late payments, overdrafts, or any form of default. Having provided this notice, we may submit current and future negative information to a consumer reporting agency without providing additional notices to you.
**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**x)** **Online or Digital Banking** – Internet or digital banking services (also referred to as online banking and/or mobile banking) require separate enrollment and are governed by both the general terms of this Agreement and the specific terms of the digital banking service agreements, including any addenda thereto, as amended from time to time. The digital banking service agreements, and available addenda thereto, are posted at our website for the division holding your account (www.amegybank.com for Amegy Bank, www.calbanktrust.com for California Bank & Trust, www.nbarizona.com for National Bank of Arizona, www.nsbank.com for Nevada State Bank, www.tcboregon.com for The Commerce Bank of Oregon, www.tcbwa.com for The Commerce Bank of Washington, www.vectrabank.com for Vectra Bank Colorado, or www.zionsbank.com for Zions First National Bank). From time to time, additional technologies for digital banking services may be made available for your use on condition that you agree to the terms of addenda applicable to those technologies.
If you set up digital banking services, you are responsible for any features or services which you or your authorized users may activate or into which you or your authorized users may enroll any of your accounts. You are responsible for monitoring the activities on your account and of any user to whom you supply log-in credentials or other digital banking access credentials, including knowing what services or features have been activated, what access entitlements have been granted, which accounts are enrolled or linked, and what payee or other payment templates (including online payments, bill pay, peer-to-peer payments, wires, ACH, or recurring payments) have been established.

**y)** **Organization of Checking Account** – We internally organize your checking account so that it consists of two subaccounts—one being a transaction or checking subaccount and the other being a nontransaction subaccount. You will conduct your checking activity on the checking subaccount, and you cannot directly access the nontransaction subaccount. We will automatically—without any additional action or request from you (or any cost to you)—transfer funds between the two subaccounts. Ordinarily, you will not be able to notice this two subaccounts organization or any impact on the operation of your checking account, but organizing your account in this manner allows us to reduce costs. The two subaccounts organization will not affect or alter the ordinary FDIC coverage on your account(s) and will not alter your statements or interest calculation for interest-bearing accounts.

**z)** **Pass-Through Insurance** – You may wish to consult a professional adviser to determine if your account is properly established and the records are being properly maintained in accordance with FDIC requirements for "pass-through" insurance. The Bank is not responsible for and will not make a determination relative to proper record maintenance of an account seeking eligibility for "pass-through" insurance.
As outlined in 12 Code of Federal Regulations 330, certain requirements, including recordkeeping requirements, must be met for certain fiduciary accounts to benefit from pass-through FDIC insurance coverage. For the non-contingent interest of each participant to benefit for any available FDIC insurance coverage, the Bank's records must specifically disclose that the depositor holds the funds deposited in a fiduciary capacity. This means that the details of the fiduciary relationship between the depositor and its participants and the participant's interest in the deposits must be distinguishable.

**aa)** **Personal Nickname** – You must establish your account using your legal name. We reserve the right to set the criteria, for our purposes, of determining your legal name. We have the discretion—but no obligation—to allow you to use a nickname for account titles, checks, debit cards, or other associated products.

**bb)** **Pledges** – Any co-owner may pledge a part or all of the account funds to us for any purpose to which we agree. Any pledges must be satisfied before we will pay any surviving co-owners or beneficiaries of the account.

**cc)** **Retention of Check Copies and Statements and Check Return** – We will not return your original paid checks or copies thereof in your periodic statements unless you request and we separately agree to provide that service. See your Rate and Fee Schedules for applicable fees. Some account types may include that service without your request. We retain copies of your processed items and your account statement pursuant to our internal retention schedule. You may request copies of specific processed checks or account statements. See your Rate and Fee Schedules for copy costs.

**dd)** **Reversal** – We may reverse or adjust the amount or date of any credit or debit posted to your account in error or in erroneous amount, whether that posting was provisional or final.

**ee)** **Setoff and Security Interest** – You hereby grant us contractual rights of set-off in addition to any common law rights of set-off. You also agree that we may, without notice, set off your accounts against any debt (whether or not matured, due, payable, in default, or accelerated) or obligation that you owe us, now or in the future, by any of you having the right of withdrawal. For debt pursuant to a promissory note, "any due and payable debt" includes the total amount due under the note at the time we set off, including any accelerated amounts.
This right of setoff does not apply where the law prohibits, such as against an Individual Retirement Account (or similar tax-deferred account), or consumer credit transaction debt under a credit card plan, or, in the case of Amegy Bank and any other prohibiting jurisdiction, the debt is created by a home equity loan. Our exercise of the right of set-off may cause your account to have insufficient funds to pay items presented on it, and you agree that we are not liable for any inability to pay these items, and you hold us harmless against any claimed liability arising from the exercise of the set-off. You also hereby grant us a contractual security interest under Article 9 of the applicable state's Uniform Commercial Code in each account with us that you own to secure any debt that you owe, or may owe, to us now or in the future.
The Bank shall also have the right to place an administrative hold on such funds pending set-off or realization thereon under Article 9. The Bank may apply all funds in a joint ownership account to satisfy a debt owed to the Bank by any one or more of the joint owners. In addition, the Bank may, after the death of any account owner, setoff against a joint account or an account with POD beneficiaries the debts and obligations of the deceased account owner, up to the full amount in the account at the time of the account owner's death. If the Bank must use principal to satisfy the debt and the account is a time deposit, you are subject to the applicable early withdrawal penalty.

**ff)** **Tax Reporting** – In some circumstances, federal and state law and/or regulations require that we report certain information about your account to the IRS and/or applicable state taxing authority. You agree that we may provide or report any such information to the IRS and/or state taxing authority in accordance with applicable law, regulation, or our interpretation thereof.

**gg)** **Tax Withholding/TIN Certification** – When we open an account for you, federal law requires us to obtain and verify your taxpayer identification number (TIN). We do this by obtaining a properly completed IRS Form W-9, "Request for Taxpayer Identification Number and Certification." Federal tax law also requires us to report under your TIN certain interest (and other certain) payments we make to you of $10 or more in a year. Because of these obligations, we require that you provide us and certify your TIN. The TIN is either a Social Security Number (SSN), an Individual Taxpayer Identification Number (ITIN), or an Employer Identification Number (EIN). For most entities or organizations, the TIN will be the EIN of the organization or entity. For sole proprietorships, however, the TIN can be either the SSN of the proprietor or the EIN of the business, but we are required to supply the IRS with both the proprietor's name and the proprietor's business or trade name. TINs for various other owners are:

| Account type | TIN |
|---|---|
| Individual | SSN of the individual |
| Joint Account | SSN of the owner named first on the account |
| Uniform Gift/Transfer to Minor | SSN of the minor |
| Grantor's (Revocable) Trust | ordinarily SSN of the trustor, but may have EIN |
| Irrevocable Trust | EIN |
| Estate | EIN |

Federal law may require us to withhold and pay to the IRS some of the interest earned on your accounts, which is known as backup withholding or Foreign Account Tax Compliance Act ("FATCA") withholding. This withholding may not be required if, when you open your account, you certify your TIN and that you are not subject to backup or FATCA withholding. The IRS may subsequently require us to begin withholding if the IRS finds the TIN you supplied is incorrect or that you underreported your interest income. If you do not have a TIN because you are a foreign person (either an individual who is a nonresident alien or a foreign organization), you must certify your foreign status. If you are an exempt payee (receiver of interest payments) for backup withholding purposes, you are required to certify your TIN with us. Examples of exempt payees include corporations or organizations exempt from tax under Section 501(a) of the Internal Revenue Code, or an individual retirement plan or custodial account under Section 403(b)(7). If you do not have a TIN

or are a foreign person and do not supply us with either the appropriate IRS Form W-9 or W-8 and other supporting documents, we may decline to open the account (or close it if it has been opened).

**hh)**   **Telephone Communications** – You agree to provide us only current and accurate contact information that belongs to you. We can contact you in any manner and for any purpose allowed by law. Without limiting the foregoing, we and our affiliates or parties acting on our behalf can contact you with servicing messages about any of your accounts with us using any telephone numbers you provide to us, and we can use these numbers to send you text messages or prerecorded or artificial voice messages using automatic telephone dialing systems. We can also monitor, record, and retain your communications at any time without further notice to anyone, unless the laws governing your account require further notice.

When discussing your account with you on the telephone, the Bank can impose authentication requirements *at its discretion* (including, but not limited to PASSWORDS or one-time PASSCODES) or out-of-channel processes, and the Bank will not be liable for any service that is denied on the basis of your inability to pass such authentication procedure.

**ii)**   **Telephonic, Facsimile, and Voicemail Instructions** – Except as provided in the section entitled "Electronic Fund Transfers – Your Rights and Responsibilities," we are not obligated to act upon or carry out instructions transmitted via telephone, facsimile, or voicemail unless we have agreed in a separate writing to do so.

**jj)**   **Telephone Transfers** – If we permit telephone transfers between accounts with us, they may be ordered by the same persons and under the same conditions generally applicable to withdrawals made in writing. Positive identification may be required before any account information may be released or any transfers performed. You agree to hold the Bank harmless for such transfers as long as the Bank acted on instructions from a person reasonably believed to be authorized. Transfer requests between accounts with different titles or owners may need written authorization to be on file with the Bank from the owner of (or an authorized signer on) the other account with the Bank. Such written authorization does not constitute a written plan in which periodic or recurring transfers are offered. The Bank is not obligated to process any transfer for which there are insufficient funds. Other account restrictions disclosed elsewhere continue to apply. In particular, see the subsection entitled "Limitations on Frequency of Transfers" regarding limitations that apply to telephone transfers.

**kk)**   **Trusts (Revocable) Obligated to Update** – Revocable trusts agree to be responsible to supply the Bank with sufficient documentation to establish the identity of successor trustees and to keep the Bank updated with any amendments that affect management or control of the trust account, including any amendments to the designation of trustees or successor trustees.

**ll)**   **Unclaimed Property** – The law generally requires that we transfer unclaimed property (*e.g.*, account balances, outstanding cashier's checks, or safe deposit box contents) to the state. Generally, the funds in your account become unclaimed in the absence of any activity or communication with us for a number of years specified by the laws of the "applicable state" (as defined in Section 1 of this Agreement). Once we have transferred unclaimed property to the state, we are no longer responsible or liable for it, or for expenses to reclaim the property. You are solely responsible for requesting return from the governing state agency. Unless prohibited by applicable law, we may charge a fee (disclosed in the Rate and Fee Schedules) for discharging our legal responsibility.

**mm)**  **Waiver of Notices** – We are not required to give and you waive any advance or prior notice of non-payment of, reversal because of non-collection of, dishonor of, or protest regarding any items credited to or charged against your account.

**16)   SECURITY**
You are responsible for preserving the confidentiality of your account number(s), account access device(s) (*e.g.*, an ATM card, debit card, and/or PIN), and account access credentials (*e.g.*, online banking ID and password). Do not divulge or share your account number(s), access device(s), or access credentials with anyone unless you are granting them full access to your money and know the other person will preserve the confidentiality of your account information. Checks and electronic withdrawals are processed by automated methods, and anyone who obtains your account number, access device, or access credentials could use them to withdraw money from your account, with or without your permission.

**a)**   **Account Numbers; Remotely Created Checks** – If a thief obtains your account number, the thief can create checks that look authorized and attempt to withdraw money from your account. A "remotely created check" (sometimes called a telecheck, preauthorized draft, or demand draft) can be created with your account number and used to access money from your account. A remotely created check does not contain an authorized signature but can still be processed and paid. For example, if you provide your account number to someone over the telephone, that person can use the account number to create a remotely created check and withdraw money from your account. If you have approved or authorized the creation of a remotely created check, it is properly payable. But authorizing a remotely created check is risky because a fraudster or thief possessing your account number could remotely create the check for a larger amount than you authorized, or remotely create other unauthorized checks. We are not able to verify your authorization or intended amounts on remotely created checks.

**b)**   **Access Devices and Access Credentials** – Except as may be limited by applicable law, giving your access device (*e.g.*, an ATM card, debit card, and/or PIN) or account access credentials (*e.g.*, online banking password) with permission to use it means that you will be responsible for whatever withdrawals or transfers that person makes, even if that person exceeds the authority you granted that person, or any limitation on your own authority. Please review the additional information provided in connection with specific access devices.

**c)**   **Blank Checks** – You are responsible for safeguarding and preserving your blank checks, and you must notify us if you are missing any checks or suspect they have been lost or stolen. This duty to safeguard your checks includes monitoring access to blank checks or check stock, particularly if you allow others access to the physical area where checks may be stored, or if you are a business with employees or others who may have authorized or unauthorized access the checks. You will bear any loss arising from negligent control and safeguarding of your checks.

**d)**   **ATM/Night Deposit Facility Use** – Please exercise care and discretion when using an automated teller machine (ATM), a night deposit facility, or a drive-up or drive-thru facility (collectively, "Exterior Facilities"). The following suggestions may be helpful.
(1) Prepare in advance for your transactions (for example, fill out a deposit slip at home) to reduce your time at the Exterior Facilities.
(2) Record your transactions in your checkbook or account record but not while at the Exterior Facilities. Do not discard your ATM receipts at the ATM.
(3) Reconcile promptly your records with your account statements.
(4) Do not lend your ATM card to anyone.
(5) Always check to make sure you have not left your card at the ATM.

(6) Safeguard and do not reveal your Personal Identification Number (PIN). Treat and safeguard your ATM card as cash. Do not tell your PIN to others. Do not give anyone information regarding your ATM card or PIN over the telephone. Do not use your ATM card or enter your PIN in any ATM that does not look genuine, appears to have been modified, has a suspicious device attached (particularly to the card-scanning device of the ATM), or is operating in a suspicious manner. Do not write or keep record of your PIN where it can be discovered, such as your wallet or purse.

(7) When entering your PIN, shield the area.

(8) Notify us immediately in case of loss or theft of your ATM card.

(9) Be aware of your surroundings and look out for suspicious activity, especially after sunset. Be sure the Exterior Facilities are well lit. Consider going with someone else when you use Exterior Facilities, especially at night. If you observe any problem or see suspicious behavior, go to another location.

(10) Do not accept assistance from anyone you do not know when using an ATM or night deposit facility.

(11) If you have not completed your transaction and notice anything suspicious, consider canceling the transaction and taking your card and leaving.

(12) Do not display your cash and promptly put it where you intend to keep or carry it. Count the cash later when you are in a more secure area.

(13) We recommend that at Exterior Facilities you secure your vehicle by locking all doors and rolling up all windows (except the driver's window). At drive-up or drive-through facilities, keep the engine running. Remain aware and alert as to your surroundings.

(14) Please tell us if you see any problem or have concerns with a facility, such as a non-working light, suspicious activity, or if an ATM appears to be tampered with.

**17) OVERDRAFT DEPOSIT TRANSFERS – AMEGY BANK CUSTOMERS**
This section applies to clients who have requested automatic transfers from a designated checking, savings, or money market account (Coverage Accounts) to a designated checking account (Primary Account). This Agreement and the Rate and Fee Schedules together constitute your OVERDRAFT DEPOSIT TRANSFER AGREEMENT. We may establish—and change from time to time—criteria for which types of accounts may or may not be Primary Accounts or Coverage Accounts (e.g., account types, or how accounts are owned). In addition, we reserve the right to decline in our sole discretion to link any one or more accounts.

a) **Transfers –** When an item(s) is presented against your Primary Account and there are insufficient funds to pay the item(s), a transfer will be made from your Coverage Account to your Primary Account in the exact amount of the overdraft. If the overdraft amount is below a minimum transfer amount specified in the Rate and Fee Schedules, then that minimum amount will be transferred. If you have more than one Coverage Account, we may make the transfer from any Coverage Account that we select in our sole discretion (even if you have specified a preferred Coverage Account). No transfer will occur if no single Coverage Account has sufficient funds to cover the overdraft amount (or, if greater, any specified minimum transfer amount). You hold us harmless if an overdraft deposit transfer is not performed due to technical failures or any reason other than our gross negligence or intentional misconduct. Transfers from a Coverage Account may reduce the Coverage Account balance to zero and may result in the closure of your Coverage Account.

b) **Transfer Limitations –** Federal regulations limit the number of transfers from savings and money market accounts during each monthly statement cycle including overdraft deposit transfers. Refer to the subsection entitled **"Restrictions on Number of Transfers"** under the section **"Withdrawals"** for additional information.

c) **Fees –** An Overdraft Deposit Transfer Fee will be assessed to your Coverage Account for each transfer as disclosed in the Rate and Fee Schedules. This fee may overdraw the Coverage Account.

d) **Joint Accounts –** If your Coverage Account is owned jointly, any joint owner may elect this service and bind all other joint owners for transfers between the Coverage and Primary Accounts.

**18) ACCOUNT OVERDRAFT PROTECTION – CALIFORNIA BANK & TRUST CUSTOMERS**
This section applies to clients who have requested automatic transfers from a designated checking, savings, or money market account (Coverage Accounts) to a designated checking account (Primary Account). This Agreement, the Rate and Fee Schedules, and the Account Overdraft Protection Agreement together constitute your ACCOUNT OVERDRAFT PROTECTION AGREEMENT. We may establish—and change from time to time—criteria for which types of accounts may or may not be Primary Accounts or Coverage Accounts (e.g., account types, or how accounts are owned). In addition, we reserve the right to decline in our sole discretion to link any one or more accounts.

a) **Transfers –** When an item(s) is presented against your Primary Account and there are insufficient funds to pay the item(s), a transfer will be made from your Coverage Account to your Primary Account in the exact amount of the overdraft. But if there are insufficient funds in the Coverage Account(s) to cover the overdraft, only the funds available in the Coverage Account(s) will be transferred. If you have more than one Coverage Account, we may make the transfer from any Coverage Account that we select in our sole discretion (even if you have specified a preferred Coverage Account). You hold us harmless if an overdraft deposit transfer is not performed due to technical failures or any reason other than our gross negligence or intentional misconduct. Transfers from a Coverage Account may reduce the Coverage Account balance to zero and may result in the closure of your Coverage Account.

b) **Transfer Limitations –** Federal regulations limit the number of transfers from savings and money market accounts during each monthly statement cycle including overdraft deposit transfers. Refer to the subsection entitled **"Restrictions on Number of Transfers"** under the section **"Withdrawals"** for additional information.

c) **Fees –** An Overdraft Deposit Transfer Fee will be assessed to your Coverage Account for each transfer as disclosed in the Rate and Fee Schedules. This fee may overdraw the Coverage Account.

d) **Joint Accounts –** If your Coverage Account is owned jointly, any joint owner may elect this service and bind all other joint owners for transfers between the Coverage and Primary Accounts.

**19) DEFICIT FUNDS TRANSFERS – NATIONAL BANK OF ARIZONA CUSTOMERS**
This section applies to clients who have requested automatic transfers from a designated checking, savings, or money market account (Coverage Accounts) to a designated checking account (Primary Account). This Agreement, the Rate and Fee Schedules, and the Overdraft Protection Funds Transfer Authorization together constitute your DEFICIT FUNDS TRANSFER AGREEMENT. We may establish—and change from time to time—criteria for which types of accounts may or may not be Primary Accounts or Coverage Accounts (e.g., account types, or how accounts are owned). In addition, we reserve the right to decline in our sole discretion to link any one or more accounts.

a) **Transfers** – When an item is presented against your Primary Account and there are insufficient funds to pay the item(s), a transfer will be made from your Coverage Account to your Primary Account in the exact amount of the overdraft. But if the overdraft amount is below any minimum transfer amount that may be specified in the service enrollment form (or the Rate and Fee Schedules), then that specified minimum amount will be transferred. If you have more than one Coverage Account, we may make the transfer from any Coverage Account that we select in our sole discretion (even if you have specified a preferred Coverage Account). No transfer will occur if no single Coverage Account has sufficient funds to cover the overdraft amount (or, if greater, any specified minimum transfer amount). You hold us harmless if an overdraft deposit transfer is not performed due to technical failures or any reason other than our gross negligence or intentional misconduct. Transfers from a Coverage Account may reduce the Coverage Account balance to zero and may result in the closure of your Coverage Account.

b) **Transfer Limitations** – Federal regulations limit the number of transfers from savings and money market accounts during each monthly statement cycle including overdraft deposit transfers. Refer to the subsection entitled **"Restrictions on Number of Transfers"** under the section **"Withdrawals"** for additional information.

c) **Fees** – A Deficit Funds Transfer fee may be assessed to your Coverage Account for each transfer as disclosed in the Rate and Fee Schedules. This fee may overdraw the Coverage Account.

d) **Joint Accounts** – If your Coverage Account is owned jointly, any joint owner may elect this service and bind all other joint owners for transfers between the Coverage and Primary Accounts.

20) **OVERDRAFT DEPOSIT TRANSFERS – NEVADA STATE BANK AND ZIONS FIRST NATIONAL BANK CUSTOMERS**
This section applies to clients who have requested automatic transfers from a designated checking, savings, or money market account (Coverage Accounts) to a designated checking account (Primary Account). This Agreement and Disclosure, the Rate and Fee Schedules, and the Overdraft Deposit Transfer Disclosure or Overdraft Deposit Transfer Request together constitute your OVERDRAFT DEPOSIT TRANSFER AGREEMENT. We may establish—and change from time to time—criteria for which types of accounts may or may not be Primary Accounts or Coverage Accounts (e.g., account types, or how accounts are owned). In addition, we reserve the right to decline in our sole discretion to link any one or more accounts.

a) **Transfers** – When an item(s) is presented against your Primary Account and there are insufficient funds to pay the item(s), a transfer will be made from your Coverage Account to your Primary Account in the exact amount of the overdraft. But if the overdraft amount is below any minimum transfer amount that may be specified in the service enrollment form (or the Rate and Fee Schedules), then that specified minimum amount will be transferred. If you have more than one Coverage Account, we may make the transfer from any Coverage Account that we select in our sole discretion (even if you have specified a preferred Coverage Account). No transfer will occur if no single Coverage Account has sufficient funds to cover the overdraft amount (or, if greater, any specified minimum transfer amount). You hold us harmless if an overdraft deposit transfer is not performed due to technical failures or any reason other than our gross negligence or intentional misconduct. Transfers from a Coverage Account may reduce the Coverage Account balance to zero and may result in the closure of your Coverage Account.

b) **Transfer Limitations** – Federal regulations limit the number of transfers from savings and money market accounts during each monthly statement cycle including overdraft deposit transfers. Refer to the subsection entitled **"Restrictions on Number of Transfers"** under the section **"Withdrawals"** for additional information.

c) **Fees** – An Overdraft Deposit Transfer Fee will be assessed to your Coverage Account for each transfer as disclosed in the Rate and Fee Schedules. This fee may overdraw the Coverage Account.

d) **Joint Accounts** – If your Coverage Account is owned jointly, any joint owner may elect this service and bind all other joint owners for transfers between the Coverage and Primary Accounts.

21) **ACCOUNT OVERDRAFT PROTECTION – VECTRA BANK COLORADO CUSTOMERS**
This section applies to clients who have requested automatic transfers from a designated checking, savings, or money market account (Coverage Accounts) to a designated checking account (Primary Account). This Agreement, the Rate and Fee Schedules, and the Account Overdraft Protection Request together constitute your ACCOUNT OVERDRAFT PROTECTION AGREEMENT. We may establish—and change from time to time—criteria for which types of accounts may or may not be Primary Accounts or Coverage Accounts (e.g., account types, or how accounts are owned). In addition, we reserve the right to decline in our sole discretion to link any one or more accounts.

a) **Transfers** – When an item(s) is presented against your Primary Account and there are insufficient funds to pay the item(s), a transfer will be made from your Coverage Account to your Primary Account in the exact amount of the overdraft. But if the overdraft amount is below any minimum transfer amount that may be specified in the service enrollment form (or the Rate and Fee Schedules), then that specified minimum amount will be transferred. If you have more than one Coverage Account, we may make the transfer from any Coverage Account that we select in our sole discretion (even if you have specified a preferred Coverage Account). No transfer will occur if no single Coverage Account has sufficient funds to cover the overdraft amount (or, if greater, any specified minimum transfer amount). You hold us harmless if an overdraft deposit transfer is not performed due to technical failures, or any reason other than our gross negligence or intentional misconduct. Transfers from a Coverage Account may reduce the Coverage Account balance to zero and may result in the closure of your Coverage Account.

b) **Transfer Limitations** – Federal regulations limit the number of transfers from savings and money market accounts during each monthly statement cycle including account overdraft protection transfers. Refer to the subsection entitled **"Restrictions on Number of Transfers"** under the section **"Withdrawals"** for additional information.

c) **Fees** – An Account Overdraft Protection Fee will be assessed to your Coverage Account for each transfer as disclosed in the Rate and Fee Schedules. This fee may overdraw the Coverage Account.

d) **Joint Accounts** – If your Coverage Account is owned jointly, any joint owner may elect this service and bind all other joint owners for transfers between the Coverage and Primary Accounts.

**22) SAFE DEPOSIT BOX LEASE AGREEMENT**
We ("Bank") lease safe deposit boxes (the "Box") to lessees ("Lessee" or "Lessees") on the terms of this Safe Deposit Box Lease Agreement (the "Agreement"). (Leased Boxes are subject to availability.) Any signature card (the "Signature Card") executed in connection with this Agreement, which identifies the specific Box and the type of Box and contains other information, is governed by this Agreement.

a) **Term** – The term of this Agreement is one year, and shall be automatically renewed for successive one-year terms unless it is terminated as set forth herein.

b) **Fees** – Safe deposit boxes shall be subject to applicable fees adopted by the Bank. Please refer to the Rate and Fee Schedules for pricing information on safe deposit boxes.

c) **Rent** – Lessees shall pay, in advance, the annual rent in the amount currently charged by Bank for similar safe deposit boxes at the same location. The initial annual rental amount is specified at account opening. Such advanced payment may, at Bank's sole discretion, be required to be paid by auto debit from a checking or savings account at Bank. Bank may increase the rent for future renewal terms by sending notice to Lessees before the end of the then-current term. If the contents of the Box are not picked up upon the expiration or termination of this Agreement, rent may continue to accrue as long as the contents of the Box are in Bank's possession.

d) **Type of Box** – If the Box is a "Regular Box," (1) access to the vault or room where the Box is located will only be permitted in the presence of an authorized Bank employee; (2) opening the Box may require concurrent action by a Bank employee (e.g. use of a dual key); and (3) Bank shall exercise ordinary care to prevent unauthorized persons from gaining access to the Box. If the Box is a "Self-service Box," (1) no action by a Bank employee shall be necessary for the Box to be opened; (2) Bank has no obligation to control or limit access to the Box or to the room where the Box is located or to have a Bank employee present when the Box is opened; (3) Bank shall have no liability for any removal of property from the Box by anyone; and (4) Lessees accept the decreased level of security of a Self-service Box.

e) **Keys** – Lessees acknowledge receipt of two keys to the Box. Lessees shall pay to Bank a reasonable key deposit for each key, which may be refunded when the key(s) are returned to Bank. If a key is lost, Lessees shall notify Bank immediately and shall pay the expense of changing the lock and key(s) and repairing or replacing the Box if it is damaged in opening. Lessees shall not duplicate any key to the Box. Lessees shall not allow any person to have possession of a key to the Box other than a Lessee or a person who is identified on the Signature Card as being authorized to access the Box ("Authorized Parties"). Lessees shall not leave a key in the lock of the Box while absent from the vault or room in which the Box is located.

f) **Access** – Lessees may have access to the Box during such times as Bank's office where the Box is located is open to the public; a Lessee must sign the Bank's entry record prior to being given access. The right to open the Box is limited to Lessees, Authorized Parties, any other person duly authorized in writing by any Lessee in a form acceptable to Bank (an "Agent"), and any person authorized by law or court order. If the Box is rented in the name of more than one Lessee, any Lessee, any Authorized Party, or any Agent may have access to the Box, may remove and dispose of all or part of the contents of the Box, and may surrender the Box. Notwithstanding the foregoing, Bank may deny all persons access to the Box, and shall incur no liability therefor, where such denial is permitted or required by law or court order or Bank's reasonable interpretation thereof. Lessees shall indemnify, repay, and hold harmless Bank with respect to all claims, losses, or damages resulting from Bank allowing access to or removal of the contents of the Box as provided in this Agreement.

g) **Restrictions on Use** – The Box shall not be used for any illegal purpose or to store any liquids, any explosives, any property that may become a nuisance, or any flammable, perishable, dangerous, or illegal property or substance. The Box may not be subleased. You agree not to store cash or currency ("money") in your Box, but you may store cash or currency that does not generally circulate and is generally recognized as investment property ("collectibles"). Bank shall not be liable for any loss or damage to stored money. The FDIC does not provide insurance for the contents of your Box. In case of damage or theft, Bank may be liable only if it was negligent in protecting the contents of your Box. It is up to you to obtain any insurance on the contents of your Box. Your insurance agent can help you check whether any of your existing policies cover those contents against damage and theft. As Lessee, make sure you pack the contents of your deposit box in waterproof, airtight containers to reduce chances of damage.

h) **Limitation of Liability** – Bank shall not be responsible or liable for (a) any loss of or damage to contents of the Box resulting from fire, theft, burglary, embezzlement, vandalism, terrorism, civil unrest or riots, war, flooding (natural or manmade), earthquakes, other natural disasters or Acts of God, criminal acts or negligence of any person or entity, or use by anyone of a key that Bank has delivered to any Lessee, including loss or damage to data on magnetic tape, discs, or other media; (b) any personal injury or damage resulting from any negligent or wrongful act committed at or near the location of the Box, except for those of Bank's agents or employees; (c) losses or damages resulting from Lessees' or their agents' or Authorized Parties' failure to comply with this Agreement; (d) indirect, incidental, special, consequential, or punitive damages; or (e) property left in the vicinity of the Box (which Bank may dispose of in its discretion, without liability). Bank is not required to provide additional equipment or security measures other than those Bank now has for protection against any of the risks described herein. No unauthorized access shall be inferred from any loss of property contained in the Box. Lessees assume all risk in connection with the contents of the Box. It is expressly understood and agreed that Bank is not an insurer of the contents of the Box. Insurance of contents of the Box is the sole responsibility of Lessee.

i) **Death** – In the event of the death of any Lessee, the other Lessees shall notify Bank in writing of such death before accessing the Box, and access to the Box shall be limited to the extent required by law or legal process. Bank may allow a close relative, an executor, or administrator of the estate of a deceased Lessee to enter the Box for the sole purpose of searching for a will, trust agreement, or burial instructions, and Lessees shall hold Bank harmless against all losses and damages for allowing such access. Any will, trust agreement, or burial instruction removed from the safe deposit box may be logged by Bank. Upon the death of the last surviving Lessee, the Lessees' legal representatives may access the Box. At the time of death of one Lessee, any surviving joint Lessee is legally permitted to continue entering the safe deposit box.

j) **Security Interest** – Lessees grant Bank a security interest in the contents of the Box (and any of your deposit accounts with the Bank) to secure all obligations of Lessees to Bank, including their obligations under this Agreement.

k) **Termination** – Bank may terminate the lease of the Box immediately if a Lessee breaches any term of this Agreement, and may terminate for any other reason after thirty (30) days' notice to a Lessee. If Bank moves or materially changes the location of the Box or Bank's hours of operations, any Lessee may terminate the lease of the Box by giving Bank notice within fifteen (15) days after notice of such relocation or change. Any Lessee may give Bank notice of nonrenewal at any time prior to the end of the then-current term, and this Agreement will terminate at the end thereof. If Bank has given any Lessee notice of a rent increase or of an amendment hereto less than fifteen (15) days prior to the end of the current term, any Lessee may terminate this

Agreement by giving Bank notice within twenty (20) days after Bank gave notice. Upon termination, Lessees shall surrender the Box and the key(s). Rent is not prorated if Lessee(s) cancel the lease during the term.

l) **Amendment** – The terms of this Agreement may be amended at any time by Bank, and such amendment shall be deemed accepted by Lessees unless any Lessee terminates this Agreement by giving Bank notice of termination within fifteen (15) days after Bank's notice of the amendment to any Lessee.

m) **Condition of Box** – At the termination or expiration of this Agreement, Lessees will surrender the Box in as good a condition as when leased, reasonable use excepted, and shall pay Bank the cost of repairs made necessary by their failure to do so.

n) **Disposition of Unclaimed Contents** – If Lessees do not remove the contents of the Box upon termination or expiration of this Agreement, Bank may open the Box. If Lessee has unsatisfied obligations to Bank, Bank shall have the rights of a secured creditor under the Uniform Commercial Code, including the right to sell the contents of the Box and apply the proceeds of such sale to satisfy such obligations. To the extent such contents are not used to satisfy such obligations, Bank shall comply with the applicable unclaimed property law.

o) **Rights and Remedies of Bank** – In addition to Bank's rights under this Agreement, Bank shall have all rights granted to lessors of safe deposit boxes by applicable law. Each Lessee is liable for obligations and for any breach by any other Lessee. Lessees shall be liable to Bank for any costs, expenses, or damages resulting from any breach of this Agreement by Lessees, including Bank's expenses and attorneys' fees in enforcing its rights under this Agreement.

p) **Notices** – All notices shall be sent in writing, except when you and we have agreed notice may be given electronically. Bank may send any notice to the address for any Lessee in Bank's records, and such notice will be effective for all Lessees. Lessees shall notify Bank of any change in any Lessee's address. Lessees shall send to or deliver all notices to the Bank office at which the Box is located or such other address we may give you. Notices shall be effective five (5) days after mailing or upon actual receipt, if earlier.

q) **Miscellaneous** – This Agreement is binding on the parties' heirs and legal representatives. No waiver by Bank of performance of an obligation shall be a waiver of any subsequent requirement. Lessees may not assign their rights under this Agreement.

23) **LIMITATION ON TIME TO SUE**
An action or proceeding by you to enforce an obligation, duty, or right arising under this Agreement or by law with respect to your account, safe deposit box, or any other account service must be commenced within one year after the cause of action accrues. This limitation on time to sue shall survive any termination, amendment, or expiration of this Agreement, or any other relationship between the parties.

24) **DISPUTES – NATIONAL BANK OF ARIZONA, NEVADA STATE BANK, VECTRA BANK COLORADO, THE COMMERCE BANK OF OREGON, THE COMMERCE BANK OF WASHINGTON, AND ZIONS FIRST NATIONAL BANK CUSTOMERS**
   a) **Resolving Account Disputes** – We may freeze or hold a portion of or all the funds in your account or suspend transaction activity in your account if (1) your account becomes subject to a claim adverse to your own interest, whether by other signers or others claiming signing authority or an interest, as survivors, beneficiaries, or otherwise, in your account; or (2) for accounts of non-natural persons, we are unable to determine who is authorized to speak or act on behalf of the account holder; or (3) your account becomes subject to a claim arising by operation of law; or (4) the Bank, in exercise of its discretion, determines that there is a risk of claim against or loss to the Bank arising from transactions in any account with the Bank that you own or control. The freeze or hold may last an undetermined amount of time and continue for an amount of time sufficient for us to determine a resolution of the issues or for a judicial (or other binding) determination to be made of the claims or issues. We may require that you obtain such judicial (or other binding) determination between yourself and competing claimants, and we shall not be required to participate as a party to such proceedings. We may in any event, in our sole discretion, choose to close the account and send the funds to the owner or owners of the account, according to our records, at the statement mailing address or deliver the property to the owner or owners of the property. You agree that we will not be responsible for damages or losses you may incur because of items that are not paid, funds that are not available, or deposits that are refused during the freeze or hold or after the account is closed.

   b) **Unresolved Disputes** – In most cases, we will resolve disputes over the telephone or within your branch. Any unresolved disputes shall be governed by the provisions disclosed in the Subsections below. **READ THESE PROVISIONS CAREFULLY. They supersede the "DISPUTES" section governed by any agreement prior to this Agreement and apply to all relationships heretofore entered into between us regarding the subject matter of this Agreement. No portion of this DISPUTES section shall be interpreted or applied in a manner prohibited by governing law, but all other portions shall remain in effect.**

   This Unresolved Disputes subsection does not apply (a) to members of the armed forces and their dependents who are entitled to protection under the Military Lending Act, 10 U.S.C. § 987, or (b) if prohibited under any otherwise applicable provision of State or Federal law. If you would like more information about whether you are entitled to protection under the Military Lending Act and whether this Section applies to you, please contact us at the applicable customer service number: (800) 497-8168 for National Bank of Arizona, (800) 727-4743 for Nevada State Bank, (503) 548-1000 for The Commerce Bank of Oregon, (800) 998-4035 for The Commerce Bank of Washington, (800) 232-8948 for Vectra Bank Colorado, and (800) 789-BANK(2265) for Zions First National Bank.

   (1) **Dispute Defined.** As used herein, the word **"Dispute"** means any claim by either party against the other party related to or arising out of this Agreement or your account or any transactions on your account, and includes, but is not limited to, matters arising from or relating to an application for or denial of credit, fees, the adequacy of a party's disclosures, enforcement of any and all of the obligations a party hereto may have to another party, compliance with applicable laws and/or regulations, performance or services or products provided under this Agreement, including without limitation disputes based on or arising from any alleged tort or matters involving the employees, officers, agents, affiliates, or assigns of a party hereto. If a third party is a party to a Dispute (such as a credit reporting agency, or the payee or maker of an item paid from or deposited in any deposit account), each party hereto agrees to consent to including that third party in any arbitration for resolving the Dispute with that third party. In this DISPUTES section only, the words **"Consumer Dispute"** mean a Dispute concerning a deposit account or product described in this Agreement provided by Bank to a consumer primarily for personal, family, or household purposes, in which the claim for damages is less than $75,000. The words **"Commercial Dispute"** mean any Dispute that is not a Consumer Dispute.

   (2) **Jury Waiver.** Each party waives its, his, or her respective rights to a trial before a jury in connection with any Dispute. All Disputes shall be decided by a judge sitting without a jury, unless submitted to binding arbitration pursuant to Subsection (4) below.

32

(3) **Class Action Waiver.** If permitted by applicable law, each party waives the right to litigate any Dispute as a class action (either as a member of a class or as a representative) or to act as a private attorney general. The waiver in this paragraph applies whether the proceeding is in a court, in an arbitration, or in any judicial reference proceeding.

(4) **Agreement to Submit Disputes to Binding Arbitration if (A) a consumer party requests for a Consumer Dispute, or (B) if the jury trial waiver is not enforced. This Subsection (4) is an agreement to submit the following Disputes to binding arbitration.** With regard to any **Consumer Dispute,** the consumer shall have the right, but no obligation, to require that any Dispute between the parties be resolved by arbitration. With regard to a **Commercial Dispute, if (but only if)** a state or federal court determines for any reason that the jury trial waiver provision in Subsection (2) is not enforceable with respect to any Dispute, any party hereto may require that said Dispute be resolved by binding arbitration. Only with regard to arbitration under this Subsection (4), the parties agree that "Dispute" does not include matters regarding: (a) the validity, enforceability, meaning, or scope of this DISPUTES section, or (b) class action claims brought by either party as a class representative on behalf of others and claims by a class representative on either party's behalf as a class member, which matters may be determined only by a court without a jury. **BY AGREEING TO RESOLVE FUTURE DISPUTES IN ARBITRATION, THE PARTIES ARE WAIVING THEIR RIGHT TO LITIGATE IN COURT.**

In any lawsuit regarding a Dispute (a "Lawsuit"), and subject to the provisions of this DISPUTES section, following the service of a complaint, third-party complaint, cross-claim or counterclaim, or any answer thereto, any amendment to any of the above served in the Lawsuit, or a ruling or entry of an order in the Lawsuit that has the effect of invalidating this Agreement's jury trial waiver (any of the foregoing, an "Arbitration Event"), then **at any time prior to trial of the Dispute, but not later than 30 days after the Arbitration Event,** any party shall be entitled to move the court for an order compelling arbitration and staying or dismissing the Lawsuit pending arbitration ("Arbitration Order") under this Subsection (4). Each party agrees that a party that commenced or participated in the Lawsuit may demand arbitration of a Dispute after an Arbitration Event, and that the commencement or participation in the Lawsuit shall not operate as a waiver of the right to compel arbitration. After entry of an Arbitration Order, the non-moving party shall commence arbitration. The moving party shall, at its discretion, also be entitled to commence arbitration but is under no obligation to do so, and the moving party shall not in any way be adversely prejudiced by electing not to commence arbitration.
Arbitration under this provision shall be conducted before a single arbitrator through either the National Arbitration Forum ("NAF") or JAMS, as selected by the initiating party, in accordance with the rules of NAF or JAMS (the "Administrator"). However, if the parties agree, a licensed attorney may be selected by the parties to conduct the arbitration without an Administrator. If NAF and JAMS both decline to administer arbitration of the Dispute, and if the parties are unable to mutually agree upon a licensed attorney to act as arbitrator without an Administrator, then either party may file a Lawsuit and move for an Arbitration Order. The arbitrator, however appointed, shall have expertise in the subject matter of the Dispute. Venue for the arbitration proceeding shall be as stated elsewhere in this Agreement with respect to any judicial proceedings between the parties. Absent such a venue provision, the arbitration shall be conducted at a location determined by mutual agreement of the parties or by the Administrator if no agreement can be reached. The arbitrator shall apply the law of the state specified in the agreement giving rise to the Dispute.
In any arbitration commenced by a consumer regarding a Consumer Dispute, Bank shall pay one half of the Administrator's initial filing fee, up to $500. If Bank commences arbitration or is the moving party obtaining an Arbitration Order, Bank shall pay all Administrator and arbitrator fees, regardless of whether or not the consumer is the prevailing party in such arbitration, unless such Dispute involves a claim for damages by a consumer and is found by the arbitrator to be frivolous.

The Administrator and the arbitrator shall have the authority, to the extent practicable, to take any reasonable action to require the arbitration proceeding to be completed within 180 days of commencing the arbitration. The arbitrator: (1) will render a decision and any award applying applicable law; (2) will hear and rule on appropriate dispositive motions for judgment on the pleadings, for failure to state a claim, or for full or partial summary judgment; (3) will give effect to any statutory or contractual limitations period (*e.g.,* any statute of limitations) in determining any Dispute or defense; (4) shall have the authority to impose sanctions on any party that fails to comply with time periods imposed by the Administrator or the arbitrator, including, without limitation, the sanction of entering a final award against the party that fails to comply; (5) shall have authority to award costs and fees (including attorneys' fees and costs, arbitration administration fees and costs, and arbitrator(s)' fees) to the extent permitted by law; (6) shall recognize and honor claims of privilege recognized at law; and (7) with regard to motions and the arbitration hearing, shall apply the Federal Rules of Evidence. The doctrines of compulsory counterclaim, res judicata, and collateral estoppel shall apply to any arbitration proceeding hereunder.

Commencement of an arbitration by any party shall not prevent any party from at any time (1) seeking and obtaining from a court of competent jurisdiction (notwithstanding ongoing arbitration) provisional or ancillary remedies including but not limited to injunctive relief, temporary restraining orders, property preservation orders, foreclosure, sequestration, eviction, attachment, replevin, garnishment, and/or the appointment of a receiver; or (2) availing itself of any self-help remedies such as setoff and repossession rights or non-judicial foreclosure of collateral. The exercise of such rights shall not constitute a waiver of the right to submit any Dispute to arbitration.

Judgment upon an arbitration award may be entered in any court having jurisdiction except that, if the arbitration award exceeds the "Appeal Threshold," any party shall be entitled to a de novo appeal of the award before a panel of three arbitrators. The "Appeal Threshold" in a Commercial Dispute shall be $4,000,000 and, in a Consumer Dispute shall be $200,000. To allow for such appeal, if the award (including Administrator, arbitrator, and attorney's fees and costs) exceeds the Appeal Threshold, the arbitrator will issue a written, reasoned decision supporting the award, including a statement of authority and its application to the Dispute. A request for de novo appeal must be filed with the arbitrator within 30 days following the date of the arbitration award; if such a request is not made within that time period, the arbitration award shall become final and binding. On appeal, the arbitrators shall review the award de novo, meaning that they shall reach their own findings of fact and conclusions of law rather than deferring in any manner to the original arbitrator. Appeal of an arbitration award shall be pursuant to the rules of the Administrator; if the Administrator has no such rules, then the JAMS arbitration appellate rules shall apply.

To request information on how to submit an arbitration claim, or to request a copy of an Administrator's rules or fee schedule, please contact the Administrators as follows: JAMS: 1920 Main St., Suite 300, Irvine, CA 92614, Phone: (949) 224-1810, Fax: (949) 224-1818, E-mail: info@jamsadr.com, Website: www.jamsadr.com; NAF: National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405-0191, Phone (800) 474-2371, E-Mail: info@adrforum.com, Website: www.adrforum.com. Arbitration under this provision concerns a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. If the terms of this Subsection (4) vary from the Administrator's rules, this Subsection (4) shall control.

(5) **Survival.** This DISPUTES section shall survive any termination, amendment, or expiration of this Agreement, or any other relationship between the parties.

(6) **Reliance.** Each party (1) certifies that no one has represented to such party that the other party would not seek to enforce a jury waiver, class action waiver, or arbitration provision in the event of suit, and (2) acknowledges that it and the other party have been induced to enter into this Agreement by, among other things, material reliance upon the mutual waivers, agreements, and certifications in this DISPUTES section.

(7) **Jurisdiction and Venue. You** expressly consent to the personal jurisdiction of the state and federal courts located in the "applicable state," as defined in Section 1 hereof, entitled "**Agreement.**" In any judicial proceeding concerning a Dispute, exclusive venue shall lie in (i) the county of the physical branch (if any) where the account was opened, (ii) the county of the physical branch (if any) at which the transaction occurred, or (iii) the following county based on the division of Zions Bancorporation, N.A. that holds your account: Salt Lake County for Zions First National Bank (or Ada County for any accounts housed at a branch of Zions First National Bank located in the State of Idaho); Maricopa County for National Bank of Arizona; Clark County for Nevada State Bank; City and County of Denver for Vectra Bank Colorado; Multnomah County for The Commerce Bank of Oregon; and King County for The Commerce Bank of Washington. The courts shall apply the substantive law of the "applicable state" specified in Section 1 hereof, entitled "**Agreement.**"

## 25) DISPUTES – AMEGY BANK CUSTOMERS

a) **Resolving Account Disputes** – We may freeze or hold on a portion of or all the funds in your account, or suspend transaction activity in your account if (1) your account becomes subject to a claim adverse to your own interest, whether by other signers or others claiming signing authority or an interest, as survivors, beneficiaries, or otherwise, in your account; or (2) for accounts of non-natural persons, we are unable to determine who is authorized to speak or act on behalf of the account holder; or (3) your account becomes subject to a claim arising by operation of law; or (4) the Bank, in exercise of its discretion, determines that there is a risk of claim against or loss to the Bank arising from transactions in any account with the Bank that you own or control. The freeze or hold may last an undetermined amount of time and continue for an amount of time sufficient for us to determine a resolution of the issues or for a judicial (or other binding) determination to be made of the claims or issues. We may require that you obtain such judicial (or other binding) determination between yourself and competing claimants, and we shall not be required to participate as a party to such proceedings. We may in any event, in our sole discretion, choose to close the account and send the funds to the owner or owners of the account, according to our records, at the statement mailing address or deliver the property to the owner or owners of the property. You agree that we will not be responsible for damages or losses you may incur because of items that are not paid, funds that are not available, or deposits that are refused during the freeze or hold or after the account is closed.

b) **Dispute Resolution and Venue** – You expressly consent to personal jurisdiction of the state and federal courts located in State of Texas. In any judicial proceeding concerning an account, transactions therein, or this Agreement, exclusive venue shall lie in (i) the county of the physical branch (if any) where the account was opened, (ii) the county of the physical branch (if any) at which the transaction occurred, or (iii) Harris County. The courts shall apply the substantive law of the State of Texas.

This Disputes Resolution and Venue subsection does not apply (a) to members of the armed forces and their dependents who are entitled to protection under the Military Lending Act, 10 U.S.C. § 987, or (b) if prohibited under any otherwise applicable provision of State or Federal law. If you would like more information about whether you are entitled to protection under the Military Lending Act and whether this Section applies to you, please contact us at Amegy Bank's customer service at (800) 287-0301.

c) **Jury Waiver** – **TO THE FULLEST EXTENT PERMITTED BY LAW, YOU INTENTIONALLY AND DELIBERATELY GIVE UP THE RIGHT TO A TRIAL BY JURY TO RESOLVE ANY DISPUTE, CLAIM, DEMAND, CAUSE OF ACTION, AND CONTROVERSY BETWEEN US ARISING OUT OF, OR RELATED TO, THIS AGREEMENT, ANY ACCOUNT GOVERNED HEREBY, OR ANY TRANSACTION MADE IN CONNECTION WITH THIS AGREEMENT OR SUCH ACCOUNT. THE FOREGOING DISPUTE RESOLUTION AND JURY WAIVER PROVISIONS SUPERSEDE ANY REQUIREMENT FOR ARBITRATION THAT MAY HAVE BEEN PROVIDED FOR IN PRIOR VERSIONS OF THIS AGREEMENT, AND GOVERN ALL RELATIONSHIPS HERETOFORE ENTERED INTO BETWEEN US REGARDING THE SUBJECT MATTER OF THIS AGREEMENT.**

d) **Class Action Waiver** – To the fullest extent permitted by law, you and we each waive our respective right to litigate any dispute as a class action, either as a member of a class or as a representative, or to act as a private attorney general.

e) **Survival** – This DISPUTES section shall survive any termination, amendment, or expiration of this Agreement, or any other relationship between the parties.

## 26) DISPUTES – CALIFORNIA BANK & TRUST CUSTOMERS

This DISPUTES provision contains a jury waiver, a class action waiver, and a judicial reference agreement. READ IT CAREFULLY. No portion of this DISPUTES provision shall be interpreted or applied in a manner prohibited by governing law, but all other portions shall remain in effect.

a) **Prior Dispute Agreements Superseded** – This DISPUTES provision supersedes and replaces any prior "Jury Waiver," "Judicial Reference," "Class Action Waiver," "Arbitration," "Dispute Resolution" or similar alternative dispute agreement or provision between or among you, us, and any other parties relating to this Agreement or the subject matter hereof.

b) **"Dispute" Defined** – As used herein, the word "Dispute" includes without limitation any claim by either party against the other party related to this Agreement, your account or transactions on your account, or any account services. Disputes include, without limitation, class action claims brought by either party as a class representative on behalf of others and claims by a class representative on either party's behalf as a class member and any action, suit, case, or claim brought by either party as a private attorney general, the right to which each of the parties hereto also expressly waives, whether litigated in court or a reference proceeding, to the extent permitted by applicable law. Disputes also include, without limitation, matters involving the validity, enforceability, meaning, or scope of this DISPUTES provision and Disputes based on or arising from an alleged tort or matters involving the employees, officers, agents, affiliates, or assigns of a party hereto.

c) **Resolving Account Disputes** – Without limiting the generality of anything herein or the rights or remedies otherwise available to us under this Agreement or at law, if a Dispute arises involving conflicting demands over the ownership or control of an account or its funds arise, we become aware of a Dispute regarding the use of an account or we are unable to determine any person's continuing authority to give instructions, we may, at our sole discretion without liability to the Bank: (1) freeze the account and withhold payment from all of you until we receive written proof (in form and substance satisfactory to us) of your right and authority over the account and its funds; (2) require the signatures of all of you for the withdrawal of funds, the closing of an account, or any change in the account regardless of the number of authorized signers on the account; (3) request instructions from a court of competent jurisdiction regarding the ownership or control of the account; (4) close the account and send the funds to the owner or owners of the account,

according to our records, at the statement mailing address or deliver the property to the owner or owners of the property; and/or (5) continue to honor checks and other instructions given to us by the individuals who appear as authorized signers according to our records. In no event will we be liable for any delay or refusal to follow instructions that occur as a result of a Dispute over the ownership or control of your account. We may dishonor checks and other items in the event there is a dispute or uncertainty over an account's ownership or control.

d) **Jury Waiver and Judicial Reference** – Subsections (d), (e), and (f) of this Disputes section do not apply (1) to members of the armed forces and their dependents who are entitled to protection under the Military Lending Act, 10 U.S.C. § 987, or (2) if prohibited under any otherwise applicable provision of State or Federal law. If you would like more information about whether you are entitled to protection under the Military Lending Act and whether this Section applies to you, please contact us at California Bank & Trust's customer service at (800) 400-6080.

**You and we each waive our respective rights to a trial before a jury in connection with any Dispute, and all Disputes shall be decided by a judge sitting without a jury, unless resolved in a judicial reference proceeding pursuant to the terms set forth below. This includes any claim by us or by you, claims brought by you as a class representative on behalf of others, and claims by a class representative on your behalf as a class member (so-called "class action" suits). This provision shall not apply if, at the time an action is brought, your account is maintained in a state where this jury trial waiver is not permitted by law. If a jury trial waiver is not permitted by applicable law, and a Dispute arises between us with respect to this Agreement, its enforcement or our services, either of us may require that it be resolved by judicial reference in accordance with California Code of Civil Procedure, Sections 638, et seq. BY AGREEING TO RESOLVE DISPUTES BY JUDICIAL REFERENCE, EACH PARTY IS GIVING UP ANY RIGHT THAT PARTY MAY HAVE TO A JURY TRIAL.**

The referee shall be a retired judge, agreed upon by the parties, from either the American Arbitration Association (AAA) or Judicial Arbitration and Mediation Service, Inc. (JAMS). If you and we cannot agree on the referee, the party who initially selected the reference procedure shall request a panel of ten retired judges from either AAA or JAMS, and the court shall select the referee from that panel. If AAA and JAMS are unavailable to provide this service, the court may select a referee by such other procedures as are used by that court. The referee shall be appointed to sit with all of the powers provided by law, including the power to hear and determine any or all of the issues in the proceeding, whether of fact or of law, and to report a statement of decision. The parties agree that time is of the essence in conducting the judicial reference proceeding set forth herein. Except as otherwise provided in this paragraph, the costs of the judicial reference proceeding, including the fee for the court reporter, shall be borne equally by the parties as the costs are incurred, unless otherwise awarded by the referee. If we commence a judicial reference proceeding regarding a consumer Dispute, we will pay all referee fees, regardless of whether or not the consumer is the prevailing party in such proceeding, unless such Dispute involves a claim for damages by a consumer and is found by the referee to be frivolous. For purposes of this paragraph, **"Consumer Dispute"** means a Dispute involving credit or services provided by us, primarily for personal, family, or household purposes, in which the claim for damages is less than $75,000. The referee shall hear all pre-trial and post-trial matters, including requests for equitable relief; prepare an award with written findings of fact and conclusions of law; and apportion costs as appropriate. The referee shall be empowered to enter equitable relief as well as legal relief, provide all temporary or provisional remedies, enter equitable orders that are binding on the parties and rule on any motion that would be authorized in a trial, including without limitation motions for summary adjudication. Judgment upon the award shall be entered in the court in which such proceeding was commenced and all parties shall have full rights of appeal. This provision will not be deemed to limit or constrain our right of offset, to obtain provisional or ancillary remedies, to interplead funds in the event of a Dispute, to exercise any security interest or lien we may hold in property, or to comply with legal process involving your accounts or other property held by us. If a third party is a party to a Dispute (such as a credit reporting agency, merchant accepting a credit card, junior lienholder, or title company), each party hereto agrees to consent to including that third party in any judicial reference proceeding for resolving the Dispute with that third party.

e) **Class Action Waiver** – To the extent permitted under applicable law notwithstanding any other provision in this Agreement, each party waives the right to litigate any Dispute as a class action (either as a member of a class or as a representative) or to act as a private attorney general. The waiver in this paragraph applies whether the proceeding is in a court, in a judicial reference, or in any arbitration.

f) **Jurisdiction and Venue** – You expressly consent to the personal jurisdiction of the state and federal courts located in the State of California. In any judicial proceeding concerning a Dispute, exclusive venue shall lie in (i) the county of the physical branch (if any) where the account was opened, (ii) the county of the physical branch (if any) at which the transaction occurred, or (iii) San Diego County, California. The courts shall apply the substantive law of the "applicable state" (specified in Section 1 entitled "**Agreement**").

g) **Survival** – This DISPUTES section shall survive any termination, amendment, or expiration of this Agreement, or any other relationship between the parties.

h) **Reliance** – Each party (1) certifies that no one has represented to such party that the other party would not seek to enforce a jury waiver, class action waiver, or judicial reference provision in the event of suit, and (2) acknowledges that he, she, or it and the other party have been induced to enter into this Agreement by, among other things, material reliance upon the mutual waivers, agreements, and certifications in this DISPUTES section.

# EXHIBIT 2

 **NATIONAL BANK OF ARIZONA**®| Anytime Checking

This disclosure only summarizes the features of this account. For additional terms governing your account, please see the Deposit Account Agreement. Current copies of the Deposit Account Agreement are available at any branch or online at www.NBAZ.com. Information current as of 8/20/2020.

| Account Opening and Usage | |
|---|---|
| Minimum Deposit Needed to Open Account | $50 |
| Monthly Maintenance Fee | $8 |
| How to Avoid the Monthly Maintenance Fee | $0 monthly maintenance fee when you meet **one** of the following during the statement month: <br> • $250 minimum direct deposit[1] **OR** <br> • 10 purchases using a NB\|AZ debit card or credit card[2] **OR** <br> • 25 years old or younger[3] |
| Paper Statement Service <br> *(Applies to statements that are printed and mailed)* | $4 <br><br> Waive this fee by opting out of paper statements through online banking. **There is no charge for eStatements.** |
| Earns Interest | No |

| Overdraft Services | |
|---|---|
| Insufficient Funds (NSF) Fee | $35 <br> • Per check, ACH, or wire transaction posted against insufficient funds, whether the bank pays or returns the transaction. <br> • Per ATM or one-time debit transaction paid against insufficient funds if you have opted-in to our Debit Card Overdraft Service. <br> • Per multiple-use debit card transaction paid against insufficient funds. <br> • Per non-debit card withdrawal transaction paid against insufficient funds. <br><br> A maximum of five fees will be charged per account per business day. No fees will be charged if the account is overdrawn $5 or less after all transactions post following the close of business. |
| Continuing Overdraft Fee | We will charge you a **Continuing Overdraft Fee** of $35 if your account remains overdrawn more than $5.00 for 7 consecutive calendar days.  The Continuing Overdraft Fee will be charged for up to three consecutive 7-calendar day periods that your account is overdrawn more than $5.00. |
| Overdraft Options | **Default Option:** We may, in our discretion, pay any overdraft transaction, though it is our policy to decline an overdraft transaction that is an ATM or point-of-sale debit card transaction. We will charge an Insufficient Funds Fee and Continuing Overdraft Fee for an overdraft transaction unless it is an ATM or point-of-sale debit card transaction. <br><br> **Debit Card Overdraft Service:** If you opt in to our Debit Card Overdraft Service, we may, in our discretion, pay any ATM or point-of-sale debit card overdraft transaction. We will charge an Insufficient Funds Fee and Continuing Overdraft Fee (as explained above) for all overdraft transactions. <br><br> **Overdraft Protection:** If you have opted for our *Overdraft Deposit Transfer Service* or *Overdraft Line of Credit* (subject to credit approval) we will pay transactions that overdraw your account when there are available funds in your deposit account or credit line. **See the Personal Account Schedule of Fees for details.** |

| Account Features | |
|---|---|
| Convenience Services[4] | Online Banking<br>Mobile Banking<br>Bill Pay<br>Visa® Debit card |
| ATM Benefits | **$0** for transactions at ATMs owned by NB\|AZ or other divisions of Zions Bancorporation, N.A.<br><br>NB\|AZ Bank Fees apply to transactions at ATMs not owned by Zions Bancorporation, N.A. In addition, ATM operator fees may be assessed. **See the Personal Account Schedule of Fees for details.** |

| How Deposits and Withdrawals Work | |
|---|---|
| Deposit Funds Availability<br><br>*(When funds deposited to your account are generally available)* | Cash deposited: **Next business day**<br><br>Check deposited: **Next business day generally, unless a hold is placed**<br><br>Direct Deposit and Wire Transfer: **Same business day**<br><br>We may place a hold on funds you deposit in your account by check. If we do, a portion of the funds will generally be available to you the first business day after the day of deposit. Depending on the type of check you deposit, the remainder of the funds may not be available to you until the second day after the day of deposit or even later. We will generally tell you at the time you deposit a check if a portion of the funds from the check will not be available to you the business day after the day of deposit.  We will also tell you when those funds will be available. **For determining the availability of funds deposited by check, every day is a business day, except Saturdays, Sundays, and federal holidays.** The end of a business day varies by banking center. See your **Deposit Account Agreement** for additional details. |
| Deposit and Withdrawal Posting Order | Transactions are generally posted each business day following the close of business in the following order:<br><br>**First:** Credit (deposit) transactions such as deposits by cash or check, ATM deposits, direct deposits, wire transfer deposits, and corrections to your account balance.<br><br>**Second:** Debit (withdrawal) transactions received the same business day. We divide debit transactions into transaction-type groups and order transactions within each group chronologically (other than checks, which are sorted by serial number). We then post the transactions in sequence by group type and order. For group types and sequence, other exceptions and details, see your **Deposit Account Agreement.** |

| Additional Disclosures | |
|---|---|
| Amendments | These terms and your Deposit Account Agreement are subject to change. We will notify you of changes in advance as required by law. **See your Deposit Account Agreement for more information.** |
| Dispute Resolution Agreement | Your Deposit Account Agreement contains a Jury Waiver and a Class Action waiver. Except for accounts opened with the Amegy Division, disputes are subject to binding Arbitration (a) if the Jury Waiver is not enforced, or (b) if you are a consumer and you request Arbitration. **See your Deposit Account Agreement for more information.** |

1. **Direct Deposit:**  A direct deposit is an electronic credit to your account. Transfers from one account to another or deposits made at a banking center do not qualify as a direct deposit. All direct deposits made during the statement month are added together to determine the total direct deposit amount used to waive the monthly maintenance fee.

2. **Card Purchases:**  All debit and credit card purchase transaction counts are added together to waive the monthly maintenance fee. Debit and credit card purchases must post and clear your account in order to be counted for the monthly maintenance fee waiver, and must be made within the past 30 days of your statement cycle.

3. **25 years old or younger**: The primary account holder must be 25 years old or younger for the monthly maintenance fee to be waived. This benefit does not extend to secondary account holders.

4. **Convenience Services:** Some online and mobile banking features may not be extended to minors.  Internet, mobile, and text messaging service provider rates and fees apply for the following services: Online Banking, Mobile Banking, Card Alerts, or Mobile Card Fraud Alerts. Additional Bill Pay fees apply for expedited delivery options. Transaction notifications are sent to your email account and/or mobile device by SMS text. Account must be enrolled in Online Banking to enroll and manage Card Alerts.